**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| iROBOT CORPORATION, *et al.*, [1] | ) | Case No. 25-12197 (___) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**DEBTORS' MOTION FOR ENTRY OF
AN ORDER (I) SCHEDULING COMBINED HEARING
ON (A) ADEQUACY OF DISCLOSURE STATEMENT AND (B) CONFIRMATION
OF PREPACKAGED PLAN; (II) CONDITIONALLY APPROVING DISCLOSURE
STATEMENT; (III) APPROVING SOLICITATION PROCEDURES AND FORM
AND MANNER OF NOTICE OF COMMENCEMENT, COMBINED HEARING,
AND OBJECTION DEADLINE; (IV) FIXING DEADLINE TO OBJECT TO
DISCLOSURE STATEMENT AND PREPACKAGED PLAN; (V) APPROVING
NOTICE AND OBJECTION PROCEDURES FOR THE ASSUMPTION OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (VI) CONDITIONALLY
(A) DIRECTING THE UNITED STATES TRUSTEE NOT TO CONVENE
SECTION 341 MEETING OF CREDITORS AND (B) WAIVING REQUIREMENT OF
FILING STATEMENTS OF FINANCIAL AFFAIRS, SCHEDULES OF ASSETS AND
LIABILITIES, AND 2015.3 REPORTS; AND (VII) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion (this "Motion"):

**Relief Requested**

1.      The Debtors seek entry of an order (the "Proposed Order"), substantially in the

form attached hereto as **Exhibit A**:  (a) scheduling a combined hearing (the "Combined Hearing")

to (i) approve the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of*

*Reorganization of iRobot Corporation and Its Debtor Affiliates* (as may be amended,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: iRobot Corporation (9335); iRobot US Holdings, LLC (5237); and iRobot Holdings LLC (5307). For purposes of these chapter 11 cases, the Debtors' service address is 8 Crosby Drive, Bedford, MA 01730.

supplemented, or modified from time to time, the "Disclosure Statement")[2] and (ii) consider confirmation of the *Joint Prepackaged Chapter 11 Plan of Reorganization of iRobot Corporation and Its Debtor Affiliates* (as may be amended, supplemented, or modified from time to time, the "Prepackaged Plan");[3] (b) conditionally approving the Disclosure Statement; (c) conditionally approving the Solicitation Procedures (as defined herein) with respect to the Prepackaged Plan, including the forms of Ballots and the Notice of Non-Voting Status (each as defined herein); (d) establishing the deadline to object to the adequacy of the Disclosure Statement and confirmation of the Prepackaged Plan (the "Objection Deadline") and the deadline to file a brief in support of confirmation of the Prepackaged Plan and reply to any objections (the "Reply Deadline"); (e) approving the form and manner of the notice of the commencement of these chapter 11 cases, the Combined Hearing, and the Objection Deadline; (f) approving the notice and objection procedures in connection with the assumption of Executory Contracts and Unexpired Leases pursuant to the Prepackaged Plan; (g) so long as the Prepackaged Plan is confirmed on or before February 23, 2026 (the "Schedules and 2015.3 Deadline"), (i) directing the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") not to convene an initial meeting of creditors (the "341 Meeting") under section 341(a) of the Bankruptcy Code (as defined herein), (ii) waiving the requirement that the Debtors file statements of financial affairs and schedules of assets and liabilities (collectively, the "Schedules and Statements"), and (iii) waiving the requirement that the Debtors file initial reports of financial information in respect of entities in which their estates hold a controlling interest (the "2015.3 Reports"), as set forth in Rule 2015.3

---

[2]   A copy of the Disclosure Statement has been filed contemporaneously with this Motion.

[3]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Prepackaged Plan or the First Day Declaration (as defined herein), as applicable.

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and (h) granting related relief.

2.      The following table summarizes the relevant dates requested in this Motion (subject to the Court's calendar):[4]

| Event | Date/Deadline |
|---|---|
| Voting Record Date | December 13, 2025 |
| Commencement of Solicitation | December 14, 2025 |
| Plan Voting Deadline | December 14, 2025 at 11:59 p.m. (Prevailing Eastern Time) |
| Petition Date | December 14, 2025 |
| Mailing of Combined Notice and Notice of Non-Voting Status | Within two (2) business days, or as soon as reasonably practicable, after entry of the Proposed Order |
| Publication Deadline | Twenty-one (21) days prior to the Combined Hearing |
| Deadline to Object to Assumption of Executory Contracts and Unexpired Leases | Twenty-one (21) days after service of the Combined Notice and Notice of Non-Voting Status |
| Plan Supplement Filing Deadline | January 8, 2026 |
| Plan/Disclosure Statement Objection Deadline and Deadline to Return Release Opt-In Forms | January 15, 2026 at 4:00 p.m. (Prevailing Eastern Time) |
| Plan/Disclosure Statement Reply Deadline and Deadline to File Proposed Confirmation Order and Opt-In Report | January 20, 2026 at 12:00 p.m. (Prevailing Eastern Time), or two (2) business days prior to the Combined Hearing |
| Combined Hearing | January 22, 2026 or such other date as the Court may direct |

3.      Also, summarized below are the attachments and exhibits cited throughout this Motion:

| Pleading | Exhibit |
|---|---|
| Proposed Order | **Exhibit A** to this Motion |
| Combined Notice | Exhibit 1 to the Proposed Order |
| Notice of Non-Voting Status | Exhibit 2 to the Proposed Order |
| Forms of Ballots | Exhibit 3-A and 3-B to the Proposed Order |

---

[4]   To the extent of any conflicts between the dates in this chart and the order approving this Motion (the "Solicitation Order"), the Solicitation Order shall control.

**Jurisdiction and Venue**

4. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "Amended Standing Order"). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5. Pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to a final order with respect to this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6. Venue of these chapter 11 cases and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409

7. The bases for the relief requested herein are sections herein are sections 105, 341, 365, 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 1007, 2002, 2003, 2015.3(d), 3016, 3017, 3018, 3020, 9006, and Local Rules 1007-1, 2002-1, 3017-1, and 9006-1.

**Background**

7. On the date hereof (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have contemporaneously filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule

1015(b) and Local Rule 1015-1.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no statutory committees have been appointed or designated.

8.      On December 14, 2025, the Debtors executed a restructuring support agreement (the "Restructuring Support Agreement") with Shenzhen PICEA Robotics Co., Ltd. (f/k/a Shenzhen 3irobotix Co., Ltd.) ("Picea Robotics"), the primary contract manufacturer of the Debtors' robot products, and Santrum Hong Kong Co., Limited ("Picea HK" and, together with Picea Robotics, "Picea"), a wholly owned subsidiary of Picea Robotics.  On November 24, 2025, pursuant to an Assignment and Assumption Agreement, Picea HK purchased and assumed all of the outstanding First Lien Term Loans and, as a result, is the holder of 100% of the First Lien Claims (the only holder of secured debt against the Debtors).  Pursuant to the Restructuring Support Agreement, Picea HK agreed to vote in favor of the Prepackaged Plan and to support confirmation thereof.  The Prepackaged Plan, which reflects the terms of the Restructuring Support Agreement, was filed on the Petition Date along with the Disclosure Statement.  Under the terms of the Prepackaged Plan, on the Effective Date, in full and final satisfaction of the First Lien Claims, Picea HK will own 95% of the New Common Equity in the Reorganized iRobot, and in full and final satisfaction of Picea HK's approximately $74 million General Unsecured Claim (the "Picea HK Supply Agreement Claims") arising against the Debtors under the Picea Supply Agreement, Picea HK will own 5% of the New Common Equity in Reorganized iRobot, resulting in Reorganized iRobot becoming wholly owned by Picea HK upon the Effective Date of the Prepackaged Plan.  Critically, the Prepackaged Plan will, among other things, allow all other General Unsecured Claims to be paid in full or otherwise rendered unimpaired, unless otherwise agreed to with relevant parties, will not impact the Debtors' customers or contract counterparties, and positions the Debtors upon emergence to execute on their go-forward business plan.  The

Debtors seek to implement this streamlined and value-maximizing restructuring as efficiently as possible.

9.      The Prepackaged Plan provides that the Holder of First Lien Claims against the Debtors and the Holder of Picea HK Supply Agreement Claims against the Debtors in Classes 3 and 4—Picea HK—is impaired and entitled to vote on the Prepackaged Plan (together, the "Voting Classes").  On December 14, 2025, the Debtors commenced the solicitation (the "Solicitation") of votes on the Prepackaged Plan from Picea HK in accordance with section 4(a)(2) of the Securities Act.  The Debtors established December 14, 2025 at 11:59 p.m. (prevailing Eastern Time) (the "Voting Deadline") as the deadline for the receipt of votes from the Holders of Claims in the Voting Classes.  As set forth in the *Declaration of Selwyn Perry of Stretto, Inc. Regarding the Solicitation and Tabulation of Votes on the Joint Prepackaged Chapter 11 Plan of Reorganization of iRobot Corporation and Its Debtor Affiliates* (the "Voting Declaration"), filed contemporaneously herewith, prior to the commencement of these chapter 11 cases, and in advance of the Voting Deadline, Picea HK returned its Ballots accepting the Prepackaged Plan.  Consistent with their obligations under the Restructuring Support Agreement, and given that the Debtors have sufficient votes in hand to confirm the Prepackaged Plan as of the Petition Date, the Debtors are seeking to emerge from these chapter 11 cases on an expedited basis, but without seeking to shorten any applicable notice periods under the Bankruptcy Code, Bankruptcy Rules or Local Rules in pursuing confirmation of the Prepackaged Plan.

10.      A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Karian Wong in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

**The Prepackaged Plan**

11.     As described in the Disclosure Statement and the First Day Declaration, the Prepackaged Plan has the full support of the Debtors' key stakeholders—Picea HK, their lone secured lender and largest unsecured creditor, and Picea Robotics, their primary manufacturer and supplier—as evidenced by the Restructuring Support Agreement.  With Picea's support, the transactions contemplated by the Prepackaged Plan will strengthen the Debtors' balance sheet by eliminating their secured debt obligations, materially reducing their General Unsecured Claims, and providing operational concessions under the New Picea Supply Agreement that will provide meaningful liquidity to the Reorganized Debtors to execute on their business plan post-emergence.

12.     The Debtors' proposed restructuring under the Prepackaged Plan provides, among other things, that:

    i.     Holders of Allowed Other Secured Claims will receive payment in full in Cash, delivery of the collateral securing such Holder's Allowed Other Secured Claim, reinstatement, or such other treatment rendering such Holder's Allowed Other Secured Claim unimpaired;

    ii.     Holders of Allowed Other Priority Claims will receive payment in full in Cash or such other treatment consistent with section 1129(a)(9) of the Bankruptcy Code, and Allowed Other Priority Claims that arise in the ordinary course of the Debtors' business after the Effective Date will be paid in the ordinary course;

    iii.     Holders of First Lien Claims will receive in full and final satisfaction, release, discharge of, and in exchange for, such Allowed First Lien Claim, 95% of the New Common Equity on the Effective Date;

    iv.     Holders of Picea HK Supply Agreement Claims will receive, in full and final satisfaction, release, discharge, of, and in exchange for, a waiver of approximately $74,000,000 of the Prepetition Supply Agreement Claims, 5% of the New Common Equity.  The remaining outstanding amount of approximately $84 million due to Picea Robotics under the Picea Supply Agreement shall remain due and owing as of the Effective Date;

    v.     Holders of Allowed General Unsecured Claims, except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors agree (or have agreed) to a less favorable treatment on account of such Claim or such

Claim has been paid or Disallowed by Final Order prior to the Effective Date, each Allowed General Unsecured Claim shall be unimpaired and will continue to be paid in the ordinary course of business on and after the Effective Date, subject to (including the Bankruptcy Code) all claims, defenses, disputes, or Causes of Action the Debtors and Reorganized Debtors may have;

vi.    Intercompany Claims and Intercompany Interests will, at the Debtors' election, be reinstated or cancelled, released, and extinguished without any distribution; and

vii.    Holders of Existing Equity Interests (including all related 510(b) Claims) will have their interests cancelled, released, and extinguished without distribution.

13.    Given that Picea HK, the only party entitled to vote on the Prepackaged Plan is party to the Restructuring Support Agreement and has returned Ballots accepting the Prepackaged Plan—the Debtors submit that the Prepackaged Plan satisfies the requirements of the Bankruptcy Code, can be confirmed, and the Debtors have sufficient votes to proceed to confirmation on the timeline set forth herein.  The following chart summarizes the Classes of Claims and Interests, their status, and voting rights:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | First Lien Claims | Impaired | Entitled to Vote |
| 4 | Picea HK Supply Agreement Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| 8 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

8

**Basis for Relief**

**A.      Scheduling a Combined Hearing**

14.      The Debtors seek a Combined Hearing to consider approval of the Disclosure Statement and the Prepackaged Plan by January 22, 2026.  This request is consistent with the practice for prepackaged cases in this district and applicable statutes and rules and will facilitate an expeditious reorganization consistent with the dates contemplated by the Restructuring Support Agreement.

15.      Bankruptcy Rules 2002(b) and 3017(a) require that twenty-eight (28) days' notice be given by mail to all creditors of the time fixed for filing objections to approval of a disclosure statement or confirmation of a plan of reorganization, subject to the Court's discretion to shorten such period under Bankruptcy Rule 9006(c)(1).  However, Local Rule 3017-1(a) expands upon the notice period provided by the Bankruptcy Rules, and requires thirty-five (35) days' notice of the hearing to consider a proposed disclosure statement.  *See* Del Bankr. L.R. 3017-1(a).  Section 1128(a) of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan."  In addition, Bankruptcy Rule 3017(c) provides that "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation." Section 105(d)(2)(B)(vi) of the Bankruptcy Code provides that the Court may combine the hearing on approval of a disclosure statement with the hearing on confirmation of a chapter 11 plan.  In addition, under Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."

16.    Here, it is appropriate for the Court to enter the Proposed Order and have the notice periods for approval of the Disclosure Statement and Prepackaged Plan run simultaneously pursuant to section 105(d)(2)(B)(vi) of the Bankruptcy Code and Bankruptcy Rule 9006(c)(1).

17.    *First*, it is critical to the success of the Debtors' restructuring that these chapter 11 cases move expeditiously.  The Restructuring Support Agreement requires that the Debtors meet various milestones, including obtaining confirmation of the Prepackaged Plan within 45 days of the Petition Date.  Absent conditional approval and a Combined Hearing on the schedule set forth below, Picea could terminate the Restructuring Support Agreement, which would unravel the value-maximizing transaction that the Debtors have spent months negotiating, and will significantly increase the costs of administering and funding these chapter 11 cases.  *Second*, the Debtors already have the votes necessary to confirm the Prepackaged Plan.  *Third*, the terms of the Prepackaged Plan are not overly complex and constitute a debt-for-equity financial restructuring for which the relevant parties are already very familiar.  *Fourth*, the adverse effects of the chapter 11 filings upon the Debtors' business and going-concern value will be minimized, and the benefit to creditors maximized, through prompt distributions to Holders of Claims against the Debtors.  Such benefits are the hallmarks of a prepackaged plan of reorganization.  *Fifth*, the Holders of Claims and Interests not entitled to vote will not be denied due process because such Holders, except as otherwise set forth herein, will receive a Notice of Non-Voting Status (including a Release Opt-In Form, as defined below), including notice of the Objection Deadline consistent with the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

18.    In addition to the reasons set forth above, it is appropriate to enter the Proposed Order at this time so parties in interest will be informed, as promptly as possible, of the anticipated

schedule of events that will occur up to and including confirmation of the Prepackaged Plan at the Combined Hearing.

19.     The proposed schedule set forth herein is rule-compliant and affords Holders of Claims against and Interests in the Debtors and all parties in interest ample notice of these chapter 11 cases and the Combined Hearing.  Specifically, the proposed schedule provides at least twenty-eight (28) days' notice of the Objection Deadline and thirty-five (35) days' notice of the Combined Hearing.  As a result, parties will have sufficient time to evaluate their rights in respect of the Prepackaged Plan prior to the Combined Hearing, and, therefore, no party in interest will be prejudiced by the requested relief.

20.     Therefore, the Debtors respectfully request that the Court schedule the Combined Hearing on January 22, 2026, or as soon thereafter as is practicable in light of the Court's calendar. The Debtors further request that the Proposed Order provide that the Combined Hearing may be adjourned from time to time without further notice other than adjournments announced in open court or in the filing of a notice or hearing agenda in these chapter 11 cases, with notice of such adjourned date(s) to be made available on the electronic case filing docket and the website maintained by Stretto, Inc. (the "Solicitation and Voting Agent") at https://cases.stretto.com/iRobot.

**B.      Conditional Approval of the Disclosure Statement**

21.     The Debtors also seek conditional approval of the Disclosure Statement pursuant to this Motion, with final approval of the Disclosure Statement to be determined at the Combined Hearing.  Under section 1125(a) of the Bankruptcy Code, a plan proponent must provide holders of impaired claims and interests with "adequate information" regarding a debtor's proposed reorganization, which is defined as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

22.     Whether a disclosure statement contains adequate information is intended by Congress to be a flexible, fact-specific inquiry left within the discretion of the bankruptcy court:

> Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection. There will be a balancing of interests in each case. In reorganization cases, there is frequently great uncertainty. Therefore the need for flexibility is greatest.

H.R. REP. NO.95-595, at 409 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6365.  *See also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (observing that "adequate information will be determined by the facts and circumstances of each case").

23.     The Disclosure Statement is extensive and comprehensive.  It contains descriptions of, among other things, (a) the Prepackaged Plan; (b) the Debtors' operations; (c) the reasons for, and circumstances leading up to, the Debtors' restructuring; (d) the Debtors' prepetition indebtedness; (e) the Reorganized Debtors' proposed capital structure; (f) financial information relevant to creditors' determinations of whether to accept or reject the Prepacked Plan; (g) securities law matters relevant to the Debtors' restructuring; (h) a liquidation analysis setting forth estimated returns that Holders of Claims and Interests would receive in a hypothetical chapter 7 liquidation; (i) risk factors regarding the Debtors and the Prepacked Plan; and (j) federal tax law consequences of the Prepackaged Plan.

12

24.     For the avoidance of doubt, the Debtors are only seeking conditional approval of the Disclosure Statement and are not requesting that the Proposed Order be a determination as to the adequacy of the Disclosure Statement.  Rather, such approval will be sought on a final basis at the Combined Hearing, and all parties' rights to object to the adequacy of the Disclosure Statement (subject to and in accordance with the deadlines and procedures otherwise set forth in the Proposed Order) are reserved.

## C.     Approval of the Solicitation Procedures and Forms of Solicitation Materials

25.     The Court should approve the Solicitation, balloting, tabulation, and related activities undertaken in connection with the Prepackaged Plan (collectively, the "Solicitation Procedures").  As set forth below, the Solicitation Procedures comply with the various applicable provisions of the Bankruptcy Rules and Bankruptcy Code and should be approved.

### 1.     The Debtors' Prepetition Solicitation Was Exempt from Registration and Disclosure Requirements Otherwise Applicable Under Non-Bankruptcy Law

26.     Section 1125(g) of the Bankruptcy Code provides:  "[A]n acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law."   11 U.S.C. § 1125(g). Section 1126(b) of the Bankruptcy Code provides:

> [A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if—(a) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or (b) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

11 U.S.C. § 1126(b).   Therefore, either prepetition solicitation must comply with generally applicable federal and state securities laws and regulations (including the registration and disclosure

requirements thereof) or, if such laws and regulations do not apply, the solicited holders must receive "adequate information" under section 1125 of the Bankruptcy Code.

27.     Prior to the Petition Date, the Debtors distributed the Solicitation Packages to the Holder of Claims in the Voting Classes and solicited votes on the Prepackaged Plan from such Holder.  Because the Prepackaged Plan provides the Holder of Allowed Claims in the Voting Classes with distributions that include new securities, the Debtors required that the Holder, prior to submitting the Ballots, certify in the respective Ballots that such Holder is (a) a "qualified institutional buyer" (as defined in Rule 144A under the Securities Act) or an "accredited investor" (as defined in Rule 501(a) of Regulation D under the Securities Act) or (b) located outside the United States and is a person other than a "U.S. person" (as defined in Rule 902 under the Securities Act) (the "Eligible Holder").  The Debtors respectfully submit that their prepetition Solicitation of the Eligible Holder was exempt from the registration requirements of the Securities Act of 1933, as amended (the "Securities Act"), under one or more of the exceptions from registration provided thereunder, including section 4(a)(2) thereof, and under one or more exceptions under state "Blue Sky" laws, or any similar rules, regulations, or statutes.  Section 4(a)(2) of the Securities Act creates an exemption from nonbankruptcy securities law for transactions not involving a "public offering."  The Debtors' prepetition Solicitation does not constitute a public offering because it falls within the exemption set out in section 4(a)(2) of the Securities Act.

28.     Therefore, because the Solicitation Procedures comply with applicable federal and state securities laws, the Debtors' prepetition actions under the Solicitation Procedures satisfied the requirements of section 1126(b)(1) and 1126(g) of the Bankruptcy Code.  As noted above, the Debtors will seek a final determination from the Court at the Combined Hearing that the solicited

14

Holder of Claims received "adequate information" as defined by section 1125(a) of the Bankruptcy Code in compliance with section 1126(b)(2) of the Bankruptcy Code.

**2.    Non-Solicitation of Classes Presumed to Accept or Deemed to Reject the Prepackaged Plan**

29.    The Prepackaged Plan provides that the Holders of Claims and Interests in specific Classes are presumed to accept or deemed to reject the Prepackaged Plan (collectively, the "Non-Voting Holders").  Specifically, Holders of Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), and Class 5 (General Unsecured Claims) are unimpaired and are conclusively presumed to accept the Prepackaged Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, each holder of a claim in an unimpaired class is "conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class . . . is not required." 11 U.S.C. § 1126(f).  Accordingly, each of the Holders of Claims in the above-mentioned unimpaired Classes is conclusively presumed to accept the Prepackaged Plan and, therefore, not entitled to vote.

30.    In addition, the Prepackaged Plan provides that each Holder of Interests in Class 8 (Existing Equity Interests) is impaired and will receive no distributions under the Prepackaged Plan.  Section 1126(g) of the Bankruptcy Code provides that "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests." 11 U.S.C. § 1126(g).  Accordingly, pursuant to section 1126(g) of the Bankruptcy Code, Holders of such Interests are deemed to have rejected the Prepackaged Plan and, therefore, are not entitled to vote.

31.    Similarly, Holders of Claims and Interests in Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests) are either unimpaired or not expected to receive any recovery on

account of their Claims or Interests and, thus, are either conclusively presumed to accept or deemed to reject the Prepackaged Plan (as applicable). Accordingly, Holders of Claims and Interests in Classes 6 and 7 are either conclusively presumed to accept or deemed to reject the Prepackaged Plan were not solicited.

32.    The Debtors are requesting a waiver of the requirement that they mail copies of the Prepackaged Plan and Disclosure Statement to any Non-Voting Holder. *See* Fed. R. Bankr. P. 3017(d) (requiring transmission of court-approved disclosure statement to creditors and equity security holders). The Debtors submit that Bankruptcy Rule 3017(d) does not apply here because the Debtors commenced Solicitation of acceptances and rejections of the Prepackaged Plan on a prepetition basis and, thus, there was no disclosure statement "approved by the court" to transmit. Alternatively, the Court should determine that the Debtors are not required to provide those materials to Non-Voting Holders because they are conclusively presumed to accept or deemed to reject the Prepackaged Plan by operation of law. Accordingly, it would be a significant and unnecessary administrative burden on the Debtors to transmit the Disclosure Statement and Prepackaged Plan to such Non-Voting Holders.

33.    In lieu of furnishing each Non-Voting Holder with a copy of the Prepackaged Plan and Disclosure Statement, the Debtors propose to send to each Non-Voting Holder, either by email at the email address maintained for such Non-Voting Holder in the Debtors' books and records, or by traditional mail where email is unavailable, the Combined Notice, which sets forth a summary of the Prepackaged Plan and the treatment of such Non-Voting Holder's Claims or Interests and sets forth the manner in which a copy of the Prepackaged Plan and the Disclosure Statement may be obtained. The Debtors have made the Disclosure Statement and the Prepackaged Plan available at no cost on the Solicitation and Voting Agent's website at https://cases.stretto.com/iRobot.

16

34.     In addition to the Combined Notice, the Debtors propose to send to the (a) Holders of Claims in Class 1 (Other Secured Claims), (b) Holders of Claims in Class 2 (Other Priority Claims), (c) Holders of Claims in Class 5 (General Unsecured Claims), and (d) Holders of Interests in Class 8 a notice of non-voting status (the "Notice of Non-Voting Status"), including a release opt in form attached thereto (the "Release Opt-In Form") at the email address maintained in the Debtors' books and records, or, to the extent that email addresses are unavailable for certain Non-Voting Holders, the Debtors will mail (or cause to be mailed) the Notice of Non-Voting Status (together with the Combined Notice) to such parties by December 18, 2025 at the physical address maintained in the Debtors' books and records.  To provide the tens of thousands of Non-Voting Holders in Class 1, Class 2, Class 5, and Class 8 with copies by mail would be an expensive an unnecessary administrative burden on the Debtors to transmit such materials.  Additionally, such Non-Voting Holders are either unimpaired and conclusively presumed to accept the Prepackaged Plan or impaired and deemed to reject the Prepackaged Plan.  With respect to Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests), the Debtors request a waiver of any requirement to serve the Combined Notice, a Notice of Non-Voting Status, or any other type of notice in connection with the Prepackaged Plan because such Claims and Interests are held by the Debtors' affiliates (and not individual creditors or interest holders).

35.     Accordingly, given the excessive costs of mailing these notices to the Non-Voting Holders, and because (a) such customers are unimpaired under the Prepackaged Plan and (b) communicate with the Debtors electronically in the ordinary course of business, the Debtors believe that service of the Notice of Non-Voting Status and the Combined Notice to the Non-Voting Holders as proposed herein will provide an appropriate, efficient and effective means of service. The Debtors, together with the Solicitation and Voting Agent, have established the case website

17

located at https://cases.stretto.com/iRobot, where, among other things, electronic copies of all pleadings, including the Notice of Non-Voting Status and Combined Notice, filed in these chapter 11 cases shall be posted as soon as practicable, and may be viewed free of charge.

36.    The Notice of Non-Voting Status, attached as Exhibit 2 to the Proposed Order, contains the full text of the release, exculpation, and injunction provisions set forth in Article VIII of the Prepackaged Plan and advises the Non-Voting Holders that they will be deemed to have consented to the third-party release provision in Article VIII.D of the Prepackaged Plan only if they timely and properly choose to opt-in by submitting a Release Opt-In Form.[5]   The Notice of Non-Voting Status also includes instructions for where the Non-Voting Holders can obtain copies of the Prepackaged Plan, Disclosure Statement, and related exhibits such as the valuation analysis, financial projections, and plan supplement documents and information generally about the Prepackaged Plan and Combined Hearing.  Under the circumstances, the Debtors submit that the Notice of Non-Voting Status, including the Release Opt-In Form, is adequate and appropriate to provide the Non-Voting Holders notice of their non-voting status and the opportunity to opt into the third-party release provision set forth in Article VIII.D of the Prepackaged Plan.

37.    Further, the Solicitation Procedures undertaken by the Debtors and described herein with respect to the Non-Voting Holders comply with the Bankruptcy Code, the Bankruptcy Rules and Local Rules and should be approved.  Accordingly, the Debtors respectfully request that the Court approve the Solicitation Procedures with respect to the Non-Voting Classes.

---

[5]    The Debtors intend to file a report identifying all persons or entities that timely elected to opt into the third-party release provision in Article VIII.D of the Prepackaged Plan no later than 12:00 p.m. (Prevailing Eastern Time) on the date that is two (2) business days in advance of the Combined Hearing.

3.    **Solicitation of Impaired Classes Entitled to Vote to Accept or Reject the Prepackaged Plan**

38.    Only the Holder of Claims in the Voting Classes—Classes 3 (First Lien Claims) and 4 (Picea HK Supply Agreement Claims)—was entitled to vote to accept or reject the Prepackaged Plan.  The Holder of Claims in the Voting Classes voted its respective Ballots in favor of the Prepackaged Plan prior to the Petition Date.

39.    Prior to filing these chapter 11 cases, the Debtors distributed the Solicitation Packages to the Holder of Claims in the Voting Classes in accordance with sections 1125 and 1126 of the Bankruptcy Code.  *See* 11 U.S.C. § 1125(g) ("[A]n acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law.").

40.    Specifically, on December 14, 2025, consistent with the requirements of the Restructuring Support Agreement, the Debtors commenced Solicitation from the Holder of Claims in the Voting Classes by transmitting, via electronic mail, copies of the solicitation package containing the Disclosure Statement, including the Prepackaged Plan and other exhibits thereto, and the Ballots, (the "Solicitation Package"), to the Holder of Claims in the Voting Classes.

41.    The Solicitation Package advised the Voting Classes of the Voting Deadline, among other things.  The Solicitation Package also advised that the Ballots must be returned to the Solicitation and Voting Agent and specified that Ballots must be returned to the Solicitation and Voting Agent or in accordance with the instructions received with the Ballots.  The Ballots also contain detailed instructions on how to complete them and how to make any applicable elections contained therein.

19

42.     Moreover, the materials in the Solicitation Packages establish and communicate how the Solicitation and Voting Agent will tabulate the votes and elections contained in the Ballots.  Those tabulation rules provide, among other things, that: (a) a timely, properly completed Ballot submitted by a Holder of Claims in a Voting Class supersedes and revokes any prior Ballot(s) submitted by that Holder; (b) Ballots that attempt to partially accept and partially reject the Prepackaged Plan will not be counted; (c) illegible Ballots will not be counted; (d) Ballots containing insufficient information to identify the Holder will not be counted; (e) any form of ballot other than the official form of Ballot sent by the Solicitation and Voting Agent will not be counted; and (f) Ballots received after the Voting Deadline (provided that such Voting Deadline has not been extended) will not be counted.  As specified on the Ballots, any Ballot that is otherwise properly completed, executed, and timely returned to the Solicitation and Voting Agent, but does not indicate an acceptance or rejection of the Prepackaged Plan, or that indicates both an acceptance and rejection of the Prepackaged Plan, will not be counted as a vote in determining acceptance or rejection of the Prepackaged Plan.  Furthermore, the Holder of Claims in the Voting Classes and its advisors reviewed, commented on and signed-off on the Solicitation Procedures and Solicitation Materials, as was required by the Restructuring Support Agreement, prior to the commencement of Solicitation.

43.     In addition to accepting hard copy Release Opt-In Forms via first class mail, overnight courier, and hand delivery, the Debtors request authorization to accept Release Opt-In Forms via electronic, online transmissions, solely through a customized online balloting portal maintained by the Solicitation and Voting Agent on the Debtors' case website (the "E-Form Portal").  Parties entitled to opt-in may cast an electronic Release Opt-In Form and electronically sign and submit a Release Opt-In Form instantly by utilizing the E-Form Portal (which allows a

Holder to submit an electronic signature). Instructions for electronic, online transmission of Release Opt-In Forms through the E-Form Portal are set forth on the forms of the Release Opt-In Form. The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Release Opt-In Form submitted in this manner and the Claim and Interest Holders' electronic signature will be deemed to be immediately legally valid and effective. The E-Form Portal shall be the sole method by which a Holder of a Claim or Interest may submit a Release Opt-In Form electronically.

### 4.     The Voting Record Date

44.     Bankruptcy Rule 3018(b) provides, in a prepetition solicitation, the holders of record of the applicable claims against and interests in a debtor entitled to receive ballots and related solicitation materials are to be determined "on the date specified in the solicitation." Fed. R. Bankr. P. 3018(b). The Ballots clearly identified December 14, 2025, as the date for determining which Holders of Claims were entitled to vote to accept or reject the Prepackaged Plan (the "Voting Record Date").

### 5.     The Voting Deadline

45.     Bankruptcy Rule 3018(b) provides that prepetition acceptances and rejections of a plan are valid only if the plan was transmitted to substantially all of the holders of claims in the same voting class and the time for voting was not unreasonably short. The Prepackaged Plan was transmitted to the only Holder of Claims in the Voting Classes on the date that the Solicitation began. As clearly set forth in the Disclosure Statement and Ballots, the Voting Deadline was December 14, 2025 at 11:59 p.m. (Prevailing Eastern Time).

46.     As set forth above, to be counted as votes to accept or reject the Prepackaged Plan, the Ballots were required to be properly executed, completed, and delivered to the Solicitation and Voting Agent so that they were received no later than the Voting Deadline.

47.     As set forth in the Voting Declaration, the Holder of Claims in the Voting Classes has submitted its Ballots voting in favor of the Prepackaged Plan, having been provided adequate time to consider the materials in the Solicitation Package.  Again, the Holder of First Lien Claims and Picea HK Supply Agreement Claims was aware of and agreed to the Voting Deadline in advance of the commencement of Solicitation to facilitate an expeditious restructuring consistent with the carefully negotiated terms of the Prepackaged Plan and Restructuring Support Agreement. The Holder of Claims in the Voting Classes and its advisors played an instrumental role in negotiating the terms of the Prepacked Plan and Disclosure Statement with the Debtors, and thus were familiar with their contents before Solicitation began.  Accordingly, the Debtors submit that the one-day solicitation period and the Voting Deadline are sufficient and appropriate under the circumstances.

**6.     Forms of Ballots and Tabulation Procedures**

48.     Bankruptcy Rule 3017(d) requires that the Debtors use a form of ballot substantially conforming to Official Form No. 314.  The Ballots, copies of which are annexed as Exhibits 3-A and 3-B to the Proposed Order, are based on Official Form No. 314 and were modified to address the particular aspects of these chapter 11 cases and to be relevant and appropriate for the Voting Classes.  As set forth herein, the Holder of Claims entitled to vote on the Prepacked Plan was transmitted a Ballot for each Voting Class.  The Debtors respectfully submit that the forms of Ballots comply with the Bankruptcy Rules and, therefore, should be approved.

49.     Contemporaneously herewith, the Debtors filed the Voting Declaration setting forth the voting results and certifying to the Court in writing the voting amount and number of Claims accepting or rejecting the Prepackaged Plan.  As reflected in the Voting Declaration, the only Holder entitled to vote on the Prepackaged Plan returned its Ballots accepting the Prepackaged Plan.

22

50.     In consideration of the foregoing, the Debtors submit that the Solicitation Procedures are in full compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Accordingly, the Debtors respectfully request that the Court approve the Solicitation Procedures, including the Ballot and tabulation procedures.

**D.      Confirmation of the Prepackaged Plan**

51.     The Debtors believe that the Prepackaged Plan satisfies all of the requirements for confirmation under the Bankruptcy Code.  As noted above, the Debtors have requested that the Court schedule the Combined Hearing, at which time the Debtors will seek confirmation of the Prepackaged Plan.  Before the Combined Hearing, the Debtors will file a brief in support of confirmation that, among other things, (a) demonstrates that the Prepackaged Plan satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code and (b) responds to objections to confirmation, if any.

**E.      Deadline and Procedures for Objections to Final Approval of the Disclosure Statement and Confirmation of the Prepackaged Plan**

52.     Bankruptcy Rule 3017(a) authorizes the Court to fix a time for filing objections to the adequacy of a disclosure statement, and Bankruptcy Rule 3020(b)(1) authorizes the Court to fix a time for filing objections to confirmation of a plan of reorganization.  Further, Bankruptcy Rule 2002(b) requires that at least twenty-eight (28) days' notice be given by mail to all creditors of the time fixed for filing objections to approval of a disclosure statement and confirmation of a plan of reorganization.  Local Rule 3017-1(a) similarly requires twenty-eight (28) days' notice to be given to all creditors of the time fixed for filing objections to approval of a disclosure statement. *See* Del. Bankr. L.R. 3017-1(a).

53.     The Debtors request that the Court set January 15, 2026 at 4:00 p.m. (Prevailing Eastern Time) as the deadline to file objections to the adequacy of the Disclosure Statement or

23

confirmation of the Prepackaged Plan. The proposed Objection Deadline will provide Holders of Claims and Interests with sufficient notice of the deadline for filing objections to the Disclosure Statement and Prepackaged Plan, while still affording the Debtors and other parties time to file a responsive brief and, if possible, consensually resolve any objections received. The Debtors further request that they be authorized to file replies to any timely objections or responses to confirmation no later than 12:00 p.m. (prevailing Eastern Time) two (2) business days before the Combined Hearing.

54.     In addition, the Debtors request that the Court direct that any responses or objections to the adequacy of the Disclosure Statement or confirmation of the Prepackaged Plan must: (a) be in writing; (b) conform to the applicable Bankruptcy Rules and the Local Rules; (c) set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof; and (d) be filed with the Court, together with proof of service. In addition to being filed with the Court, any such responses or objections must be served on the following parties so as to be received by the Objection Deadline:

    i.     the Debtors, iRobot Corporation, 8 Crosby Drive, Bedford, MA 01730 (Attn: Gary Cohen, Jeff Engel, Karian Wong, and Kevin Lanouette);

    ii.    proposed counsel to the Debtors, (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Paul M. Basta, Esq., Alice Belisle Eaton, Esq., and John T. Weber, Esq.) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Andrew L. Magaziner, Esq., Shella Borovinskaya, Esq., and Kristin Cardoza, Esq.);

    iii.   counsel to Picea, (a) White & Case LLP, 555 Flowers Street. Los Angeles, California 90071 (Attn: Roberto Kampfner, Esq. and Fan He, Esq.) and (b) Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801 (Attn: John H. Knight, Esq. and Amanda R. Steele, Esq.); and

    iv.   the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jonathan W. Lipshie, Esq.).

55.     The proposed confirmation schedule is reasonable and appropriate in light of the facts and circumstances of these chapter 11 cases. *First*, consistent with the Bankruptcy Rules and the Local Rules, the Objection Deadline of January 15, 2026, is twenty-eight (28) days following proposed service of the Combined Notice and the Notice of Non-Voting Status, assuming that service is completed within two days after the Proposed Order is entered as contemplated herein. *Second*, the proposed confirmation schedule is intended to preserve value for the Debtors' creditors by reducing the administrative costs of a drawn-out chapter 11 proceeding. Given the prepackaged nature of these chapter 11 cases and the terms of the Prepackaged Plan, permitting the Combined Hearing to take place, as proposed, on January 22, 2026, is essential to the success of the reorganization. *Third*, the Debtors commenced Solicitation on December 14, 2025, approximately six (6) weeks before the requested date for the Combined Hearing. The Disclosure Statement and other solicitation materials were distributed to the Holder of Claims entitled to vote on the Prepackaged Plan. The Debtors also made the Prepackaged Plan and the Disclosure Statement available on the Solicitation and Voting Agent's case website, at no cost, to all parties in interest.

56.     In these chapter 11 cases, the Debtors have proposed noticing and Solicitation Procedures that are consistent with precedent in this district, provide more than sufficient notice of these chapter 11 cases and the deadline to file objections to the approval of the Prepackaged Plan and the Disclosure Statement, and provided the Holder of First Lien Claims and Picea HK Supply Agreement Claims in the Voting Classes sufficient time to vote on the Prepackaged Plan (again with such Holder negotiating and approving the form of the Prepackaged Plan, the Disclosure Statement, the Solicitation Procedures, and the Ballots). Accordingly, the Debtors request that the Court approve January 15, 2026 at 4:00 p.m., prevailing Eastern Time, as the

Objection Deadline.  The Debtors further request that the Court approve the Debtors' proposal to require that objections to the Disclosure Statement or confirmation of the Prepackaged Plan meet the factors set forth above.

**F.      Form and Manner of Notice of the Commencement of these Chapter 11 Cases, the Combined Hearing, and the Objection Deadline**

57.      The Debtors propose to serve a notice (the "Combined Notice"), substantially in the form annexed as Exhibit 1 to the Proposed Order, on the Debtors' creditor matrix and all interest holders of record, excluding the Debtors and their affiliates.  The Combined Notice sets forth (a) the date, time, and place of the Combined Hearing, (b) instructions for obtaining copies of the Disclosure Statement and Prepackaged Plan, (c) the Objection Deadline and the procedures for filing objections to the Disclosure Statement and confirmation of the Prepackaged Plan, (d) procedures in respect of assumption of Executory Contracts and Unexpired Leases, and (e) notice of commencement of these chapter 11 cases.

58.      In addition, Bankruptcy Rule 2002(1) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  The Debtors request that this Court authorize the Debtors, in their discretion, to give supplemental publication notice of the Combined Hearing, no later than twenty-one (21) days prior to the Combined Hearing, in either the *New York Times* or *USA Today* and any other publications the Debtors deem prudent, in their sole discretion (the "Publication Notice").

59.      As an additional form of notice to parties in interest in these cases, the Debtors intend to post to the Solicitation and Voting Agent's website various chapter 11 documents, including (a) the Prepackaged Plan, (b) the Disclosure Statement, (c) this Motion and any orders entered in connection with this Motion, and (d) the Combined Notice.

60.     The proposed service of the Combined Notice will provide sufficient notice to all parties in interest in these chapter 11 cases of the commencement of such cases, the date, time, and place of the Combined Hearing, and the procedures for objecting to the adequacy of the Disclosure Statement or the confirmation of the Prepackaged Plan.  In addition, the Publication Notice will provide sufficient notice to any person who did not otherwise receive notice pursuant to the Combined Notice.

**G.     Procedures in Respect of the Assumption of Executory Contracts and Unexpired Leases**

61.     The Prepackaged Plan provides that all Executory Contracts and Unexpired Leases to which the Debtors are parties shall be deemed assumed by the Debtors, unless such contract or lease (a) was previously assumed or rejected by the Debtors pursuant to Final Order of the Court, (b) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, (c) is the subject of a motion to reject filed by the Debtors on or before the Effective Date, or (d) is specifically designated as a contract or lease to be rejected on the Schedule of Rejected Executory Contracts and Unexpired Leases.

62.     The Debtors intend to serve the Combined Notice on all non-Debtor parties to Executory Contracts and Unexpired Leases, reflecting the Debtors' intention to assume the Executory Contracts or Unexpired Leases in connection with the Prepackaged Plan and indicating that the Debtors or the Reorganized Debtors, as applicable, will pay any undisputed portion of a Cure Claim, if any, on (a) the Effective Date or as soon as reasonably practicable thereafter, for Executory Contracts and Unexpired Leases assumed as of the Effective Date, (b) in the ordinary course of the Debtors' business in accordance with the terms of such Executory Contract or Unexpired Lease, or (c) the assumption effective date, if different than the Effective Date.  In addition, the Combined Notice provides that in the event of any dispute pertaining to the

assumption of an Executory Contract or Unexpired Lease, such dispute will be addressed pursuant to Article V of the Prepackaged Plan, which provides that the Court will make a determination on the dispute before the assumption is effective, or the Debtors (with the consent of Picea) or the Reorganized Debtors, as applicable, may settle any dispute without any further notice to any party or any action, order, or approval of the Court.

63.    The Debtors respectfully submit that the notice of the Debtors' assumption of Executory Contracts and Unexpired Leases, as provided in the Combined Notice, and the procedures set forth herein, are appropriate under the circumstances.  Pursuant to the procedures proposed by the Debtors, the Debtors will serve the Combined Notice on all applicable counterparties to Executory Contracts and Unexpired Leases approximately twenty-one (21) days before the deadline to object to assumption of the Executory Contracts and Unexpired Leases.

**H.    Extension and Conditional Waiver of the 341 Meeting, the Filing of Schedules and Statements, and the Filing of 2015.3 Reports**

64.    The Debtors also request that the Proposed Order provide that (a) the 341 Meeting shall not be scheduled by the U.S. Trustee before the Schedules and 2015.3 Deadline (February 23, 2026), which date is approximately seventy (70) days from the Petition Date, (b) the time for filing each of the  Schedules and Statements and the 2015.3 Reports be extended until the same date, and (c) if the Prepackaged Plan is confirmed on or before the Schedules and 2015.3 Deadline, the 341 Meeting will be waived, and the Debtors will be excused from filing the Schedules and Statements and 2015.3 Reports, in each case without further order of the Court.

65.    While section 341 of the Bankruptcy Code requires the U.S. Trustee to convene and preside at a meeting of creditors, it also provides for the following exception:

> Notwithstanding subsections (a) and (b), the court, on the request of a party in interest and after notice and a hearing, for cause may order that the United States trustee not convene a meeting of creditors or equity security holders if the debtor has filed a plan as to which the debtor solicited acceptances prior to the commencement of the case.

11 U.S.C. § 341(e). The Debtors solicited acceptances of the Prepackaged Plan from the Eligible Holder before the Petition Date, and, therefore, the requested conditional relief pursuant to section 341(e) of the Bankruptcy Code is appropriate here.

66.     The Debtors also request that the time for filing the Schedules and Statements and the 2015.3 Reports be extended until the Schedules and 2015.3 Deadline, and if the Prepackaged Plan is confirmed prior to the Schedules and 2015.3 Deadline, the Debtors request that the requirement to file Schedules and Statements and the 2015.3 Reports be waived. Section 521 of the Bankruptcy Code requires a debtor to file schedules of assets and liabilities and statements of financial affairs unless the Court orders otherwise. 11 U.S.C. § 521(a)(1)(A)–(B). These schedules and statements must be filed within fourteen (14) days after the petition date unless the bankruptcy court grants an extension of time "on motion for cause shown." Fed. R. Bankr. P. 1007(c). Local Rule 1007-1 extends the time for filing schedules and statements to twenty-eight (28) days after the Petition Date when a debtor has more than 200 creditors and files a list of its creditors with its voluntary petition. See Del. Bankr. L.R. 1007-1. The Court is authorized to grant the Debtors further extension "for cause" pursuant to Bankruptcy Rule 1007(c).

67.     Similarly, pursuant to Bankruptcy Rule 2015.3, a chapter 11 debtor must file, no later than seven (7) days before the date set for the 341 Meeting and no less than every six (6) months thereafter, periodic financial reports of the value, operations, and profitability of each entity that is not a publicly traded corporation or a debtor in the chapter 11 cases and in which the estate holds a substantial or controlling interest. See Fed. R. Bankr. P. 2015.3(a)–(c). Bankruptcy Rule 9006(b)(1) provides the Court with authority to extend the period of time to file the 2015.3

29

Reports "for cause." Additionally, Bankruptcy Rule 2015.3(d) provides the Court with the ability, after notice and a hearing, to modify the reporting requirements for cause, including that the debtor is "not able, after a good faith effort, to comply with those reporting requirements, or that the information . . . is publicly available." Fed. R. Bankr. P. 2015.3(d).

68.     Sufficient cause exists here for such further extension through and including the Schedules and 2015.3 Deadline. The purposes of filing the Schedules and Statements are to provide notice to creditors and to disclose information about the debtor to holders of claims. Here, however, the benefits of filing the Schedules and Statements are heavily outweighed by their costs. Requiring the Debtors to complete and file the Schedules and Statements would be time consuming, distracting to the Debtors' management, and costly to the Debtors' estates, while providing little benefit to parties in interest in these chapter 11 cases. No party in interest would be prejudiced by the Court granting the Debtors' request for an extension through and including the Schedules and 2015.3 Deadline because the Debtors have proposed the Prepackaged Plan, under which trade claims and other general unsecured claims will ride through these chapter 11 cases unimpaired. Therefore, the Court should only require the Debtors to file Schedules and Statements if the Prepackaged Plan is not confirmed on or before the Schedules and 2015.3 Deadline.

69.     Accordingly, the Debtors respectfully request that the Court waive the requirement to file Schedules and Statements, waive the requirement to file 2015.3 Reports, and direct the U.S. Trustee not to convene a 341 Meeting unless the Prepackaged Plan is not confirmed on or before the Schedules and 2015.3 Deadline.

## **Immediate Relief Is Necessary**

70.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P.

6003. As described above, the relief sought herein is necessary for the Debtors to consummate the Restructuring Transactions memorialized in the Prepackaged Plan in a timely and efficient manner, thereby preserving and maximizing value for the estates. For this reason and those set forth above, the Debtors respectfully submit that Bankruptcy Rule 6003(b) has been satisfied because the relief contemplated by the Proposed Order is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

## Waiver of Bankruptcy Rules 6004(h)

71. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As provided herein, and to implement the foregoing successfully, the Debtors request that the Proposed Orders include a finding that the Debtors have established cause to exclude such relief from the fourteen (14)-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

72. Nothing contained herein or any actions taken pursuant to such relief requested is intended to be or should be construed as: (a) an implication or admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security

interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

**Notice**

73.    The Debtors will provide notice of this Motion to: (a) the U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Attorney's Office for the District of Delaware; (d) the Internal Revenue Service; (e) the office of the attorney general for each of the states in which the Debtors conduct business; (f) the Securities and Exchange Commission; (g) counsel to Picea; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

| | | |
|---|---|---|
| Dated: | December 14, 2025<br>Wilmington, Delaware | Respectfully submitted, |

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Shella Borovinskaya*
Sean T. Greecher (No. 4484)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Kristin L. Cardoza (No. 6871)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: sgreecher@ycst.com
amagaziner@ycst.com
sborovinskaya@ycst.com
kcardoza@ycst.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (*pro hac vice* admission pending)
Alice Belisle Eaton (*pro hac vice* admission pending)
John T. Weber (*pro hac vice* admission pending)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email: pbasta@paulweiss.com
aeaton@paulweiss.com
jweber@paulweiss.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| iROBOT CORPORATION, *et al.*, [1] | ) | Case No. 25-12197 (___) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Ref. Docket No. __** |

**ORDER (I) SCHEDULING COMBINED HEARING
ON (A) ADEQUACY OF DISCLOSURE STATEMENT
AND (B) CONFIRMATION OF PREPACKAGED PLAN;
(II) CONDITIONALLY APPROVING DISCLOSURE STATEMENT;
(III) APPROVING SOLICITATION PROCEDURES AND FORM AND
MANNER OF NOTICE OF COMMENCEMENT, COMBINED HEARING,
AND OBJECTION DEADLINE; (IV) FIXING DEADLINE TO OBJECT TO
DISCLOSURE STATEMENT AND PREPACKAGED PLAN; (V) APPROVING
NOTICE AND OBJECTION PROCEDURES FOR THE ASSUMPTION OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (VI) CONDITIONALLY
(A) DIRECTING THE UNITED STATES TRUSTEE NOT TO CONVENE
SECTION 341 MEETING OF CREDITORS AND (B) WAIVING REQUIREMENT OF
FILING STATEMENTS OF FINANCIAL AFFAIRS, SCHEDULES OF ASSETS AND
LIABILITIES, AND 2015.3 REPORTS; AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an order (this "Order") pursuant to sections 105, 341,

365, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 1007, 2002, 2003,

2015.3(d), 3016, 3017, 3018, 3020, 6003, 6004, and 9006, and Local Rules 1007-1, 2002-1,

3017-1, and 9006-1 (a) scheduling a Combined Hearing to approve the Disclosure Statement and

consider confirmation of the Prepackaged Plan, (b) conditionally approving the Disclosure

Statement, (c) approving the Solicitation Procedures, Combined Notice, and Publication Notice,

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: iRobot Corporation (9335); iRobot US Holdings, LLC (5237); and iRobot Holdings LLC (5307). For purposes of these chapter 11 cases, the Debtors' service address is 8 Crosby Drive, Bedford, MA 01730.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

(d) fixing the Objection Deadline and Reply Deadline, (e) approving the notice and objection procedures in connection with the assumption of Executory Contracts and Unexpired Leases pursuant to the Prepackaged Plan, (f) conditionally (i) directing the U.S. Trustee not to convene the 341 Meeting, (ii) waiving the requirement to file Schedules and Statements, and (iii) waiving the requirement to file 2015.3 Reports, and (g) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Amended Standing Order; and this Court having found that this is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. § 1408; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other or further notice need be provided; and this Court having reviewed the Motion, the First Day Declaration, and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The Motion is GRANTED as set forth herein.

2.     The schedule set forth below is hereby approved:

| Event | Date/Deadline |
|---|---|
| Voting Record Date | December 13, 2025 |
| Commencement of Solicitation | December 14, 2025 |
| Plan Voting Deadline | December 14, 2025 at 11:59 p.m. (Prevailing Eastern Time) |
| Petition Date | December 14, 2025 |
| Mailing of Combined Notice and Notice of Non-Voting Status | Within two (2) business days, or as soon as reasonably practicable, after entry of the Proposed Order |
| Publication Deadline | Twenty-one (21) days prior to the Combined Hearing |
| Deadline to Object to Assumption of Executory Contracts and Unexpired Leases | Twenty-one (21) days after service of the Combined Notice and Notice of Non-Voting Status |
| Plan Supplement Filing Deadline | January 8, 2026 |
| Plan/Disclosure Statement Objection Deadline and Deadline to Return Release Opt-In Forms | January 15, 2026 at 4:00 p.m. (Prevailing Eastern Time) |
| Plan/Disclosure Statement Reply Deadline and Deadline to File Proposed Confirmation Order and Opt-In Report | January 20, 2026 at 12:00 p.m. (Prevailing Eastern Time), or two (2) business days prior to the Combined Hearing |
| Combined Hearing | January 22, 2026 or such other date as the Court may direct |

3.     The Combined Hearing, at which time this Court will consider, among other things, the adequacy of the Disclosure Statement and confirmation of the Prepackaged Plan, will be held on **January 22, 2026 at __:__ (Prevailing Eastern Time)**.  The Combined Hearing may be adjourned from time to time without further notice other than adjournments announced in open Court or in the filing of a notice or hearing agenda in these chapter 11 cases, with notice of such adjourned date(s) to be made available on the electronic case filing docket and the website maintained by the Solicitation and Voting Agent.

4.     Any responses or objections to the approval of the Disclosure Statement or confirmation of the Prepackaged Plan must:  (a) be in writing; (b) conform to the applicable Bankruptcy Rules and the Local Rules; (c) set forth the name of the objecting party, the basis for the objection, the specific grounds thereof and, if practicable, a proposed modification to the

3

Prepackaged Plan or Disclosure Statement that would resolve such objection; and (d) be filed with the Court. In addition to being filed with the Court, any such responses or objections must be served on the following parties (collectively, the "Notice Parties") so as to be received by **no later than 4:00 p.m. (Prevailing Eastern Time) on January 15, 2026 (the "Objection Deadline")**:

    i.    the Debtors, iRobot Corporation, 8 Crosby Drive, Bedford, MA 01730 (Attn: Gary Cohen, Jeff Engel, Karian Wong, and Kevin Lanouette);

    ii.    proposed counsel to the Debtors, (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Paul M. Basta, Esq., Alice Belisle Eaton, Esq., and John T. Weber, Esq.) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Andrew L. Magaziner, Esq., Shella Borovinskaya, Esq., and Kristin Cardoza, Esq.);

    iii.    counsel to Picea, (a) White & Case LLP, 555 Flowers Street. Los Angeles, California 90071 (Attn: Roberto Kampfner, Esq. and Fan He, Esq.) and (b) Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801 (Attn: John H. Knight, Esq. and Amanda R. Steele, Esq.); and

    iv.    the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jonathan W. Lipshie, Esq.).

5. Objections to the Debtors' assumption of Executory Contract and Unexpired Leases pursuant to the Prepackaged Plan must: (a) be in writing; (b) conform to the applicable Bankruptcy Rules and the Local Rules; (c) set forth the name of the objecting party, the basis for the objection, the specific grounds thereof; and (d) be filed with this Court. In addition to being filed with this Court, any such responses or objections must be served on the Notice Parties so as to be received by **no later than 4:00 p.m. (Prevailing Eastern Time) on January 8, 2026.**

6. Objections, if any, not timely filed and served in the manner set forth above may, in this Court's discretion, not be considered and may be overruled.

7.      The Debtors shall file their brief in support of confirmation of the Prepackaged Plan, which shall include their reply to any objections, no later than January 20, 2026 at 12:00 p.m. (Prevailing Eastern Time), or two (2) business days prior to the Combined Hearing.

8.      The Solicitation Packages and the Solicitation Procedures utilized by the Debtors for distribution of the Solicitation Packages as set forth in the Motion for soliciting acceptances and rejections of the Prepackaged Plan satisfy the requirements of the Bankruptcy Code and Bankruptcy Rules and are conditionally approved pending final approval through the Confirmation Order and the rights of parties in interest to object to the Solicitation Procedures in connection with confirmation of the Prepackaged Plan are reserved.

9.      The Debtors are authorized to combine the notice of the Combined Hearing and notice of the commencement of these chapter 11 cases.

10.     The Combined Notice and the Notice of Non-Voting Status (including the Release Opt-In Form), substantially in the form attached hereto as **Exhibit 1** and **Exhibit 2**, respectively, are approved and shall be deemed good and sufficient notice of the Combined Hearing and no further notice need be given; *provided* that any provision of Bankruptcy Rule 3017(d) requiring the Debtors to distribute the Disclosure Statement and the Prepackaged Plan to Non-Voting Holders, or any parties in interest other than as prescribed in this Order, shall be waived. The Debtors shall cause the Solicitation and Voting Agent to (i) send the Combined Notice by electronic mail at the email address maintained by the Debtors where available or by hard copy mail where electronic mail is unavailable to all parties entitled to such notice and (ii) send the Notice of Non-Voting Status, including the Release Opt-In Form, by electronic mail at the email address maintained by the Debtors where available or by hard copy mail where electronic mail is

unavailable, to the Non-Voting Holders set forth in the Motion, no later than two (2) business days following entry of this Order or as soon as reasonably practicable thereafter.

11.     The Debtors are granted a waiver of the strict notice requirement with respect to Holders of Intercompany Claims and Intercompany Interests in Classes 6 and 7.

12.     Substantially contemporaneously with the service of the Combined Notice, the Debtors shall cause to be posted to the Solicitation and Voting Agent's website various chapter 11 related documents, including, among others, the following:   (a) the Prepackaged Plan, (b) the Disclosure Statement, (c) the Motion and this Order, and (d) the Combined Notice.  The Solicitation and Voting Agent's website address is https://cases.stretto.com/iRobot.

13.     The Debtors, in their discretion, are authorized, pursuant to Bankruptcy Rule 2002(l), to give supplemental Publication Notice no later than twenty-one (21) days prior to the Combined Hearing, in either the *New York Times* or *USA Today* and any other publications the Debtors deem prudent, in their sole discretion, which Publication Notice shall constitute good and sufficient notice of the Combined Hearing and the Objection Deadline (and related procedures) to parties who do not receive the Combined Notice by mail.

14.     The Disclosure Statement is conditionally approved as having adequate information as required by section 1125 of the Bankruptcy Code without prejudice to any party in interest objecting to final approval the Disclosure Statement.

15.     The notice procedures set forth herein constitute good and sufficient notice of the Combined Hearing, the commencement of these chapter 11 cases, and the deadline and procedures for objecting to the adequacy of the Disclosure Statement and the Solicitation Procedures, and/or confirmation of the Prepackaged Plan, and no other or further notice shall be necessary.

16. The Voting Record Date of December 13, 2025, and the Voting Deadline of December 14, 2025 at 11:59 p.m. (Prevailing Eastern Time) are approved.

17. The time within which the Debtors shall file their Schedules and Statements is extended through and including February 23, 2026 (the "Schedules and 2015.3 Deadline"), without prejudice to the Debtors' right to seek further extensions of the time within which to file the Schedules and Statements, file the 2015.3 Reports, or seek additional relief from this Court regarding the filing of, or waiver of the requirement to file, the Schedules and Statements and 2015.3 Reports, if such additional relief proves necessary.

18. The requirement that the Debtors file the Schedules and Statements is permanently waived effective upon the date of confirmation of the Prepackaged Plan; *provided* that the Prepackaged Plan is confirmed on or before the Schedules and 2015.3 Deadline.

19. The 341 Meeting shall be deferred until the Schedules and 2015.3 Deadline and shall be waived unless the Prepackaged Plan is not confirmed by the Schedules and 2015.3 Deadline.

20. The Ballots, substantially in the forms attached hereto as **Exhibits 3-A** and **3-B**, are conditionally approved pending final approval through the Confirmation Order and the rights of parties in interest to object to the Ballots in connection with confirmation of the Prepackaged Plan are reserved.

21. The procedures used for tabulations of votes to accept or reject the Prepackaged Plan as set forth in the Motion and as provided by the Ballots are conditionally approved pending final approval through the Confirmation Order and the rights of parties in interest to object to such procedures and assumptions in connection with confirmation of the Prepackaged Plan are reserved.

22.     The Solicitation and Voting Agent shall have authority, in its discretion, to contact parties who submit a defective Ballot to make a reasonable effort to cure such deficiencies; *provided* that neither the Debtors nor the Solicitation and Voting Agent shall be required to contact such parties to provide notification of defects or irregularities with respect to completion or delivery of Ballots, nor shall any of them incur any liability for failure to provide such notification.

23.     The Debtors (with the consent of Picea) are authorized to make non-substantive and immaterial changes to the Prepackaged Plan and Disclosure Statement, the materials in the Solicitation Package, the Notice of Non-Voting Status, including the Release Opt-In Form, and related documents without further order of this Court.

24.     Notwithstanding the relief granted herein and any actions taken pursuant to such relief, nothing in this Order shall be deemed:  (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise)

8

that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

25.     All time periods set forth in this Order shall be deemed to meet the statutory requirements or are hereby altered in accordance with Bankruptcy Rule 9006(a).

26.     Bankruptcy Rule 6003(b) has been satisfied because the relief granted hereby is necessary to avoid immediate and irreparable harm to the Debtors.

27.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

28.     The Debtors and the Solicitation and Voting Agent are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

29.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

## **Exhibit 1**

### **Combined Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| iROBOT CORPORATION, *et al.*,[1] | ) | Case No. 25-12197 (___) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**NOTICE OF COMMENCEMENT OF CASES
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**-AND-**

**SUMMARY OF JOINT PREPACKAGED
CHAPTER 11 PLAN AND NOTICE OF HEARING TO CONSIDER
(A) ADEQUACY OF DISCLOSURE STATEMENT; (B) CONFIRMATION
OF PLAN OF REORGANIZATION; AND (C) RELATED MATERIALS**

PLEASE TAKE NOTICE THAT:

1.    On December 14, 2025 (the "Petition Date"), iRobot Corporation and its debtor subsidiaries, as debtors and debtors in possession (collectively, the "Debtors"), each commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2.    On the Petition Date, the Debtors filed the *Joint Prepackaged Chapter 11 Plan of Reorganization of iRobot Corporation and Its Debtor Affiliates*, dated as of December 14, 2025 [Docket No. [●]] (as it may be amended, supplemented, or modified from time to time, the "Prepackaged Plan"),[2] and a disclosure statement for the Prepackaged Plan, dated as of December 14, 2025 [Docket No. [●]] (as it may be amended, supplemented, or modified from time to time, the "Disclosure Statement") pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.  On [●], 2025, the Court entered an order conditionally approving the Disclosure Statement as having adequate information under section 1125 of the Bankruptcy Code without prejudice to any party in interest objecting to the Disclosure Statement at the Combined Hearing (as defined below). Copies of the Prepackaged Plan and Disclosure Statement may be obtained free of charge by visiting the website maintained by the Solicitation and Voting Agent, Stretto, Inc., at https://cases.stretto.com/iRobot.  Copies of the Prepackaged Plan and Disclosure Statement may

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: iRobot Corporation (9335); iRobot US Holdings, LLC (5237); and iRobot Holdings LLC (5307). For purposes of these chapter 11 cases, the Debtors' service address is 8 Crosby Drive, Bedford, MA 01730.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Prepackaged Plan.

also be obtained by calling (833) 228-5389   (Domestic Toll-Free) or (949) 590-3576 (International).

### Information Regarding Prepackaged Plan

3.       On December 14, 2025, the Debtors commenced solicitation of votes to accept the Prepackaged Plan from the Holder of record, as of December 13, 2025 (the "Voting Record Date"), of Claims in Class 3 and Class 4 (together, the "Voting Classes") via electronic mail. Prior to the Petition Date, the Holder of Claims in the Voting Classes returned Ballots voting to accept the Prepackaged Plan. All other Classes of Claims and Interests are either presumed to accept or deemed to reject the Prepackaged Plan and, therefore, are not entitled to vote. The deadline for the submission of votes to accept or reject the Prepackaged Plan was December 14, 2025 at 11:59 p.m. (Prevailing Eastern Time).

4.       A combined hearing to consider compliance with the Bankruptcy Code's disclosure requirements and any objections thereto and to consider confirmation of the Prepackaged Plan and any objections thereto will be held before the Honorable [●], United States Bankruptcy Judge, in Courtroom [●] of the United States Bankruptcy Court, 824 North Market Street, Wilmington, Delaware 19801, on **January 22, 2026 at [●] [a.m./p.m.] (Prevailing Eastern Time)** or as soon thereafter as counsel may be heard (the "Combined Hearing"). The Combined Hearing may be adjourned from time to time without further notice other than by filing a notice or agenda on the Court's docket indicating such adjournment and/or an announcement of the adjourned date or dates at the Combined Hearing. The adjourned date or dates will be available on the electronic case filing docket and the Solicitation and Voting Agent's website at https://cases.stretto.com/iRobot.

5.       The deadline for filing objections to the adequacy of the Disclosure Statement or confirmation of the Prepackaged Plan is **January 15, 2026 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline"). Any objections to the Disclosure Statement and/or the Prepackaged Plan must: (a) be in writing, (b) conform to the applicable Bankruptcy Rules and Local Rules, (c) set forth the name of the objecting party, the basis for the objection, the specific grounds thereof and, if practicable, a proposed modification to the Prepackaged Plan or Disclosure Statement that would resolve such objection, and (d) be filed with the Court.

6.       In addition to being filed with the Clerk of the Court, any such objections should be served upon the following parties (the "Notice Parties") so as to be received by the Objection Deadline:

     i.       the Debtors, iRobot Corporation, 8 Crosby Drive, Bedford, MA 01730 (Attn: Gary Cohen, Jeff Engel, Karian Wong, and Kevin Lanouette);

     ii.       proposed counsel to the Debtors, (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Paul M. Basta, Esq., Alice Belisle Eaton, Esq., and John T. Weber, Esq.) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Andrew L. Magaziner, Esq., Shella Borovinskaya, Esq., and Kristin Cardoza, Esq.);

     iii.       counsel to Picea, (a) White & Case LLP, 555 Flowers Street. Los Angeles, California 90071 (Attn: Roberto Kampfner, Esq. and Fan He, Esq.) and

2

(b) Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801 (Attn: John H. Knight, Esq. and Amanda R. Steele, Esq.); and

iv.     the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn.: Jonathan W. Lipshie, Esq.).

**UNLESS AN OBJECTION IS TIMELY FILED AND SERVCED IN ACCORDANCE WITH THIS NOTICE (THIS "COMBINED NOTICE"), IT MAY NOT BE CONSIDERED BY THE COURT.**

**Notice of Assumption of Executory Contracts and
Unexpired Leases of Debtors and Related Procedures**

7.      Please take notice that, in accordance with Article V of the Prepackaged Plan and sections 365 and 1123 of the Bankruptcy Code, all Executory Contracts and Unexpired Leases to which any of the Debtors are a party shall be deemed assumed, without the need for any further notice to or action, Order, or approval of the Bankruptcy Court, as of the Effective Date, unless such Executory Contract or Unexpired Lease: (a) was previously assumed or rejected by the Debtors, pursuant to an Order of the Bankruptcy Court; (b) previously expired or terminated pursuant to its terms; (c) is the subject of a motion to reject Filed on or before the Effective Date; or (d) is specifically designated as a contract or lease to be rejected on the Schedule of Rejected Executory Contracts and Unexpired Leases.  The Debtors (with the consent of Picea) reserve the right to alter, amend, modify, or supplement the Schedule of Rejected Executory Contracts and Unexpired Leases, including to add or remove any Executory Contracts and Unexpired Leases, at any time up to and including forty-five (45) days after the Effective Date.

8.      Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed under the Prepackaged Plan is in default (a "Cure Amount") shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the undisputed portion of the Cure Amount, if any, in Cash on (a) the Effective Date or as soon as reasonably practicable thereafter; for Executory Contracts and Unexpired Leases assumed as of the Effective Date, (b) in the ordinary course of the Debtors' business in accordance with the terms of such Executory Contract or Unexpired Lease; or (c) the assumption effective date, if different than the Effective Date.  If you believe that any Cure Amounts are due by the Debtors in connection with the assumption of your contract or unexpired lease, you should assert such Cure Amounts against the Debtors in the ordinary course of business.

9.      To the extent that you object to the assumption or assumption and assignment of an Executory Contract or Unexpired Lease on any basis, including (a) any Cure Amount, (b) the ability of the Debtors to provide adequate assurance of future performance (within the meaning of section 365 of the Bankruptcy Code) under such contract or lease to be assumed, or (c) any other matter pertaining to assumption, you must (i) file with the Bankruptcy Court a written objection (the "Objection") that complies with the Bankruptcy Rules and the Local Rules and sets forth (A) the basis for such Objection and specific grounds therefor and (B) the name and contact information of the person authorized to resolve such Objection, and (ii) serve the same on the parties listed above, **so that such Objection is actually received no later than January 8, 2026.**

3

10.      **If no Objection is timely received with respect to the assumption of an Executory Contract or Unexpired Lease to which you are a party, you will be deemed to have assented to such assumption or assumption and assignment and any objection shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any response by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Court.**

11.      **The Debtors request that, before filing an Objection, you contact the Debtors prior to the Objection Deadline to attempt to resolve such dispute consensually.** The Debtors' contact for such matters is (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn.: Paul M. Basta, Esq. (pbasta@paulweiss.com), Alice Belisle Eaton, Esq. (aeaton@paulweiss.com), and John T. Weber, Esq. (jweber@paulweiss.com); and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn.: Andrew L. Magaziner, Esq. (amagaziner@ycst.com), Shella Borovinskaya, Esq. (sborovinskaya@ycst.com), and Kristin L. Cardoza, Esq. (kcardoza@ycst.com). If such dispute cannot be resolved consensually prior to the Objection Deadline (as the same may be extended by agreement of the Debtors), you must file and serve an Objection as set forth herein to preserve your right to object.

12.      If a timely Objection is filed and served in accordance with this notice pertaining to assumption or assumption and assignment of an Executory Contract or Unexpired Lease, and cannot be otherwise resolved by the parties pursuant to Article V of the Prepackaged Plan, the Court may hear such Objection at a date set by the Court.

13.      In the event of a dispute regarding (a) the Cure Amount, (b) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter pertaining to assumption, the Cure Amount payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption; *provided* that the Debtors (with the consent of Picea) or the Reorganized Debtors, as applicable, may settle any such dispute without any further notice to, or action, Order, or approval of, the Court or any other Entity.

14.      To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Prepackaged Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Prepackaged Plan shall not entitle the party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other rights with respect thereto.

15.      Unless otherwise provided in the Prepackaged Plan or the Confirmation Order, all Executory Contracts and Unexpired Leases that are assumed or assumed and assigned shall include all exhibits, schedules, modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contracts and Unexpired Leases, and affect Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests,

4

unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Prepackaged Plan or the Confirmation Order.

16.     Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during these chapter 11 cases shall not be deemed to alter (a) the prepetition nature of such Executory Contracts and Unexpired Leases or (b) the validity, priority, or amount of any Claims that may arise in connection therewith, except as set forth under the express terms of any such modification, amendment, supplement, or restatement.

17.     Unless otherwise provided by a Final Order of the Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, including Lease Rejection Claims, pursuant to the Prepackaged Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within 30 days after the later of (1) entry of an Order of the Bankruptcy Court (including the Confirmation Order) approving such rejection and (2) the effective date of such rejection.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time shall be Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property.**  All Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease, including Lease Rejection Claims, pursuant to section 365 of the Bankruptcy Code shall be treated as General Unsecured Claim pursuant to Article III of the Prepackaged Plan and may be objected to in accordance with the provisions of Article VI of the Prepackaged Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS COMBINED NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT.**

| |
|---|
| If you have questions about this Combined Notice, please contact<br>Stretto, Inc.<br>**Telephone**:  (833) 228-5389 (Domestic Toll-Free) or (949) 590-3576 (International)<br>**Website**:  https://cases.stretto.com/iRobot |

### Summary of the Prepackaged Plan[3]

The following chart summarizes the treatment provided by the Prepackaged Plan to each class of Claims against and Interests in the Debtors, and indicates the voting status of each class.

| Class | Claims or Interests | Treatment | Impaired or Unimpaired | Entitlement to Vote | Projected Recoveries |
|---|---|---|---|---|---|
| 1 | Other Secured Claims[4] | Each Holder of an Allowed Other Secured Claim shall receive, at the option of the Debtors or Reorganized Debtors, as applicable: (1) payment in full in Cash of such Holder's Allowed Other | Unimpaired | Not Entitled to Vote | 100% |

---

[3]   The descriptions contained herein are summaries of the provision contained in the Prepackaged Plan and the Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Prepackaged Plan or documents referred to therein.  For a more detailed description of the Prepackaged Plan, please refer to the Disclosure Statement.

[4]   "Other Secured Claims" means any Secured Claim that is not a First Lien Claim.

| Class | Claims or Interests | Treatment | Impaired or Unimpaired | Entitlement to Vote | Projected Recoveries |
|---|---|---|---|---|---|
|  |  | Secured Claim; (2) delivery of the collateral securing such Holder's Allowed Other Secured Claim; (3) Reinstatement of such Holder's Allowed Other Secured Claim; or (4) such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code. |  | (Presumed to Accept) |  |
| 2 | Other Priority Claims[5] | Each Holder of an Allowed Other Priority Claim shall receive payment in full in Cash of such Holder's Allowed Other Priority Claim or such other treatment in a manner consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. Allowed Other Priority Claims that arise in the ordinary course of the Debtors' business and which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof. | Unimpaired | Not Entitled to Vote (Presumed to Accept) | 100% |
| 3 | First Lien Claims | On the Effective Date, Picea HK, as the Holder of 100% of the outstanding Allowed First Lien Claims, shall receive in full and final satisfaction, release, discharge of, and in exchange for, such Allowed First Lien Claim, 95% of the New Common Equity. | Impaired | Entitled to Vote | 58.6% |
| 4 | Picea HK Supply Agreement Claims | On the Effective Date, Picea HK, as the Holder of 100% of the outstanding Allowed Picea HK Supply Agreement Claims, shall receive, in full and final satisfaction, release, discharge of, and in exchange for, such Allowed Picea HK Supply Agreement Claims, 5% of the New Common Equity. The remaining outstanding amount of approximately $84 million due to Picea Robotics under the Picea Supply Agreement shall remain due and owing as of the Effective Date. | Impaired | Entitled to Vote | 8.0% |
| 5 | General Unsecured Claims[6] | Except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors agrees to a less favorable treatment on account of such Claim or such Claim has been paid or Disallowed by Final Order prior to the Effective Date, on and after the Effective Date, each Allowed General Unsecured Claim shall be Unimpaired and the Reorganized Debtors shall continue to pay or treat each Allowed General Unsecured Claim in the ordinary course of business, subject to (including under the Bankruptcy Code) all claims, defenses, | Unimpaired | Not Entitled to Vote (Presumed to Accept) | 100% |

---

[5]  "Other Priority Claims" means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, to the extent such Claim has not already been paid during the Chapter 11 Cases, other than: (a) an Administrative Claim; or (b) a Priority Tax Claim.

[6]  "General Unsecured Claims" means any Claim against a Debtor that is not a First Lien Claim, an Administrative Claim, a Priority Tax Claim, an Other Secured Claim, an Other Priority Claim, an Intercompany Claim, or any 510(b) Claim. For the avoidance of doubt, General Unsecured Claims shall include any Lease Rejection Claims or 510(b) Claim related to the foregoing.

| Class | Claims or Interests | Treatment | Impaired or Unimpaired | Entitlement to Vote | Projected Recoveries |
|---|---|---|---|---|---|
| | | disputes, or Causes of Action the Debtors and Reorganized Debtors may have with respect to such Claims, including as provided in Article IV.O of the Prepackaged Plan; *provided*, that Allowed Lease Rejection Claims shall be paid in full on the Effective Date or as soon as reasonably practicable thereafter. | | | |
| 6 | Intercompany Claims[7] | On the Effective Date, at the Debtors' election, each Holder of an Intercompany Claims shall have its Intercompany Claim Reinstated, or cancelled, released, and extinguished without any distribution. | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) | 100% / 0% |
| 7 | Intercompany Interests[8] | On the Effective Date, at the Debtors' election, each Holder of an Intercompany Interest shall have its Intercompany Interest Reinstated, or cancelled, released, and extinguished without any distribution. | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) | 100% / 0% |
| 8 | Existing Equity Interests[9] | On the Effective Date, each Holder of an Existing Equity Interest (including all related 510(b) Claims[10]) shall have its Existing Equity Interest cancelled, released, and extinguished without any distribution. | Impaired | Not Entitled to Vote (Deemed to Reject) | 0% |

### Non-Voting Status of Holders of Certain Claims and Interests

18.     As set forth above, certain Holders of Claims and Interests are **not** entitled to vote on the Prepackaged Plan.  As a result, such parties did not receive any Ballots or other related solicitation materials to vote on the Prepackaged Plan.  The Holders of Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), and Class 5 (General Unsecured Claims) are unimpaired under the Prepackaged Plan and, therefore, are presumed to have accepted the Prepackaged Plan pursuant to section 1126(f) of the Bankruptcy Code.  Holders of Claims and Interests in Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests) are either unimpaired or not expected to receive any recovery on account of their Claims or Interests and, therefore, are either presumed to accept or deemed to reject the Prepackaged Plan (as applicable). Holders of Interests in Class 8 (Existing Equity Interests) are impaired, will receive no distributions under the Prepackaged Plan and, therefore, are deemed to have rejected the Prepackaged Plan pursuant to section 1126(g) of the Bankruptcy Code.  Upon request, the

---

[7]   "Intercompany Claims" means a Claim or a Cause of Action against a Debtor held by a Debtor or a Non-Debtor Affiliate.

[8]   "Intercompany Interests" means an Interest in a Debtor held by another Debtor or Non-Debtor Affiliate.

[9]   "Existing Equity Interests" means all Interests in iRobot outstanding as of the Petition Date and any 510(b) Claims related thereto.

[10]   "510(b) Claims" means a Claim of any kind or nature whatsoever, whether asserted or unasserted that is subject to subordination under section 510(b) of the Bankruptcy Code.

Solicitation and Voting Agent will provide you, free of charge, with copies of the Prepackaged Plan, the Disclosure Statement, and this Combined Notice.

**Important Information Regarding the Discharges, Injunctions, Exculpations, and Release**

**If you receive the notice of non-voting status and affirmatively opt-in to the releases provided by the Prepackaged Plan by checking the box on the applicable notice of non-voting status indicating that you opt to grant the releases provided in the Prepackaged Plan, you shall be deemed to have consented to the releases contained in Article VIII of the Prepackaged Plan, pasted directly from the Prepackaged Plan below.**

**Article VIII.C      Debtor Release**

**Notwithstanding anything else contained herein to the contrary, to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be, and hereby is conclusively, absolutely, unconditionally, irrevocably, finally, and forever released and discharged by each and all of the Debtors, the Reorganized Debtors, and their Estates, including any successors to the Debtors or any Estate's representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative Claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Cause of Action against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their Estates (including the Debtors' capital structure, management, ownership, assets, or operation thereof), the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the assertion or enforcement of rights and remedies against the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim, Causes of Action, or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the Chapter 11 Cases, the Amended First Lien Credit Agreement, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan (including, for the avoidance of doubt, the Plan Supplement), or any aspect of the Restructuring Transactions, including any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan, the Confirmation Order,  the Chapter 11 Cases, the Filing of the**

8

Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, any action or actions taken in furtherance of or consistent with the administration of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release (1) any post-Effective Date obligations of any party or Entity under the Plan, any act occurring after the Effective Date with respect to the Restructuring Transactions, the obligations arising under Definitive Document to the extent imposing obligations arising after the Effective Date (including those set forth in the Plan Supplement), or other document, instrument, or agreement executed to implement the Plan, (2) the rights of Holders of Allowed Claims under this Plain, including the right to receive distributions under this Plan, (3) any Cause of Action, listed, described or otherwise included on the Schedule of Retained Causes of Action, (4) any Claim, Cause of Action, dispute, or defense related to the failure to execute an agreed upon amendment to any Executory Contract or Unexpired Lease to the extent such issue is not resolved prior to the Effective Date, (5) any Claim or Cause of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, willful misconduct or criminal conduct, or (6) any Claim, dispute, or defense of the Debtors or the Reorganized Debtors preserved under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the terms by which matters are subject to a compromise and settlement, including the Debtor Releases in Article VIII.C, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Debtor Releases in Article VIII.C are: (1) essential to Confirmation of this Plan; (2) an exercise of the Debtors' business judgment; (3) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing this Plan; (4) a good-faith settlement and compromise of the Claims and Causes of Action released by the Debtor Releases in Article VIII.C; (5) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (6) fair, equitable, and reasonably given and made after due notice and opportunity for a hearing; and (7) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Releases in Article VIII.C.

Article VIII.D        Third-Party Release

Except as otherwise expressly set forth in this Plan or the Confirmation Orders, on and after the Effective Date, pursuant to Bankruptcy Rule 9019 and to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is deemed to be, and hereby is conclusively, absolutely, unconditionally, irrevocably, finally, and forever released and

9

discharged by each Releasing Party (in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities) from any and all Claims and Causes of Action, including any derivative Claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law, equity, contract, tort, or otherwise that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Cause of Action against, or Interest in, a Debtor based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, assets, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim, Cause of Action, or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the Chapter 11 Cases, the Amended First Lien Credit Agreement, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan (including, for the avoidance of doubt, the Plan Supplement), or any aspect of the Restructuring Transactions, including any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan, the Confirmation Order, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, any action or actions taken in furtherance of or consistent with the administration of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release (1) any post-Effective Date obligations of any party or Entity under the Plan, any act occurring after the Effective Date with respect to the Restructuring Transaction, the obligations arising under Definitive Document to the extent imposing obligations arising after the Effective Date (including those set forth in the Plan Supplement), or other document, instrument, or agreement executed to implement the Plan, (2) the rights of Holders of Allowed Claims to receive distributions under this Plan, (3) the rights of any current employee of the Debtors under any employment agreement or plan, (4) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, (5) any Claim, Cause of Action, or defense related to the failure to execute an agreed upon amendment to any Executory Contract or Unexpired Lease to the extent such issue is not resolved prior to the Effective Date, or (6) any Claim or Cause

10

of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, willful misconduct or criminal conduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the terms by which matters are subject to a compromise and settlement, including the Debtor Releases in **Article VIII.C**, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Releases in this **Article VIII.D** are: (1) essential to Confirmation of this Plan; (2) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing this Plan; (3) a good-faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Releases in this **Article VIII.D**; (4) in the best interests of the Debtors and their Estates and all Holders of Claims and Interests; (5) fair, equitable, and reasonably given and made after due notice and opportunity for a hearing; and (6) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Releases in this **Article VIII.D**.

**Article VIII.E          Exculpation**

Except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action or Claim whether direct or derivative related to any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases from the Petition Date to or on the Effective Date, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan, the Plan Supplement, or any transaction related to the Restructuring Transactions, any contract, instrument, release, or other agreement or document created or entered into before or during the Chapter 11 Cases in connection with the Restructuring Transactions, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, except for Claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, but in all respects such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan and the Confirmation Orders.

The Exculpated Parties set forth above have, and upon Confirmation of this Plan shall be deemed to have, participated in good faith and in compliance with applicable law with respect to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.

11

**Article VIII.F**        <u>**Injunction**</u>

Upon entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and Affiliates, and each of their successors and assigns, shall be enjoined from taking any actions to interfere with the implementation or Consummation of this Plan in relation to any Claim or Interest that is extinguished, discharged, or released pursuant to this Plan.

Except as otherwise expressly provided in this Plan or the Confirmation Orders, or for obligations issued or required to be paid pursuant to this Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been released, discharged, or are subject to exculpation pursuant to <u>Article VIII</u>, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, and/or the Released Parties:

      a.      commencing, conducting, or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

      b.      enforcing, levying, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or Order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

      c.      creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

      d.      asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and

      e.      commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to this Plan or the Confirmation Orders.

**No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors or the Exculpated Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action related to the Chapter 11 Cases prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan, the Plan Supplement, or any transaction related to the Restructuring, any contract, instrument, release, or other agreement or document created or entered into before or during the Chapter 11 Cases in connection with the Restructuring Transactions, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, without regard to whether such Person or Entity is a Releasing Party, without the Bankruptcy Court (1) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind and (2) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor or Exculpated Party.**

**The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.**

**Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under this Plan, the Confirmation Order or under any other Definitive Document or other document, instrument, or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement this Plan and the Confirmation Orders from bringing an action to enforce the terms of this Plan, the Confirmation Order or such document, instrument, or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement this Plan and the Confirmation Orders.  The injunction in this Plan shall extend to any successors and assigns of the Debtors and the Reorganized Debtors and their respective property and interests in property.**

**Article VIII.G          Waiver of Statutory Limitations on Releases**

**Each Releasing Party in each of the releases contained in this Plan expressly acknowledges that although ordinarily a general release may not extend to Claims that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, each Releasing Party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or Claims.  Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law that provides that a release does not extend to Claims that the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the Released Party.  The releases contained**

13

**in this Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.**

**Relevant Definitions Related to Release and Exculpation Provisions**:

"Exculpated Parties" means each of the Debtors' Estates and their respective fiduciaries, including the Debtors' directors and officers holding such positions at any time between the Petition Date and Effective Date.

"Released Parties" means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each First Lien Secured Party; (d) Picea Robotics; and (e) all Holders of Claims and Existing Equity Interests that receive a notice of non-voting status who affirmatively opt-in to the releases provided by the Plan by checking the box on the applicable notice of non-voting status indicating that they opt-in to grant the releases provided in the Plan; (f) with respect to each of the Entities in the foregoing clauses (a) through (e), each such Entity's current and former Affiliates (regardless of whether such interests are held directly or indirectly); (g) with respect to each of the Entities in the foregoing clauses (a) through (e), each such Entity's current and former predecessors, participants, successors, assigns, subsidiaries, direct and indirect equityholders, interest holders, limited partners, co-investors, funds (including affiliated investment funds or investment vehicles), portfolio companies, and management companies; and (h) with respect to each of the Entities in the foregoing clauses (a) through (g), each such Entity's current and former directors, officers, managers, members, principals, partners, employees, independent contractors, agents, representatives, managed accounts or funds (including any beneficial holders for the account of whom such funds are managed), management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), consultants, financial advisors, attorneys, accountants, investment bankers, and other professionals; *provided*, that, in each case, an Entity shall not be a Releasing Party if fails to opt-in to the releases contained in this Plan, if permitted to opt-in.

"Releasing Parties" means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each First Lien Secured Party; (d) Picea Robotics; and (e) all Holders of Claims and Existing Equity Interests that receive the notice of non-voting status and, in each case, who do affirmatively opt-in to the releases provided by the Prepackaged Plan by checking the box on the applicable notice of non-voting status indicating that they opt to grant the releases provided in the Prepackaged Plan.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PREPACKAGED PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

## Section 341(a) Meeting

A meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "341 Meeting") has been deferred. **The 341 Meeting will not be convened if the Prepackaged Plan is confirmed by February 23, 2026.** If the 341 Meeting will be convened, the Debtors will file, serve on the parties on whom it served this Combined Notice and any other parties entitled to notice pursuant to the

14

Bankruptcy Rules, and post on the website at https://cases.stretto.com/iRobot not less than twenty-one (21) days before the date scheduled for such meeting, a notice of, among other things, the date, time, and place of the 341 Meeting.

**UNLESS AN OBJECTION IS TIMELY FILED AND SERVED IN ACCORDANCE WITH THIS COMBINED NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT.**

---

If you have questions about this Combined Notice, please contact
Stretto, Inc.
**Telephone**: (833) 228-5389 (Domestic Toll-Free) or (949) 590-3576 (International)
**Website**:  https://cases.stretto.com/iRobot

---

[*Remainder of page intentionally left blank*]

15

Dated: [●], 2025
Wilmington, Delaware

Respectfully submitted,

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/* [●]
Sean T. Greecher (No. 4484)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Kristin L. Cardoza (No. 6871)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: sgreecher@ycst.com
amagaziner@ycst.com
sborovinskaya@ycst.com
kcardoza@ycst.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (*pro hac vice* admission pending)
Alice Belisle Eaton (*pro hac vice* admission pending)
John T. Weber (*pro hac vice* admission pending)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email: pbasta@paulweiss.com
aeaton@paulweiss.com
jweber@paulweiss.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**Exhibit 2**

**Notice of Non-Voting Status**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| iROBOT CORPORATION, *et al.*, [1] | ) | Case No. 25-12197 (___) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF NON-VOTING STATUS

PLEASE TAKE NOTICE THAT:

1.      On December 14, 2025 (the "Petition Date"), iRobot Corporation and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), each commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2.      The Debtors have commenced solicitation of votes to accept the *Joint Prepackaged Chapter 11 Plan of Reorganization of iRobot Corporation and Its Debtor Affiliates*, dated December 14, 2025 [Docket No. [●]] (as it may be amended, supplemented, or modified from time to time, the "Prepackaged Plan"),[2] which is attached as Exhibit A to the *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of iRobot Corporation and Its Debtor Affiliates*, dated December 14, 2025 [Docket No. [●]] (as it may be amended, supplemented, or modified from time to time, the "Disclosure Statement"). Copies of the Prepackaged Plan and Disclosure Statement may also be obtained by calling the Solicitation and Voting Agent at (833) 228-5389 (Domestic Toll-Free) or (949) 590-3576 (International) or by sending an electronic mail message to iRobotInquiries@stretto.com.

3.      **You are receiving this notice (this "Notice of Non-Voting Status") because, according to the Debtors' books and records, you are a Holder of Claims or Interests in:**

> **i.      Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), or Class 5 (General Unsecured Claims) under the Prepackaged Plan, which provides that your Claim(s) against the Debtors is (are) unimpaired and, therefore, pursuant to section 1126(f) of the Bankruptcy Code, you are presumed to have accepted the Prepackaged Plan and not entitled to vote on the Prepackaged Plan; and/or**

> **ii.     Class 8 (Existing Equity Interests) under the Prepackaged Plan, which provides that your Interest(s) against the Debtors is (are) not entitled to**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: iRobot Corporation (9335); iRobot US Holdings, LLC (5237); and iRobot Holdings LLC (5307). For purposes of these chapter 11 cases, the Debtors' service address is 8 Crosby Drive, Bedford, MA 01730.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Prepackaged Plan.

**a recovery and, therefore, pursuant to section 1126(g) of the Bankruptcy Code, you are deemed to have rejected the Prepackaged Plan and not entitled to vote on the Prepackaged Plan.**

4. The deadline for filing objections to the adequacy of the Disclosure Statement or confirmation of the Prepackaged Plan is **January 15, 2026 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline"). Any objections to the Disclosure Statement and/or the Prepackaged Plan must: (a) be in writing, (b) conform to the applicable Bankruptcy Rules and Local Rules, (c) set forth the name of the objecting party, the basis for the objection, the specific grounds thereof and, if practicable, a proposed modification to the Prepackaged Plan or Disclosure Statement that would resolve such objection, and (d) be filed with the Court.

5. In addition to being filed with the Clerk of the Court, any such objections should be served upon the following parties so as to be received by the Objection Deadline:

i. the Debtors, iRobot Corporation, 8 Crosby Drive, Bedford, MA 01730 (Attn: Gary Cohen, Jeff Engel, Karian Wong, and Kevin Lanouette);

ii. proposed counsel to the Debtors, (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019 (Attn.: Paul M. Basta, Esq., Alice Belisle Eaton, Esq., and John T. Weber, Esq.) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn.: Andrew L. Magaziner, Esq., Shella Borovinskaya, Esq., and Kristin Cardoza, Esq.);

iii. counsel to Picea, (a) White & Case LLP, 555 Flowers Street. Los Angeles, California 90071 (Attn: Roberto Kampfner, Esq. and Fan He, Esq.) and (b) Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801 (Attn: John H. Knight, Esq. and Amanda R. Steele, Esq.); and

iv. the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jonathan W. Lipshie, Esq.).

**UNLESS AN OBJECTION IS TIMELY FILED AND SERVCED IN ACCORDANCE WITH THIS NOTICE OF NON-VOTING STATUS, IT MAY NOT BE CONSIDERED BY THE COURT.**

| |
|---|
| If you have questions about this Notice of Non-Voting Status, please contact Stretto, Inc.<br>**Telephone**: (833) 228-5389 (Domestic Toll-Free) or (949) 590-3576 (International)<br>**Website**: https://cases.stretto.com/iRobot |

**Important Information Regarding the Discharges, Injunctions, Exculpations, and Release**

**If you receive the notice of non-voting status and affirmatively opt-in to the releases provided by the Prepackaged Plan by checking the box on the applicable notice of non-voting status indicating that you opt to grant the releases provided in the Prepackaged Plan, you shall be**

2

**deemed to have consented to the releases contained in <u>Article VIII</u> of the Prepackaged Plan, pasted directly from the Prepackaged Plan below.**

**Article VIII.C          <u>Debtor Release</u>**

**Notwithstanding anything else contained herein to the contrary, to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be, and hereby is conclusively, absolutely, unconditionally, irrevocably, finally, and forever released and discharged by each and all of the Debtors, the Reorganized Debtors, and their Estates, including any successors to the Debtors or any Estate's representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative Claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Cause of Action against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their Estates (including the Debtors' capital structure, management, ownership, assets, or operation thereof), the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the assertion or enforcement of rights and remedies against the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim, Causes of Action, or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the Chapter 11 Cases, the Amended First Lien Credit Agreement, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan (including, for the avoidance of doubt, the Plan Supplement), or any aspect of the Restructuring Transactions, including any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan, the Confirmation Order,  the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, any action or actions taken in furtherance of or consistent with the administration of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing.**

3

**Notwithstanding anything contained herein to the contrary, the foregoing release does not release (1) any post-Effective Date obligations of any party or Entity under the Plan, any act occurring after the Effective Date with respect to the Restructuring Transactions, the obligations arising under Definitive Document to the extent imposing obligations arising after the Effective Date (including those set forth in the Plan Supplement), or other document, instrument, or agreement executed to implement the Plan, (2) the rights of Holders of Allowed Claims under this Plan, including the right to receive distributions under this Plan, (3) any Cause of Action, listed, described or otherwise included on the Schedule of Retained Causes of Action, (4) any Claim, Cause of Action, dispute, or defense related to the failure to execute an agreed upon amendment to any Executory Contract or Unexpired Lease to the extent such issue is not resolved prior to the Effective Date, (5) any Claim or Cause of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, willful misconduct or criminal conduct, or (6) any Claim, dispute, or defense of the Debtors or the Reorganized Debtors preserved under the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the terms by which matters are subject to a compromise and settlement, including the Debtor Releases in <u>Article VIII.C</u>, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Debtor Releases in <u>Article VIII.C</u> are: (1) essential to Confirmation of this Plan; (2) an exercise of the Debtors' business judgment; (3) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing this Plan; (4) a good-faith settlement and compromise of the Claims and Causes of Action released by the Debtor Releases in <u>Article VIII.C</u>; (5) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (6) fair, equitable, and reasonably given and made after due notice and opportunity for a hearing; and (7) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Releases in <u>Article VIII.C</u>.**

**Article VIII.D      <u>Third-Party Release</u>**

**Except as otherwise expressly set forth in this Plan or the Confirmation Orders, on and after the Effective Date, pursuant to Bankruptcy Rule 9019 and to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is deemed to be, and hereby is conclusively, absolutely, unconditionally, irrevocably, finally, and forever released and discharged by each Releasing Party (in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities) from any and all Claims and Causes of Action, including any derivative Claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in**

4

law, equity, contract, tort, or otherwise that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Cause of Action against, or Interest in, a Debtor based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, assets, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim, Cause of Action, or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the Chapter 11 Cases, the Amended First Lien Credit Agreement, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan (including, for the avoidance of doubt, the Plan Supplement), or any aspect of the Restructuring Transactions, including any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan, the Confirmation Order, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, any action or actions taken in furtherance of or consistent with the administration of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release (1) any post-Effective Date obligations of any party or Entity under the Plan, any act occurring after the Effective Date with respect to the Restructuring Transaction, the obligations arising under Definitive Document to the extent imposing obligations arising after the Effective Date (including those set forth in the Plan Supplement), or other document, instrument, or agreement executed to implement the Plan, (2) the rights of Holders of Allowed Claims to receive distributions under this Plan, (3) the rights of any current employee of the Debtors under any employment agreement or plan, (4) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, (5) any Claim, Cause of Action, or defense related to the failure to execute an agreed upon amendment to any Executory Contract or Unexpired Lease to the extent such issue is not resolved prior to the Effective Date, or (6) any Claim or Cause of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, willful misconduct or criminal conduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the terms by which matters are subject to a compromise and settlement, including the Debtor Releases in Article VIII.C which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Releases in this

5

**Article VIII.D** are:  (1) essential to Confirmation of this Plan; (2) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing this Plan; (3) a good-faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Releases in this **Article VIII.D**; (4) in the best interests of the Debtors and their Estates and all Holders of Claims and Interests; (5) fair, equitable, and reasonably given and made after due notice and opportunity for a hearing; and (6) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Releases in this **Article VIII.D.**

**Article VIII.E          Exculpation**

Except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action or Claim whether direct or derivative related to any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases from the Petition Date to or on the Effective Date, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan, the Plan Supplement, or any transaction related to the Restructuring Transactions, any contract, instrument, release, or other agreement or document created or entered into before or during the Chapter 11 Cases in connection with the Restructuring Transactions, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, except for Claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, but in all respects such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan and the Confirmation Orders.

The Exculpated Parties set forth above have, and upon Confirmation of this Plan shall be deemed to have, participated in good faith and in compliance with applicable law with respect to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.

**Article VIII.F          Injunction**

Upon entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and Affiliates, and each of their successors and assigns, shall be enjoined from taking any actions to interfere with the implementation or Consummation of

6

this Plan in relation to any Claim or Interest that is extinguished, discharged, or released pursuant to this Plan.

Except as otherwise expressly provided in this Plan or the Confirmation Orders, or for obligations issued or required to be paid pursuant to this Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been released, discharged, or are subject to exculpation pursuant to **Article VIII**, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, and/or the Released Parties:

a. commencing, conducting, or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

b. enforcing, levying, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or Order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

c. creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

d. asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and

e. commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to this Plan or the Confirmation Orders.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors or the Exculpated Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action related to the Chapter 11 Cases prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan, the Plan Supplement, or any transaction related to the Restructuring, any contract, instrument, release, or other agreement or document created or entered into before or

7

during the Chapter 11 Cases in connection with the Restructuring Transactions, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, without regard to whether such Person or Entity is a Releasing Party, without the Bankruptcy Court (1) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind and (2) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor or Exculpated Party.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under this Plan, the Confirmation Order or under any other Definitive Document or other document, instrument, or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement this Plan and the Confirmation Orders from bringing an action to enforce the terms of this Plan, the Confirmation Order or such document, instrument, or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement this Plan and the Confirmation Orders. The injunction in this Plan shall extend to any successors and assigns of the Debtors and the Reorganized Debtors and their respective property and interests in property.

**Article VIII.G**        <u>**Waiver of Statutory Limitations on Releases**</u>

Each Releasing Party in each of the releases contained in this Plan expressly acknowledges that although ordinarily a general release may not extend to Claims that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, each Releasing Party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or Claims. Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law that provides that a release does not extend to Claims that the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the Released Party. The releases contained in this Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

<u>**Relevant Definitions Related to Release and Exculpation Provisions**</u>:

"<u>Released Parties</u>" means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each First Lien Secured Party; (d) Picea Robotics; and (e) all Holders of Claims and Existing Equity Interests that receive a notice of non-voting status who affirmatively opt-in to the releases provided by the Plan by checking the box on the applicable

notice of non-voting status indicating that they opt-in to grant the releases provided in the Plan; (f) with respect to each of the Entities in the foregoing clauses (a) through (e), each such Entity's current and former Affiliates (regardless of whether such interests are held directly or indirectly); (g) with respect to each of the Entities in the foregoing clauses (a) through (e), each such Entity's current and former predecessors, participants, successors, assigns, subsidiaries, direct and indirect equityholders, interest holders, limited partners, co-investors, funds (including affiliated investment funds or investment vehicles), portfolio companies, and management companies; and (h) with respect to each of the Entities in the foregoing clauses (a) through (g), each such Entity's current and former directors, officers, managers, members, principals, partners, employees, independent contractors, agents, representatives, managed accounts or funds (including any beneficial holders for the account of whom such funds are managed), management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), consultants, financial advisors, attorneys, accountants, investment bankers, and other professionals; *provided*, that, in each case, an Entity shall not be a Releasing Party if fails to opt-in to the releases contained in this Plan, if permitted to opt-in.

"Releasing Parties" means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each First Lien Secured Party; (d) Picea Robotics; and (e) all Holders of Claims and Existing Equity Interests that receive the notice of non-voting status and, in each case, who do affirmatively opt-in to the releases provided by the Prepackaged Plan by checking the box on the applicable notice of non-voting status indicating that they opt to grant the releases provided in the Prepackaged Plan.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PREPACKAGED PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

| |
|---|
| If you have questions about this Notice of Non-Voting Status, please contact Stretto, Inc.<br>**Telephone**:  (833) 228-5389 (Domestic Toll-Free) or (949) 590-3576 (International)<br>**Email**:  iRobotInquiries@stretto.com<br>Website:  https://cases.stretto.com/iRobot |

[*Remainder of page intentionally left blank*]

Dated: [●], 2025
      Wilmington, Delaware

Respectfully submitted,

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/* [●]
Sean T. Greecher (No. 4484)
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Kristin L. Cardoza (No. 6871)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: sgreecher@ycst.com
amagaziner@ycst.com
sborovinskaya@ycst.com
kcardoza@ycst.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (*pro hac vice* admission pending)
Alice Belisle Eaton (*pro hac vice* admission pending)
John T. Weber (*pro hac vice* admission pending)
1285 Avenue of the Americas
New York, New York 10019
Tel:   (212) 373-3000
Fax:   (212) 757-3990
Email: pbasta@paulweiss.com
aeaton@paulweiss.com
jweber@paulweiss.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**Exhibit A to Notice of Non-Voting Status**

Release Opt-In Form

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| iROBOT CORPORATION, *et al.*, [1] | ) Case No. 25-12197 (___) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

**RELEASE OPT-IN FORM**

You are receiving this opt-in form (this "Release Opt-In Form") because you are or may be a Holder of a Claim or Interest that is not entitled to vote on the *Joint Prepackaged Chapter 11 Plan of Reorganization of iRobot Corporation and Its Debtor Affiliates*, dated as of December 14, 2025 [Docket No. [●]] (as it may be amended, supplemented, or modified from time to time, the "Prepackaged Plan"). [2] Your rights may be affected under the Prepackaged Plan. A Holder of Claims and/or Interests is deemed to grant the third-party releases set forth below and in Article VIII of the Prepackaged Plan if such Holder affirmatively opts in on or before the Opt-In Deadline (as defined below) by following the instructions contained in this notice. You should review this notice carefully and may wish to consult legal counsel as your rights may be affected.

If you choose to opt into the third-party releases set forth in <u>Article VIII.D</u> of the Prepackaged Plan, please complete, sign, and date this Release Opt-In Form and return it promptly as directed below.

**THIS RELEASE OPT-IN FORM MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AND VOTING AGENT BY JANUARY 15, 2026 AT 4:00 P.M. (PREVAILING EASTERN TIME (THE "OPT-IN DEADLINE"). IF THE RELEASE OPT-IN FORM IS RECEIVED AFTER THE OPT-IN DEADLINE, IT WILL NOT BE COUNTED.**

**Item 1**. **Certification of Claim or Interest**. The undersigned certifies that, as of December 13, 2025, the undersigned was the Holder of Claims or Interests, as applicable, in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 5 (General Unsecured Claims), and/or Class 8 (Existing Equity Interests).

☐     I am a Holder of Claims or Interests, as applicable, in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 5 (General Unsecured Claims), and/or Class 8 (Existing Equity Interests) as of December 13, 2025

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: iRobot Corporation (9335); iRobot US Holdings, LLC (5237); and iRobot Holdings LLC (5307). For purposes of these chapter 11 cases, the Debtors' service address is 8 Crosby Drive, Bedford, MA 01730.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Prepackaged Plan.

**The Prepackaged Plan contains the third-party release provisions set forth below.  If you affirmatively opt into granting the releases set forth in Prepackaged Plan by checking the box in Item 3 below, you are consenting to the releases contained in <u>Article VIII</u> of the Prepackaged Plan, pasted directly from the Prepackaged Plan below.**

**Article VIII.D          <u>Third-Party Release</u>**

Except as otherwise expressly set forth in this Plan or the Confirmation Orders, on and after the Effective Date, pursuant to Bankruptcy Rule 9019 and to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is deemed to be, and hereby is conclusively, absolutely, unconditionally, irrevocably, finally, and forever released and discharged by each Releasing Party (in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities) from any and all Claims and Causes of Action, including any derivative Claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law, equity, contract, tort, or otherwise that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Cause of Action against, or Interest in, a Debtor based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, assets, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim, Cause of Action, or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the Chapter 11 Cases, the Amended First Lien Credit Agreement, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan (including, for the avoidance of doubt, the Plan Supplement), or any aspect of the Restructuring Transactions, including any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan, the Confirmation Order, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, any action or actions taken in furtherance of or consistent with the administration of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release (1) any post-Effective Date obligations of any party or Entity under the Plan,

**any act occurring after the Effective Date with respect to the Restructuring Transaction, the obligations arising under Definitive Document to the extent imposing obligations arising after the Effective Date (including those set forth in the Plan Supplement), or other document, instrument, or agreement executed to implement the Plan, (2) the rights of Holders of Allowed Claims to receive distributions under this Plan, (3) the rights of any current employee of the Debtors under any employment agreement or plan, (4) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, (5) any Claim, Cause of Action, or defense related to the failure to execute an agreed upon amendment to any Executory Contract or Unexpired Lease to the extent such issue is not resolved prior to the Effective Date, or (6) any Claim or Cause of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, willful misconduct or criminal conduct.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the terms by which matters are subject to a compromise and settlement, including the Debtor Releases in <u>Article VIII.C</u>, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Releases in <u>Article VIII.D</u> are: (1) essential to Confirmation of this Plan; (2) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing this Plan; (3) a good-faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Releases in this <u>Article VIII.D</u>; (4) in the best interests of the Debtors and their Estates and all Holders of Claims and Interests; (5) fair, equitable, and reasonably given and made after due notice and opportunity for a hearing; and (6) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Releases in this <u>Article VIII.D</u>.**

**<u>Relevant Definitions Related to Release and Provisions</u>:**

"<u>Released Parties</u>" means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each First Lien Secured Party; (d) Picea Robotics; and (e) all Holders of Claims and Existing Equity Interests that receive a notice of non-voting status who affirmatively opt-in to the releases provided by the Plan by checking the box on the applicable notice of non-voting status indicating that they opt-in to grant the releases provided in the Plan; (f) with respect to each of the Entities in the foregoing clauses (a) through (e), each such Entity's current and former Affiliates (regardless of whether such interests are held directly or indirectly); (g) with respect to each of the Entities in the foregoing clauses (a) through (e), each such Entity's current and former predecessors, participants, successors, assigns, subsidiaries, direct and indirect equityholders, interest holders, limited partners, co-investors, funds (including affiliated investment funds or investment vehicles), portfolio companies, and management companies; and (h) with respect to each of the Entities in the foregoing clauses (a) through (g), each such Entity's current and former directors, officers, managers, members, principals, partners, employees, independent contractors, agents, representatives, managed accounts or funds (including any beneficial holders for the account of whom such funds are managed), management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), consultants, financial advisors, attorneys,

3

accountants, investment bankers, and other professionals; *provided*, that, in each case, an Entity shall not be a Releasing Party if fails to opt-in to the releases contained in this Plan, if permitted to opt-in.

"Releasing Parties" means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each First Lien Secured Party; (d) Picea Robotics; and (e) all Holders of Claims and Existing Equity Interests that receive the notice of non-voting status and, in each case, who do affirmatively opt-in to the releases provided by the Prepackaged Plan by checking the box on the applicable notice of non-voting status indicating that they opt to grant the releases provided in the Prepackaged Plan.

**PURSUANT TO THE PREPACKAGED PLAN, IF YOU OPT INTO GRANTING THE RELEASES SET FORTH IN ARTICLE VIII OF THE PREPACKAGED PLAN, YOU ARE CONSENTING TO THE RELEASE PROVISIONS IN ARTICLE VIII OF THE PREPACKAGED PLAN.**

To ensure that your Release Opt-In Form is counted, complete the information in Item 3 and timely return your Release Opt-In Form.

**Item 3.  Certifications.**  By signing this Release Opt-In Form, the undersigned certifies that:

  (a)  that, as of December 13, 2025, either (i) the Holder is the Holder of the Claims or Interests set forth in Item 1; or (ii) the Holder is an authorized signatory for an entity that is a Holder of Claims or Interests set forth in Item 1;

  (b)  the undersigned has received a copy of the Notice of Non-Voting Status and the Release Opt-In Form and that the Release Opt-In Form is made pursuant to the terms and conditions set forth therein;

  (c)  the undersigned has submitted the same election concerning the releases with respect to all Claims or Interests in a single Class set forth in Item 1; and

  (d)  that no other Release Opt-In Form with respect to the amount(s) of Claims or Interests identified in Item 1 has been submitted or, if any other Release Opt-In Forms have been submitted with respect to such Claims or Interests, then any such earlier Release Opt-In Forms are hereby revoked.

**By checking the box below, the undersigned holder of the Claims or Interests identified in Item 1 above, having received notice of the opportunity to opt into granting the releases contained in Article VIII of the Prepackaged Plan:**

☐      **Elects to opt in to the releases contained in Article VIII of the Prepackaged Plan.**

Name of Holder: _____

Signature: _____

Name and Title of Signatory
(if different than Holder): _____

4

Street Address: _____

City, State, Zip Code: _____

Telephone Number: _____

E-mail Address: _____

Date Completed: _____

**IF YOU WISH TO OPT IN, PLEASE COMPLETE, SIGN, AND DATE THIS RELEASE OPT-IN FORM AND RETURN IT TO THE SOLICITATION AND VOTING AGENT BY *JUST ONE* OF THE FOLLOWING METHODS SO THAT IT IS ACTUALLY RECEIVED BY THE SOLICITATION AND VOTING AGENT BY THE OPT IN DEADLINE ON JANUARY 15, 2026 AT 4:00 P.M. (PREVAILING EASTERN TIME):**

| **By first class mail:** | **By overnight or hand delivery**: |
|---|---|
| iRobot Ballot Processing | iRobot Ballot Processing |
| c/o Stretto, Inc. | c/o Stretto, Inc. |
| 410 Exchange, Suite 100 | 410 Exchange, Suite 100 |
| Irvine, CA 92602 | Irvine, CA 92602 |

| **For electronic submission:** |
|---|
| Visit https://cases.stretto.com/iRobot, click on the "E-Opt-In" section of the Solicitation and Voting Agent's website for the Debtors, and follow the instructions to submit your Release Opt-In Form. |

IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Release Opt-In Form:

Unique E-Opt-In ID#:_____

The Solicitation and Voting Agent's online portal is the sole manner in which Opt-In Forms will be accepted via electronic or online transmission.  Release Opt-In Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.

Creditors who submit an Release Opt-In Form using the Solicitation and Voting Agent's online portal should NOT also submit a paper Release Opt-In Form.

If you have any questions, please contact the Solicitation and Voting Agent at iRobotInquiries@stretto.com with "iRobot Solicitation Inquiry" in the subject line).

**THE OPT-IN DEADLINE IS JANUARY 15, 2026 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

**<u>Exhibit 3-A</u>**

**First Lien Claims Ballot**

**NO CHAPTER 11 CASES HAVE BEEN COMMENCED AS OF THE DATE OF THE DISTRIBUTION OF THIS BALLOT.  THE DEBTORS INTEND TO FILE CHAPTER 11 CASES AND SEEK CONFIRMATION OF THE PREPACKAGED PLAN (AS DEFINED BELOW) BY THE BANKRUPTCY COURT BEFORE THE VOTING DEADLINE.**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot (each as defined below).[1]   Please note that, even if you intend to vote to reject the Prepackaged Plan, you must still read, complete, and execute this entire Ballot.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| iROBOT CORPORATION, *et al.*,[2] | ) Case No. 25-12197 (___) |
| | ) |
| Debtors. | ) (Joint Administration to be Requested) |
| | ) |

BALLOT FOR VOTING TO ACCEPT OR REJECT
THE JOINT PREPACKAGED CHAPTER 11 PLAN
OF REORGANIZATION OF IROBOT CORPORATION AND ITS DEBTOR AFFILIATES

CLASS THREE:  FIRST LIEN CLAIMS

**IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PREPACKAGED PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AND VOTING AGENT ON OR BEFORE DECEMBER 14, 2025 AT 11:59 P.M. (PREVAILING EASTERN TIME) (THE "<u>VOTING DEADLINE</u>"), UNLESS EXTENDED BY THE DEBTORS.**

iRobot Corporation and certain of its affiliates (collectively, the "<u>Debtors</u>") have provided you with this ballot (this "<u>Ballot</u>") to solicit your vote to accept or reject the *Joint Prepackaged Chapter 11 Plan of Reorganization of iRobot Corporation and Its Debtor Affiliates* (as may be amended, supplemented, or modified from time to time, the "<u>Prepackaged Plan</u>").

You are receiving this Ballot because records indicate that you are a Holder of a First Lien Claim in Class 3 as of December 13, 2025 (the "<u>Voting Record Date</u>").

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Prepackaged Plan, as applicable.

[2]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: iRobot Corporation (9335); iRobot US Holdings, LLC (5237); and iRobot Holdings LLC (5307). For purposes of these chapter 11 cases, the Debtors' service address is 8 Crosby Drive, Bedford, MA 01730.

33761717.20

The Prepackaged Plan is attached as Exhibit A to the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of iRobot Corporation and Its Debtor Affiliates* (as may be amended, supplemented, or modified from time to time, the "Disclosure Statement"), which accompanies this Ballot.  The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Prepackaged Plan, including a description of the rights and treatment for each Class.  If you do not have a copy of the Disclosure Statement, you may obtain a copy from the Debtors' solicitation and voting agent, Stretto, Inc. (the "Solicitation and Voting Agent"), by calling (833) 228-5389 (Domestic Toll-Free) or (949) 590-3576 (International), or sending an electronic mail message to iRobotInquiries@stretto.com and requesting that a copy be provided to you.  You should review the Disclosure Statement and the Prepackaged Plan in their entirety before you vote.  You may wish to seek independent legal advice concerning the Prepackaged Plan and your classification and treatment under the Prepackaged Plan.

As described in the Disclosure Statement, the Debtors intend to commence cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") following conclusion of this solicitation.  The Debtors then intend to seek entry of an order, among other things, conditionally approving the disclosure statement, conditionally approving the solicitation procedures, and scheduling a combined hearing for final approval of the Disclosure Statement and confirmation of the Prepackaged Plan.

The Prepackaged Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if:  (a) it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class of Claims and (b) the Prepackaged Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Prepackaged Plan if it finds that the Prepackaged Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Prepackaged Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Prepackaged Plan is confirmed by the Bankruptcy Court and the Effective Date occurs, it will be binding on you whether or not you vote and even if you vote to reject the Prepackaged Plan.  To have your vote counted, you must complete, sign, and return this Ballot to the Solicitation and Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not signify that your Claim(s) has been or will be Allowed. This Ballot is solely for purposes of voting to accept or reject the Prepackaged Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 3 First Lien Claims. You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

2

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PREPACKAGED PLAN**[3]

**Article VIII.C**          **Debtor Release**

**Notwithstanding anything else contained herein to the contrary, to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be, and hereby is conclusively, absolutely, unconditionally, irrevocably, finally, and forever released and discharged by each and all of the Debtors, the Reorganized Debtors, and their Estates, including any successors to the Debtors or any Estate's representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative Claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Cause of Action against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their Estates (including the Debtors' capital structure, management, ownership, assets, or operation thereof), the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the assertion or enforcement of rights and remedies against the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim, Causes of Action, or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the Chapter 11 Cases, the Amended First Lien Credit Agreement, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan (including, for the avoidance of doubt, the Plan Supplement), or any aspect of the Restructuring Transactions, including any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan, the Confirmation Order,  the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, any action or actions taken in furtherance of or consistent with the administration of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other**

---

[3]   The provisions contained herein are copied directly from the Prepackaged Plan.

occurrence taking place on or before the Effective Date related or relating to any of the foregoing.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release (1) any post-Effective Date obligations of any party or Entity under the Plan, any act occurring after the Effective Date with respect to the Restructuring Transactions, the obligations arising under Definitive Document to the extent imposing obligations arising after the Effective Date (including those set forth in the Plan Supplement), or other document, instrument, or agreement executed to implement the Plan, (2) the rights of Holders of Allowed Claims under this Plan, including the right to receive distributions under this Plan, (3) any Cause of Action, listed, described or otherwise included on the Schedule of Retained Causes of Action, (4) any Claim, Cause of Action, dispute, or defense related to the failure to execute an agreed upon amendment to any Executory Contract or Unexpired Lease to the extent such issue is not resolved prior to the Effective Date, (5) any Claim or Cause of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, willful misconduct or criminal conduct, or (6) any Claim, dispute, or defense of the Debtors or the Reorganized Debtors preserved under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the terms by which matters are subject to a compromise and settlement, including the Debtor Releases in Article VIII.C, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Debtor Releases in Article VIII.C are: (1) essential to Confirmation of this Plan; (2) an exercise of the Debtors' business judgment; (3) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing this Plan; (4) a good-faith settlement and compromise of the Claims and Causes of Action released by the Debtor Releases in Article VIII.C; (5) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (6) fair, equitable, and reasonably given and made after due notice and opportunity for a hearing; and (7) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Releases in Article VIII.C.

**Article VIII.D      Third-Party Release**

Except as otherwise expressly set forth in this Plan or the Confirmation Orders, on and after the Effective Date, pursuant to Bankruptcy Rule 9019 and to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is deemed to be, and hereby is conclusively, absolutely, unconditionally, irrevocably, finally, and forever released and discharged by each Releasing Party (in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities) from any and all Claims and Causes of Action, including any derivative Claims asserted or assertable on behalf of the Debtors, whether known or

4

unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law, equity, contract, tort, or otherwise that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Cause of Action against, or Interest in, a Debtor based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, assets, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim, Cause of Action, or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the Chapter 11 Cases, the Amended First Lien Credit Agreement, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan (including, for the avoidance of doubt, the Plan Supplement), or any aspect of the Restructuring Transactions, including any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan, the Confirmation Order, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, any action or actions taken in furtherance of or consistent with the administration of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release (1) any post-Effective Date obligations of any party or Entity under the Plan, any act occurring after the Effective Date with respect to the Restructuring Transaction, the obligations arising under Definitive Document to the extent imposing obligations arising after the Effective Date (including those set forth in the Plan Supplement), or other document, instrument, or agreement executed to implement the Plan, (2) the rights of Holders of Allowed Claims to receive distributions under this Plan, (3) the rights of any current employee of the Debtors under any employment agreement or plan, (4) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, (5) any Claim, Cause of Action, or defense related to the failure to execute an agreed upon amendment to any Executory Contract or Unexpired Lease to the extent such issue is not resolved prior to the Effective Date, or (6) any Claim or Cause of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, willful misconduct or criminal conduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the terms by which matters are subject to a compromise and settlement, including the Debtor Releases in Article VIII.C which includes

5

by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Releases in this Article VIII.D are:  (1) essential to Confirmation of this Plan; (2) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing this Plan; (3) a good-faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Releases in this Article VIII.D; (4) in the best interests of the Debtors and their Estates and all Holders of Claims and Interests; (5) fair, equitable, and reasonably given and made after due notice and opportunity for a hearing; and (6) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Releases in this Article VIII.D.

**Article VIII.E          Exculpation**

Except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action or Claim whether direct or derivative related to any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases from the Petition Date to or on the Effective Date, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan, the Plan Supplement, or any transaction related to the Restructuring Transactions, any contract, instrument, release, or other agreement or document created or entered into before or during the Chapter 11 Cases in connection with the Restructuring Transactions, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, except for Claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, but in all respects such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan and the Confirmation Orders.

The Exculpated Parties set forth above have, and upon Confirmation of this Plan shall be deemed to have, participated in good faith and in compliance with applicable law with respect to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.

**Article VIII.F          Injunction**

Upon entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and Affiliates, and each of their successors and assigns, shall be

enjoined from taking any actions to interfere with the implementation or Consummation of this Plan in relation to any Claim or Interest that is extinguished, discharged, or released pursuant to this Plan.

Except as otherwise expressly provided in this Plan or the Confirmation Orders, or for obligations issued or required to be paid pursuant to this Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been released, discharged, or are subject to exculpation pursuant to Article VIII, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, and/or the Released Parties:

a. commencing, conducting, or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

b. enforcing, levying, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or Order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

c. creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

d. asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and

e. commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to this Plan or the Confirmation Orders.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors or the Exculpated Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action related to the Chapter 11 Cases prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan, the Plan Supplement, or any transaction related to the Restructuring, any contract,

7

instrument, release, or other agreement or document created or entered into before or during the Chapter 11 Cases in connection with the Restructuring Transactions, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, without regard to whether such Person or Entity is a Releasing Party, without the Bankruptcy Court (1) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind and (2) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor or Exculpated Party.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under this Plan, the Confirmation Order or under any other Definitive Document or other document, instrument, or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement this Plan and the Confirmation Orders from bringing an action to enforce the terms of this Plan, the Confirmation Order or such document, instrument, or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement this Plan and the Confirmation Orders.  The injunction in this Plan shall extend to any successors and assigns of the Debtors and the Reorganized Debtors and their respective property and interests in property.

**Article VIII.G            Waiver of Statutory Limitations on Releases**

Each Releasing Party in each of the releases contained in this Plan expressly acknowledges that although ordinarily a general release may not extend to Claims that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, each Releasing Party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or Claims.  Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law that provides that a release does not extend to Claims that the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the Released Party.  The releases contained in this Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

**Relevant Definitions Related to Release and Exculpation Provisions**:

"Exculpated Parties" means each of the Debtors' Estates and their respective fiduciaries, including the Debtors' directors and officers holding such positions at any time between the Petition Date and Effective Date.

8

"Released Parties" means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each First Lien Secured Party; (d) Picea Robotics; and (e) all Holders of Claims and Existing Equity Interests that receive a notice of non-voting status who affirmatively opt-in to the releases provided by the Plan by checking the box on the applicable notice of non-voting status indicating that they opt-in to grant the releases provided in the Plan; (f) with respect to each of the Entities in the foregoing clauses (a) through (e), each such Entity's current and former Affiliates (regardless of whether such interests are held directly or indirectly); (g) with respect to each of the Entities in the foregoing clauses (a) through (e), each such Entity's current and former predecessors, participants, successors, assigns, subsidiaries, direct and indirect equityholders, interest holders, limited partners, co-investors, funds (including affiliated investment funds or investment vehicles), portfolio companies, and management companies; and (h) with respect to each of the Entities in the foregoing clauses (a) through (g), each such Entity's current and former directors, officers, managers, members, principals, partners, employees, independent contractors, agents, representatives, managed accounts or funds (including any beneficial holders for the account of whom such funds are managed), management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), consultants, financial advisors, attorneys, accountants, investment bankers, and other professionals; *provided*, that, in each case, an Entity shall not be a Releasing Party if fails to opt-in to the releases contained in this Plan, if permitted to opt-in.

"Releasing Parties" means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each First Lien Secured Party; (d) Picea Robotics; and (e) all Holders of Claims and Existing Equity Interests that receive the notice of non-voting status and, in each case, who do affirmatively opt-in to the releases provided by the Prepackaged Plan by checking the box on the applicable notice of non-voting status indicating that they opt to grant the releases provided in the Prepackaged Plan.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PREPACKAGED PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

*[Remainder of Page Intentionally Left Blank]*

**PLEASE READ THE ATTACHED VOTING INFORMATION**
**AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ITEMS 1, 2, 3, 4, AND 5.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.  Principal Amount of Claims**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of First Lien Claims in the amount set forth below.

$_____

**Item 2.    Votes on the Prepackaged Plan**.   Please vote either to accept or to reject the Prepackaged Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Prepackaged Plan, or marked both to accept and reject the Prepackaged Plan, shall not be counted in determining acceptance or rejection of the Prepackaged Plan.

The undersigned Holder of Class 3 First Lien Claims votes to (check <u>one</u> box):

☐    **Accept** the Prepackaged Plan        ☐    **Reject** the Prepackaged Plan

**Item 3. Optional Opt-In Release Election**. Regardless of how you voted in Item 2 above, check the box below if you elect to grant the releases contained in Article VIII of the Prepackaged Plan. If you submit a Ballot voting to accept or reject the Prepackaged Plan, or if you abstain from submitting a Ballot, and in each case, you check the box below, you will be consenting to the releases contained in Article VIII of the Prepackaged Plan to the fullest extent permitted by applicable law.  The Holder of the Class 3 First Lien Claim set forth in Item 1 elects to:

☐    **OPT IN** to the releases contained in Article VIII of the Prepackaged Plan.

**Item 4. Eligible Holder Certification**. Please identify whether you are an "Eligible Holder," which means that you certify that you are one of the following: (a) a "qualified institutional buyer" (as such term is defined in Rule 144A of the Securities Act), (b) an "accredited investor" (as such term is defined in Rule 501 of Regulation D of the Securities Act), or (c) a Holder located outside the United States, and a person other than a "U.S. person" (as defined in Rule 902(k) of Regulation S of the Securities Act) and not participating on behalf of or on account of a U.S. person (see **Exhibit A** hereto for relevant definitions).

☐    **ELIGIBLE HOLDER**

**Item 5. Acknowledgments**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Prepackaged Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (a) it has the power and authority to vote to accept or reject the Prepackaged Plan, (b) it was the Holder (or is entitled to vote on behalf of such Holder) of the Class 3 First Lien Claims described in Item 1 as of the Voting Record Date, (c) it has read, and understands, the certification required in Item 4, including the related information in

10

**Exhibit A** hereto, and has accurately and correctly completed such certification, and (d) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

_____

Name of Holder

_____

Signature

_____

If by Authorized Agent, Name and Title

_____

Name of Institution

_____

Street Address City, State, Zip Code

_____

Telephone Number

_____

Date Completed

_____

E-Mail Address

11

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THIS BALLOT[1]**

1. Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted. **The Solicitation and Voting Agent will tabulate properly completed Ballots received on or before the Voting Deadline.**

2. Complete this Ballot by providing all the information requested, signing, dating, and returning this Ballot to the Solicitation and Voting Agent. Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned will not be counted. Ballots may not be submitted to the Solicitation and Voting Agent by email or facsimile. If neither the "accept" nor "reject" box is checked in Item 2, both boxes are checked in Item 2, or this Ballot is otherwise not properly completed, executed, or timely returned, then this Ballot shall not be counted in determining acceptance or rejection of the Prepackaged Plan.

3. The Prepackaged Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you and the holders if (a) it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class of Claims and (b) the Prepackaged Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Prepackaged Plan if it finds that the Prepackaged Plan provides fair and equitable treatment to, and does not discriminate unfairly against, the Class or Classes rejecting it, and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

4. You must vote all your Claims within a single class under the Prepackaged Plan either to accept or reject the Prepackaged Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Prepackaged Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Prepackaged Plan likewise will not be counted.

**5. If you vote to accept or reject the Prepackaged Plan or if you are abstaining from voting to accept or reject the Prepackaged Plan, and in each case elect to grant the releases contained in Article VIII of the Prepackaged Plan, you must check the box in Item 3. Election to withhold consent is at your option. If you do not check the box in Item 3, you will be consenting to the releases set forth in Article VIII of the Prepackaged Plan.**

6. This Ballot does not constitute, and shall not be deemed to be, a proof of Claim or an assertion or admission of Claims.

7. This Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Prepackaged Plan.

---

[1] For any Ballot cast via electronic mail, the format of the attachment must be found in the common workplace and industry standard format (i.e., industry-standard PDF file) and the received date and time in the Solicitation and Voting Agent's inbox will be used as the timestamp for receipt.

8.     If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation and Voting Agent will supersede any prior Ballot.

9.     This Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you in the event that (a) the Debtors revoke or withdraw the Prepackaged Plan, or (b) the Confirmation Order is not entered or consummation of the Prepackaged Plan does not occur.  In addition, for the avoidance of doubt, any Ballot submitted by the Holder of First Lien Claims shall be subject to the applicable provisions of the Restructuring Support Agreement.

10.    There may be changes made to the Prepackaged Plan that do not cause material adverse effects on an accepting class.  If such non-material changes are made to the Prepackaged Plan, in accordance with its terms and the Restructuring Support Agreement, the Debtors will not resolicit votes for acceptance or rejection of the Prepackaged Plan.

11.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

12.    PLEASE RETURN YOUR BALLOT PROMPTLY.

13.    IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AND VOTING AGENT BY CALLING TOLL FREE IN THE U.S. AT (833) 228-5389 OR (949) 590-3576 IF OUTSIDE OF THE U.S., OR BY ELECTRONIC MAIL TO iRobotInquiries@stretto.com.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

14.    THE SOLICITATION AND VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PREPACKAGED PLAN IS DECEMBER 14, 2025 AT 11:59 P.M. (PREVAILING EASTERN TIME).**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE SOLICITATION AND VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

**Exhibit A**

## DEFINITIONS

"**Accredited investor**" is defined in Rule 501 of the Securities Act of 1933 as:

(a) any person who comes within any of the following categories, or who the issuer reasonably believes comes within any of the following categories, at the time of the sale of the securities to that person:

(1) Any bank as defined in section 3(a)(2) of the Securities Act, or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Securities Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934; any insurance company as defined in section 2(13) of the Securities Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such Act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

(2) Any private business development company as defined in section 202(a)(22) of the Investment Advisers Act of 1940;

(3) Any organization described in section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, partnership, or limited liability company, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

(4) Any director, executive officer, or general partner of the issuer of the securities being offered or sold, or any director, executive officer, or general partner of a general partner of that issuer;

(5) Any natural person whose individual net worth, or joint net worth with that person's spouse or spousal equivalent, exceeds $1,000,000.

   (i) Except as provided in paragraph (a)(5)(ii) of this section, for purposes of calculating net worth under this paragraph (a)(5):

      (A) The person's primary residence shall not be included as an asset;

      (B) Indebtedness that is secured by the person's primary residence, up to the estimated fair market value of the primary residence at the time of the sale of securities, shall not be included as a liability (except that if the amount of such indebtedness outstanding at the time of sale of securities exceeds the amount outstanding 60 days before such time, other than as a result of the acquisition of the primary residence, the amount of such excess shall be included as a liability); and

      (C) Indebtedness that is secured by the person's primary residence in excess of the estimated fair market value of the primary residence at the time of the sale of securities shall be included as a liability;

(ii) Paragraph (a)(5)(i) of this section will not apply to any calculation of a person's net worth made in connection with a purchase of securities in accordance with a right to purchase such securities, provided that:

(A) Such right was held by the person on July 20, 2010;

(B) The person qualified as an accredited investor on the basis of net worth at the time the person acquired such right; and

(C) The person held securities of the same issuer, other than such right, on July 20, 2010.

(6) Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

(7) Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii) of the Securities Act; and

(8) Any entity in which all of the equity owners are accredited investors.

(9) Any entity, of a type not listed in paragraph (a)(1), (2), (3), (7), or (8), not formed for the specific purpose of acquiring the securities offered, owning investments in excess of $5,000,000;

(10) Any natural person holding in good standing one or more professional certifications or designations or credentials from an accredited educational institution that the Commission has designated as qualifying an individual for accredited investor status. In determining whether to designate a professional certification or designation or credential from an accredited educational institution for purposes of this paragraph (a)(10), the Commission will consider, among others, the following attributes:

(i) The certification, designation, or credential arises out of an examination or series of examinations administered by a self-regulatory organization or other industry body or is issued by an accredited educational institution;

(ii) The examination or series of examinations is designed to reliably and validly demonstrate an individual's comprehension and sophistication in the areas of securities and investing;

(iii) Persons obtaining such certification, designation, or credential can reasonably be expected to have sufficient knowledge and experience in financial and business matters to evaluate the merits and risks of a prospective investment; and

(iv) An indication that an individual holds the certification or designation is either made publicly available by the relevant self-regulatory organization or other industry body or is otherwise independently verifiable;

(11) Any natural person who is a "knowledgeable employee," as defined in rule 3c–5(a)(4) under the Investment Company Act of 1940, of the issuer of the securities being offered or sold where the issuer would be an investment company, as defined in section 3 of such act, but for the exclusion provided by either section 3(c)(1) or section 3(c)(7) of such act;

(12) Any "family office," as defined in rule 202(a)(11)(G)–1 under the Investment Advisers Act of 1940:

2

(i)   With assets under management in excess of $5,000,000,

(ii)  That is not formed for the specific purpose of acquiring the securities offered, and

(iii) Whose prospective investment is directed by a person who has such knowledge and experience in financial and business matters that such family office is capable of evaluating the merits and risks of the prospective investment; and

(13)   Any "family client," as defined in rule 202(a)(11)(G)–1 under the Investment Advisers Act of 1940, of a family office meeting the requirements in paragraph (a)(12) of this section and whose prospective investment in the issuer is directed by such family office pursuant to paragraph (a)(12)(iii).

"**Qualified institutional buyer**" is defined in Rule 144A under the Securities Act as:

(a)

(i)   any of the following entities, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least US $100 million in securities of issuers that are not affiliated with the entity:

(A) any insurance company as defined in Section 2(a)(13) of the Securities Act; Note:  A purchase by an insurance company for one or more of its separate accounts, as defined by Section 2(a)(37) of the U.S. Investment Company Act of 1940, as amended (the "Investment Company Act"), which are neither registered under Section 8 of the Investment Company Act nor required to be so registered, shall be deemed to be a purchase for the account of such insurance company.

(B) any investment company registered under the Investment Company Act or any business development company as defined in Section 2(a)(48) of the Investment Company Act;

(C) any small business investment company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the U.S. Small Business Investment Act of 1958, as amended;

(D) any plan established and maintained by a U.S. state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees;

(E) any employee benefit plan within the meaning of Title I of the U.S. Employee Retirement Income Security Act of 1974, as amended;

(F) any trust fund whose trustee is a bank or trust company and whose participants are exclusively plans of the types identified in subparagraph (a)(i)(D) or (E) above, except trust funds that include as participants individual retirement accounts or H.R. 10 plans;

(G) any business development company as defined in Section 202(a)(22) of the U.S. Investment Advisers Act of 1940, as amended (the "Investment Advisers Act");

(H) any organization described in Section 501(c)(3) of the U.S. Internal Revenue Code of 1986, as amended, corporation (other than a bank as defined in Section 3(a)(2) of the Securities Act or a savings and loan association or other institution referenced in Section 3(a)(5)(A) of the

Securities Act or a foreign bank or savings and loan association or equivalent institution), partnership, or Massachusetts or similar business trust; and

(I) any investment adviser registered under the Investment Advisers Act.

(ii) any dealer registered pursuant to Section 15 of the U.S. Securities Exchange Act of 1934, as amended (the "Exchange Act"), acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least US$10 million of securities of issuers that are not affiliated with the dealer, provided that securities constituting the whole or a part of an unsold allotment to or subscription by a dealer as a participant in a public offering shall not be deemed to be owned by such dealer;

(iii) any dealer registered pursuant to Section 15 of the Exchange Act acting in a riskless principal transaction (as defined below) on behalf of a qualified institutional buyer; Note:  A registered dealer may act as agent, on a non-discretionary basis, in a transaction with a qualified institutional buyer without itself having to be a qualified institutional buyer.

(iv) any investment company registered under the Investment Company Act, acting for its own account or for the accounts of other qualified institutional buyers, that is part of a family of investment companies which own in aggregate at least US$100 million in securities of issuers, other than issuers that are affiliated with the investment company or are part of such family of investment companies. "Family of investment companies" means any two or more investment companies registered under the Investment Company Act, except for a unit investment trust whose assets consist solely of shares of one or more registered investment companies, that have the same investment adviser (or, in the case of unit investment trusts, the same depositor), provided that:

(A) each series of a series company (as defined in Rule 18f-2 under the Investment Company Act) shall be deemed to be a separate investment company; and

(B) investment companies shall be deemed to have the same adviser (or depositor) if their advisers (or depositors) are majority-owned subsidiaries of the same parent, or if one investment company's adviser (or depositor) is a majority-owned subsidiary of the other investment company's adviser (or depositor);

(v) any entity, all of the equity owners of which are qualified institutional buyers, acting for its own account or the accounts of other qualified institutional buyers; and

(vi) any bank as defined in Section 3(a)(2) of the Securities Act, any savings and loan association or other institution as referenced in Section 3(a)(5)(A) of the Securities Act, or any foreign bank or savings and loan association or equivalent institution, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least US$100 million in securities of issuers that are not affiliated with it and that has an audited net worth at least US$25 million as demonstrated in its latest annual financial statements, as of a date not more than 16 months preceding the date of sale under the rule in the case of a U.S. bank or savings and loan association, and not more

4

than 18 months preceding such date of sale for a foreign bank or savings and loan association or equivalent institution.

(b) In determining the aggregate amount of securities owned and invested on a discretionary basis by an entity, the following instruments and interests shall be excluded: bank deposit notes and certificates of deposit; loan participations; repurchase agreements; securities owned but subject to a repurchase agreement; and currency, interest rate and commodity swaps.

(c) The aggregate value of securities owned and invested on a discretionary basis by an entity shall be the cost of such securities, except where the entity reports its securities holdings in its financial statements on the basis of their market value, and no current information with respect to the cost of those securities has been published. In the latter event, the securities may be valued at market for purposes of this section.

(d) In determining the aggregate amount of securities owned by an entity and invested on a discretionary basis, securities owned by subsidiaries of the entity that are consolidated with the entity in its financial statements prepared in accordance with generally accepted accounting principles may be included if the investments of such subsidiaries are managed under the direction of the entity, except that, unless the entity is a reporting company under Section 13 or 15(d) of the Exchange Act, securities owned by such subsidiaries may not be included if the entity itself is a majority-owned subsidiary that would be included in the consolidated financial statements of another enterprise.

"**United States**" is defined in Rule 902(l) of the Securities Act as the United States of America, its territories and possessions, any State of the United States, and the District of Columbia.

"**U.S. person**" is defined in Rule 902(k) of the Securities Act as:

(a) any natural person resident in the United States;

(b) any partnership or corporation organized or incorporated under the laws of the United States;

(c) any estate of which any executor or administrator is a U.S. person;

(d) any trust of which any trustee is a U.S. person;

(e) any agency or branch of a foreign entity located in the United States;

(f) any non-discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary for the benefit or account of a U.S. person;

(g) any discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated, or (if an individual) resident in the United States; and

(h) any partnership or corporation if:

(1) organized or incorporated under the laws of any foreign jurisdiction; and

(2) formed by a U.S. person principally for the purpose of investing in securities not registered under the Securities Act, unless it is organized or incorporated, and owned, by accredited investors (as defined in Rule 501(a) of the Securities Act) who are not natural persons, estates or trusts.

The following are not "U.S. persons":

(a) any discretionary account or similar account (other than an estate or trust) held for the benefit or account of a non-U.S. person by a dealer or other professional fiduciary organized, incorporated, or (if an individual) resident in the United States;

5

(b) any estate of which any professional fiduciary acting as executor or administrator is a U.S. person if:

    (1) an executor or administrator of the estate who is not a U.S. person has sole or shared investment discretion with respect to the assets of the estate; and

    (2) the estate is governed by foreign law;

(c) any trust of which any professional fiduciary acting as trustee is a U.S. person, if a trustee who is not a U.S. person has sole or shared investment discretion with respect to the trust assets, and no beneficiary of the trust (and no settlor if the trust is revocable) is a U.S. person;

(d) an employee benefit plan established and administered in accordance with the law of a country other than the United States and customary practices and documentation of such country;

(e)  any agency or branch of a U.S. person located outside the United States if:

    (1) the agency or branch operates for valid business reasons; and

    (2) the agency or branch is engaged in the business of insurance or banking and is subject to substantive insurance or banking regulation, respectively, in the jurisdiction where located; and

(f) the International Monetary Fund, the International Bank for Reconstruction and Development, the Inter-American Development Bank, the Asian Development Bank, the African Development Bank, the United Nations, and their agencies, affiliates and pension plans, and any other similar international organizations, their agencies, affiliates and pension plans.

6

**Exhibit 3-B**

**Prepetition HK Supply Agreement Claims Ballot**

**NO CHAPTER 11 CASES HAVE BEEN COMMENCED AS OF THE DATE OF THE DISTRIBUTION OF THIS BALLOT.  THE DEBTORS INTEND TO FILE CHAPTER 11 CASES AND SEEK CONFIRMATION OF THE PREPACKAGED PLAN (AS DEFINED BELOW) BY THE BANKRUPTCY COURT BEFORE THE VOTING DEADLINE.**

No person has been authorized to give any information or advice, or to make any representation, other than what is included in the Disclosure Statement and other materials accompanying this Ballot (each as defined below).[1]  Please note that, even if you intend to vote to reject the Prepackaged Plan, you must still read, complete, and execute this entire Ballot.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| iROBOT CORPORATION, *et al.*,[2] | ) Case No. 25-12197 (___) |
| | ) |
| Debtors. | ) (Joint Administration to be Requested) |
| | ) |

BALLOT FOR VOTING TO ACCEPT OR REJECT
THE JOINT PREPACKAGED CHAPTER 11 PLAN
OF REORGANIZATION OF IROBOT CORPORATION AND ITS DEBTOR AFFILIATES

CLASS FOUR:  PICEA HK SUPPLY AGREEMENT CLAIMS

**IN ORDER FOR YOUR VOTE TO BE COUNTED TOWARD CONFIRMATION OF THE PREPACKAGED PLAN, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AND VOTING AGENT ON OR BEFORE DECEMBER 14, 2025 AT 11:59 P.M. (PREVAILING EASTERN TIME) (THE "<u>VOTING DEADLINE</u>"), UNLESS EXTENDED BY THE DEBTORS.**

iRobot Corporation and certain of its affiliates (collectively, the "<u>Debtors</u>") have provided you with this ballot (this "<u>Ballot</u>") to solicit your vote to accept or reject the *Joint Prepackaged Chapter 11 Plan of Reorganization of iRobot Corporation and Its Debtor Affiliates* (as may be amended, supplemented, or modified from time to time, the "<u>Prepackaged Plan</u>").

You are receiving this Ballot because records indicate that you are a Holder of a Picea HK Supply Agreement Claim in Class 4 as of December 13, 2025 (the "<u>Voting Record Date</u>").

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Prepackaged Plan, as applicable.

[2]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: iRobot Corporation (9335); iRobot US Holdings, LLC (5237); and iRobot Holdings LLC (5307). For purposes of these chapter 11 cases, the Debtors' service address is 8 Crosby Drive, Bedford, MA 01730.

The Prepackaged Plan is attached as Exhibit A to the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of iRobot Corporation and Its Debtor Affiliates* (as may be amended, supplemented, or modified from time to time, the "Disclosure Statement"), which accompanies this Ballot.  The Disclosure Statement provides information to assist you in deciding whether to accept or reject the Prepackaged Plan, including a description of the rights and treatment for each Class.  If you do not have a copy of the Disclosure Statement, you may obtain a copy from the Debtors' solicitation and voting agent, Stretto, Inc. (the "Solicitation and Voting Agent"), by calling (833) 228-5389 (Domestic Toll-Free) or (949) 590-3576 (International), or sending an electronic mail message to iRobotInquiries@stretto.com and requesting that a copy be provided to you.  You should review the Disclosure Statement and the Prepackaged Plan in their entirety before you vote.  You may wish to seek independent legal advice concerning the Prepackaged Plan and your classification and treatment under the Prepackaged Plan.

As described in the Disclosure Statement, the Debtors intend to commence cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") following conclusion of this solicitation.  The Debtors then intend to seek entry of an order, among other things, conditionally approving the disclosure statement, conditionally approving the solicitation procedures, and scheduling a combined hearing for final approval of the Disclosure Statement and confirmation of the Prepackaged Plan.

The Prepackaged Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if:  (a) it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class of Claims and (b) the Prepackaged Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Prepackaged Plan if it finds that the Prepackaged Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Prepackaged Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.  If the Prepackaged Plan is confirmed by the Bankruptcy Court and the Effective Date occurs, it will be binding on you whether or not you vote and even if you vote to reject the Prepackaged Plan.  To have your vote counted, you must complete, sign, and return this Ballot to the Solicitation and Voting Agent by the Voting Deadline.

Your receipt of this Ballot does not signify that your Claim(s) has been or will be Allowed.  This Ballot is solely for purposes of voting to accept or reject the Prepackaged Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 4 Picea HK Supply Agreement Claims.  You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

**NOTICE REGARDING CERTAIN RELEASE,
EXCULPATION, AND INJUNCTION PROVISIONS IN PREPACKAGED PLAN[3]**

**Article VIII.C**      **Debtor Release**

**Notwithstanding anything else contained herein to the contrary, to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be, and hereby is conclusively, absolutely, unconditionally, irrevocably, finally, and forever released and discharged by each and all of the Debtors, the Reorganized Debtors, and their Estates, including any successors to the Debtors or any Estate's representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative Claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Cause of Action against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their Estates (including the Debtors' capital structure, management, ownership, assets, or operation thereof), the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the assertion or enforcement of rights and remedies against the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim, Causes of Action, or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the Chapter 11 Cases, the Amended First Lien Credit Agreement, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan (including, for the avoidance of doubt, the Plan Supplement), or any aspect of the Restructuring Transactions, including any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan, the Confirmation Order, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, any action or actions taken in furtherance of or consistent with the administration of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other**

---

[3]    The provisions contained herein are copied directly from the Prepackaged Plan.

occurrence taking place on or before the Effective Date related or relating to any of the foregoing.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release (1) any post-Effective Date obligations of any party or Entity under the Plan, any act occurring after the Effective Date with respect to the Restructuring Transactions, the obligations arising under Definitive Document to the extent imposing obligations arising after the Effective Date (including those set forth in the Plan Supplement), or other document, instrument, or agreement executed to implement the Plan, (2) the rights of Holders of Allowed Claims under this Plan, including the right to receive distributions under this Plan, (3) any Cause of Action, listed, described or otherwise included on the Schedule of Retained Causes of Action, (4) any Claim, Cause of Action, dispute, or defense related to the failure to execute an agreed upon amendment to any Executory Contract or Unexpired Lease to the extent such issue is not resolved prior to the Effective Date, (5) any Claim or Cause of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, willful misconduct or criminal conduct, or (6) any Claim, dispute, or defense of the Debtors or the Reorganized Debtors preserved under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the terms by which matters are subject to a compromise and settlement, including the Debtor Releases in Article VIII.C, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Debtor Releases in Article VIII.C are: (1) essential to Confirmation of this Plan; (2) an exercise of the Debtors' business judgment; (3) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing this Plan; (4) a good-faith settlement and compromise of the Claims and Causes of Action released by the Debtor Releases in Article VIII.C; (5) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (6) fair, equitable, and reasonably given and made after due notice and opportunity for a hearing; and (7) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Releases in Article VIII.C.

**Article VIII.D        Third-Party Release**

Except as otherwise expressly set forth in this Plan or the Confirmation Orders, on and after the Effective Date, pursuant to Bankruptcy Rule 9019 and to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is deemed to be, and hereby is conclusively, absolutely, unconditionally, irrevocably, finally, and forever released and discharged by each Releasing Party (in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities) from any and all Claims and Causes of Action, including any derivative Claims asserted or assertable on behalf of the Debtors, whether known or

4

unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law, equity, contract, tort, or otherwise that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Cause of Action against, or Interest in, a Debtor based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, assets, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim, Cause of Action, or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the Chapter 11 Cases, the Amended First Lien Credit Agreement, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan (including, for the avoidance of doubt, the Plan Supplement), or any aspect of the Restructuring Transactions, including any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan, the Confirmation Order, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, any action or actions taken in furtherance of or consistent with the administration of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release (1) any post-Effective Date obligations of any party or Entity under the Plan, any act occurring after the Effective Date with respect to the Restructuring Transaction, the obligations arising under Definitive Document to the extent imposing obligations arising after the Effective Date (including those set forth in the Plan Supplement), or other document, instrument, or agreement executed to implement the Plan, (2) the rights of Holders of Allowed Claims to receive distributions under this Plan, (3) the rights of any current employee of the Debtors under any employment agreement or plan, (4) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, (5) any Claim, Cause of Action, or defense related to the failure to execute an agreed upon amendment to any Executory Contract or Unexpired Lease to the extent such issue is not resolved prior to the Effective Date, or (6) any Claim or Cause of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, willful misconduct or criminal conduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the terms by which matters are subject to a compromise and settlement, including the Debtor Releases in Article VIII.C, which includes

5

by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Releases in this **Article VIII.D** are: (1) essential to Confirmation of this Plan; (2) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing this Plan; (3) a good-faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Releases in this **Article VIII.D**; (4) in the best interests of the Debtors and their Estates and all Holders of Claims and Interests; (5) fair, equitable, and reasonably given and made after due notice and opportunity for a hearing; and (6) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Releases in this **Article VIII.D.**

**Article VIII.E          Exculpation**

Except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action or Claim whether direct or derivative related to any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases from the Petition Date to or on the Effective Date, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan, the Plan Supplement, or any transaction related to the Restructuring Transactions, any contract, instrument, release, or other agreement or document created or entered into before or during the Chapter 11 Cases in connection with the Restructuring Transactions, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, except for Claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, but in all respects such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan and the Confirmation Orders.

The Exculpated Parties set forth above have, and upon Confirmation of this Plan shall be deemed to have, participated in good faith and in compliance with applicable law with respect to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.

**Article VIII.F          Injunction**

Upon entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and Affiliates, and each of their successors and assigns, shall be

enjoined from taking any actions to interfere with the implementation or Consummation of this Plan in relation to any Claim or Interest that is extinguished, discharged, or released pursuant to this Plan.

Except as otherwise expressly provided in this Plan or the Confirmation Orders, or for obligations issued or required to be paid pursuant to this Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been released, discharged, or are subject to exculpation pursuant to Article VIII, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, and/or the Released Parties:

    a. commencing, conducting, or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

    b. enforcing, levying, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or Order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

    c. creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

    d. asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and

    e. commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to this Plan or the Confirmation Orders.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors or the Exculpated Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action related to the Chapter 11 Cases prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan, the Plan Supplement, or any transaction related to the Restructuring, any contract,

7

instrument, release, or other agreement or document created or entered into before or during the Chapter 11 Cases in connection with the Restructuring Transactions, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, without regard to whether such Person or Entity is a Releasing Party, without the Bankruptcy Court (1) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind and (2) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor or Exculpated Party.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.

Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under this Plan, the Confirmation Order or under any other Definitive Document or other document, instrument, or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement this Plan and the Confirmation Orders from bringing an action to enforce the terms of this Plan, the Confirmation Order or such document, instrument, or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement this Plan and the Confirmation Orders.  The injunction in this Plan shall extend to any successors and assigns of the Debtors and the Reorganized Debtors and their respective property and interests in property.

**Article VIII.G          Waiver of Statutory Limitations on Releases**

Each Releasing Party in each of the releases contained in this Plan expressly acknowledges that although ordinarily a general release may not extend to Claims that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, each Releasing Party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or Claims.  Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law that provides that a release does not extend to Claims that the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the Released Party.  The releases contained in this Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

**Relevant Definitions Related to Release and Exculpation Provisions**:

"Exculpated Parties" means each of the Debtors' Estates and their respective fiduciaries, including the Debtors' directors and officers holding such positions at any time between the Petition Date and Effective Date.

8

"Released Parties" means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each First Lien Secured Party; (d) Picea Robotics; and (e) all Holders of Claims and Existing Equity Interests that receive a notice of non-voting status who affirmatively opt-in to the releases provided by the Plan by checking the box on the applicable notice of non-voting status indicating that they opt-in to grant the releases provided in the Plan; (f) with respect to each of the Entities in the foregoing clauses (a) through (e), each such Entity's current and former Affiliates (regardless of whether such interests are held directly or indirectly); (g) with respect to each of the Entities in the foregoing clauses (a) through (e), each such Entity's current and former predecessors, participants, successors, assigns, subsidiaries, direct and indirect equityholders, interest holders, limited partners, co-investors, funds (including affiliated investment funds or investment vehicles), portfolio companies, and management companies; and (h) with respect to each of the Entities in the foregoing clauses (a) through (g), each such Entity's current and former directors, officers, managers, members, principals, partners, employees, independent contractors, agents, representatives, managed accounts or funds (including any beneficial holders for the account of whom such funds are managed), management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners (including both general and limited partners), consultants, financial advisors, attorneys, accountants, investment bankers, and other professionals; *provided*, that, in each case, an Entity shall not be a Releasing Party if fails to opt-in to the releases contained in this Plan, if permitted to opt-in.

"Releasing Parties" means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each First Lien Secured Party; (d) Picea Robotics; and (e) all Holders of Claims and Existing Equity Interests that receive the notice of non-voting status and, in each case, who do affirmatively opt-in to the releases provided by the Prepackaged Plan by checking the box on the applicable notice of non-voting status indicating that they opt to grant the releases provided in the Prepackaged Plan.

**YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PREPACKAGED PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

*[Remainder of Page Intentionally Left Blank]*

**PLEASE READ THE ATTACHED VOTING INFORMATION**
**AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ITEMS 1, 2, 3, 4, AND 5.  IF THIS BALLOT HAS NOT BEEN PROPERLY SIGNED IN THE SPACE PROVIDED, YOUR VOTE MAY NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1.  Principal Amount of Claims**.  The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder (or authorized signatory of such a Holder) of Picea HK Supply Agreement Claims in the amount set forth below.

$\$\underline{\hspace{4cm}}$

**Item 2.  Votes on the Prepackaged Plan**.  Please vote either to accept or to reject the Prepackaged Plan with respect to your Claims below.  Any Ballot not marked either to accept or reject the Prepackaged Plan, or marked both to accept and reject the Prepackaged Plan, shall not be counted in determining acceptance or rejection of the Prepackaged Plan.

The undersigned Holder of Class 4 Picea HK Supply Agreement Claims votes to (check <u>one</u> box):

☐  **Accept** the Prepackaged Plan          ☐  **Reject** the Prepackaged Plan

**Item 3. Optional Opt-In Release Election**. Regardless of how you voted in Item 2 above, check the box below if you elect to grant the releases contained in Article VIII of the Prepackaged Plan. If you submit a Ballot voting to accept or reject the Prepackaged Plan, or if you abstain from submitting a Ballot, and in each case, you check the box below, you will be consenting to the releases contained in Article VIII of the Prepackaged Plan to the fullest extent permitted by applicable law.  The Holder of the Class 4 Picea HK Supply Agreement Claims set forth in Item 1 elects to:

☐  **OPT IN** to the releases contained in Article VIII of the Prepackaged Plan.

**Item 4. Eligible Holder Certification**. Please identify whether you are an "Eligible Holder," which means that you certify that you are one of the following: (a) a "qualified institutional buyer" (as such term is defined in Rule 144A of the Securities Act), (b) an "accredited investor" (as such term is defined in Rule 501 of Regulation D of the Securities Act), or (c) a Holder located outside the United States, and a person other than a "U.S. person" (as defined in Rule 902(k) of Regulation S of the Securities Act) and not participating on behalf of or on account of a U.S. person (see **Exhibit A** hereto for relevant definitions).

☐  **ELIGIBLE HOLDER**

**Item 5. Acknowledgments**. By signing this Ballot, the Holder (or authorized signatory of such Holder) acknowledges receipt of the Prepackaged Plan, the Disclosure Statement, and the other applicable solicitation materials, and certifies that (a) it has the power and authority to vote to accept or reject the Prepackaged Plan, (b) it was the Holder (or is entitled to vote on behalf of such

10

Holder) of the Class 4 Picea HK Supply Agreement Claims described in Item 1 as of the Voting Record Date, (c) it has read, and understands, the certification required in Item 4, including the related information in **Exhibit A** hereto, and has accurately and correctly completed such certification, and (d) all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned hereunder, shall be binding on the transferees, successors, assigns, heirs, executors, administrators, trustees in bankruptcy, and legal representatives of the undersigned, and shall not be affected by, and shall survive, the death or incapacity of the undersigned.

_____

Name of Holder

_____

Signature

_____

If by Authorized Agent, Name and Title

_____

Name of Institution

_____

Street Address City, State, Zip Code

_____

Telephone Number

_____

Date Completed

_____

E-Mail Address

11

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THIS BALLOT[1]**

1. Ballots received after the Voting Deadline (if the Voting Deadline has not been extended) may not, at the Debtors' discretion, be counted. **The Solicitation and Voting Agent will tabulate properly completed Ballots received on or before the Voting Deadline.**

2. Complete this Ballot by providing all the information requested, signing, dating, and returning this Ballot to the Solicitation and Voting Agent. Any Ballot that is illegible, contains insufficient information to identify the Holder, or is unsigned will not be counted. Ballots may not be submitted to the Solicitation and Voting Agent by email or facsimile. If neither the "accept" nor "reject" box is checked in Item 2, both boxes are checked in Item 2, or this Ballot is otherwise not properly completed, executed, or timely returned, then this Ballot shall not be counted in determining acceptance or rejection of the Prepackaged Plan.

3. The Prepackaged Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you and the holders if (a) it is accepted by the holders of at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each Impaired Class of Claims and (b) the Prepackaged Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Prepackaged Plan if it finds that the Prepackaged Plan provides fair and equitable treatment to, and does not discriminate unfairly against, the Class or Classes rejecting it, and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

4. You must vote all your Claims within a single class under the Prepackaged Plan either to accept or reject the Prepackaged Plan. Accordingly, if you return more than one Ballot voting different or inconsistent Claims within a single Class under the Prepackaged Plan, the Ballots are not voted in the same manner, and you do not correct this before the Voting Deadline, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Prepackaged Plan likewise will not be counted.

5. **If you vote to accept or reject the Prepackaged Plan or if you are abstaining from voting to accept or reject the Prepackaged Plan, and in each case elect to grant the releases contained in Article VIII of the Prepackaged Plan, you must check the box in Item 3. Election to withhold consent is at your option. If you do not check the box in Item 3, you will be consenting to the releases set forth in Article VIII of the Prepackaged Plan.**

6. This Ballot does not constitute, and shall not be deemed to be, a proof of Claim or an assertion or admission of Claims.

7. This Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Prepackaged Plan.

---

[1] For any Ballot cast via electronic mail, the format of the attachment must be found in the common workplace and industry standard format (i.e., industry-standard PDF file) and the received date and time in the Solicitation and Voting Agent's inbox will be used as the timestamp for receipt.

12

8.      If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest received, properly executed Ballot submitted to the Solicitation and Voting Agent will supersede any prior Ballot.

9.      This Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you in the event that (a) the Debtors revoke or withdraw the Prepackaged Plan, or (b) the Confirmation Order is not entered or consummation of the Prepackaged Plan does not occur.  In addition, for the avoidance of doubt, any Ballot submitted by the Holder of Picea HK Supply Agreement Claims shall be subject to the applicable provisions of the Restructuring Support Agreement.

10.     There may be changes made to the Prepackaged Plan that do not cause material adverse effects on an accepting class.  If such non-material changes are made to the Prepackaged Plan, in accordance with its terms and the Restructuring Support Agreement, the Debtors will not resolicit votes for acceptance or rejection of the Prepackaged Plan.

11.     NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

12.     PLEASE RETURN YOUR BALLOT PROMPTLY.

13.     IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AND VOTING AGENT BY CALLING TOLL FREE IN THE U.S. AT (833) 228-5389 OR (949) 590-3576 IF OUTSIDE OF THE U.S., OR BY ELECTRONIC MAIL TO iRobotInquiries@stretto.com.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.

14.     THE SOLICITATION AND VOTING AGENT IS NOT AUTHORIZED TO AND WILL NOT PROVIDE LEGAL ADVICE.

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PREPACKAGED PLAN IS DECEMBER 14, 2025 AT 11:59 P.M. (PREVAILING EASTERN TIME).**

**ALL BALLOTS MUST BE PROPERLY EXECUTED, COMPLETED, AND DELIVERED ACCORDING TO THE VOTING INSTRUCTIONS SO THAT THE BALLOTS ARE ACTUALLY RECEIVED BY THE SOLICITATION AND VOTING AGENT NO LATER THAN THE VOTING DEADLINE.**

13

**Exhibit A**

**DEFINITIONS**

**"Accredited investor"** is defined in Rule 501 of the Securities Act of 1933 as:

(a) any person who comes within any of the following categories, or who the issuer reasonably believes comes within any of the following categories, at the time of the sale of the securities to that person:

    (1) Any bank as defined in section 3(a)(2) of the Securities Act, or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Securities Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934; any insurance company as defined in section 2(13) of the Securities Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such Act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

    (2) Any private business development company as defined in section 202(a)(22) of the Investment Advisers Act of 1940;

    (3) Any organization described in section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, partnership, or limited liability company, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

    (4) Any director, executive officer, or general partner of the issuer of the securities being offered or sold, or any director, executive officer, or general partner of a general partner of that issuer;

    (5) Any natural person whose individual net worth, or joint net worth with that person's spouse or spousal equivalent, exceeds $1,000,000.

        (i) Except as provided in paragraph (a)(5)(ii) of this section, for purposes of calculating net worth under this paragraph (a)(5):

            (A) The person's primary residence shall not be included as an asset;

            (B) Indebtedness that is secured by the person's primary residence, up to the estimated fair market value of the primary residence at the time of the sale of securities, shall not be included as a liability (except that if the amount of such indebtedness outstanding at the time of sale of securities exceeds the amount outstanding 60 days before such time, other than as a result of the acquisition of the primary residence, the amount of such excess shall be included as a liability); and

            (C) Indebtedness that is secured by the person's primary residence in excess of the estimated fair market value of the primary residence at the time of the sale of securities shall be included as a liability;

(ii) Paragraph (a)(5)(i) of this section will not apply to any calculation of a person's net worth made in connection with a purchase of securities in accordance with a right to purchase such securities, provided that:

    (A) Such right was held by the person on July 20, 2010;

    (B) The person qualified as an accredited investor on the basis of net worth at the time the person acquired such right; and

    (C) The person held securities of the same issuer, other than such right, on July 20, 2010.

(6) Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year;

(7) Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii) of the Securities Act; and

(8) Any entity in which all of the equity owners are accredited investors.

(9) Any entity, of a type not listed in paragraph (a)(1), (2), (3), (7), or (8), not formed for the specific purpose of acquiring the securities offered, owning investments in excess of $5,000,000;

(10) Any natural person holding in good standing one or more professional certifications or designations or credentials from an accredited educational institution that the Commission has designated as qualifying an individual for accredited investor status. In determining whether to designate a professional certification or designation or credential from an accredited educational institution for purposes of this paragraph (a)(10), the Commission will consider, among others, the following attributes:

(i) The certification, designation, or credential arises out of an examination or series of examinations administered by a self-regulatory organization or other industry body or is issued by an accredited educational institution;

(ii) The examination or series of examinations is designed to reliably and validly demonstrate an individual's comprehension and sophistication in the areas of securities and investing;

(iii) Persons obtaining such certification, designation, or credential can reasonably be expected to have sufficient knowledge and experience in financial and business matters to evaluate the merits and risks of a prospective investment; and

(iv) An indication that an individual holds the certification or designation is either made publicly available by the relevant self-regulatory organization or other industry body or is otherwise independently verifiable;

(11) Any natural person who is a "knowledgeable employee," as defined in rule 3c–5(a)(4) under the Investment Company Act of 1940, of the issuer of the securities being offered or sold where the issuer would be an investment company, as defined in section 3 of such act, but for the exclusion provided by either section 3(c)(1) or section 3(c)(7) of such act;

(12) Any "family office," as defined in rule 202(a)(11)(G)–1 under the Investment Advisers Act of 1940:

2

(i)   With assets under management in excess of $5,000,000,

(ii)  That is not formed for the specific purpose of acquiring the securities offered, and

(iii) Whose prospective investment is directed by a person who has such knowledge and experience in financial and business matters that such family office is capable of evaluating the merits and risks of the prospective investment; and

(13)   Any "family client," as defined in rule 202(a)(11)(G)–1 under the Investment Advisers Act of 1940, of a family office meeting the requirements in paragraph (a)(12) of this section and whose prospective investment in the issuer is directed by such family office pursuant to paragraph (a)(12)(iii).

"**Qualified institutional buyer**" is defined in Rule 144A under the Securities Act as:

(a)

(i) any of the following entities, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least US $100 million in securities of issuers that are not affiliated with the entity:

(A) any insurance company as defined in Section 2(a)(13) of the Securities Act; Note:  A purchase by an insurance company for one or more of its separate accounts, as defined by Section 2(a)(37) of the U.S. Investment Company Act of 1940, as amended (the "Investment Company Act"), which are neither registered under Section 8 of the Investment Company Act nor required to be so registered, shall be deemed to be a purchase for the account of such insurance company.

(B) any investment company registered under the Investment Company Act or any business development company as defined in Section 2(a)(48) of the Investment Company Act;

(C) any small business investment company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the U.S. Small Business Investment Act of 1958, as amended;

(D) any plan established and maintained by a U.S. state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees;

(E) any employee benefit plan within the meaning of Title I of the U.S. Employee Retirement Income Security Act of 1974, as amended;

(F) any trust fund whose trustee is a bank or trust company and whose participants are exclusively plans of the types identified in subparagraph (a)(i)(D) or (E) above, except trust funds that include as participants individual retirement accounts or H.R. 10 plans;

(G) any business development company as defined in Section 202(a)(22) of the U.S. Investment Advisers Act of 1940, as amended (the "Investment Advisers Act");

(H) any organization described in Section 501(c)(3) of the U.S. Internal Revenue Code of 1986, as amended, corporation (other than a bank as defined in Section 3(a)(2) of the Securities Act or a savings and loan association or other institution referenced in Section 3(a)(5)(A) of the

3

Securities Act or a foreign bank or savings and loan association or equivalent institution), partnership, or Massachusetts or similar business trust; and

(I) any investment adviser registered under the Investment Advisers Act.

(ii) any dealer registered pursuant to Section 15 of the U.S. Securities Exchange Act of 1934, as amended (the "Exchange Act"), acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least US$10 million of securities of issuers that are not affiliated with the dealer, provided that securities constituting the whole or a part of an unsold allotment to or subscription by a dealer as a participant in a public offering shall not be deemed to be owned by such dealer;

(iii) any dealer registered pursuant to Section 15 of the Exchange Act acting in a riskless principal transaction (as defined below) on behalf of a qualified institutional buyer; Note: A registered dealer may act as agent, on a non-discretionary basis, in a transaction with a qualified institutional buyer without itself having to be a qualified institutional buyer.

(iv) any investment company registered under the Investment Company Act, acting for its own account or for the accounts of other qualified institutional buyers, that is part of a family of investment companies which own in aggregate at least US$100 million in securities of issuers, other than issuers that are affiliated with the investment company or are part of such family of investment companies. "Family of investment companies" means any two or more investment companies registered under the Investment Company Act, except for a unit investment trust whose assets consist solely of shares of one or more registered investment companies, that have the same investment adviser (or, in the case of unit investment trusts, the same depositor), provided that:

(A) each series of a series company (as defined in Rule 18f-2 under the Investment Company Act) shall be deemed to be a separate investment company; and

(B) investment companies shall be deemed to have the same adviser (or depositor) if their advisers (or depositors) are majority-owned subsidiaries of the same parent, or if one investment company's adviser (or depositor) is a majority-owned subsidiary of the other investment company's adviser (or depositor);

(v) any entity, all of the equity owners of which are qualified institutional buyers, acting for its own account or the accounts of other qualified institutional buyers; and

(vi) any bank as defined in Section 3(a)(2) of the Securities Act, any savings and loan association or other institution as referenced in Section 3(a)(5)(A) of the Securities Act, or any foreign bank or savings and loan association or equivalent institution, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least US$100 million in securities of issuers that are not affiliated with it and that has an audited net worth at least US$25 million as demonstrated in its latest annual financial statements, as of a date not more than 16 months preceding the date of sale under the rule in the case of a U.S. bank or savings and loan association, and not more

4

than 18 months preceding such date of sale for a foreign bank or savings and loan association or equivalent institution.

(b) In determining the aggregate amount of securities owned and invested on a discretionary basis by an entity, the following instruments and interests shall be excluded: bank deposit notes and certificates of deposit; loan participations; repurchase agreements; securities owned but subject to a repurchase agreement; and currency, interest rate and commodity swaps.

(c) The aggregate value of securities owned and invested on a discretionary basis by an entity shall be the cost of such securities, except where the entity reports its securities holdings in its financial statements on the basis of their market value, and no current information with respect to the cost of those securities has been published. In the latter event, the securities may be valued at market for purposes of this section.

(d) In determining the aggregate amount of securities owned by an entity and invested on a discretionary basis, securities owned by subsidiaries of the entity that are consolidated with the entity in its financial statements prepared in accordance with generally accepted accounting principles may be included if the investments of such subsidiaries are managed under the direction of the entity, except that, unless the entity is a reporting company under Section 13 or 15(d) of the Exchange Act, securities owned by such subsidiaries may not be included if the entity itself is a majority-owned subsidiary that would be included in the consolidated financial statements of another enterprise.

"**United States**" is defined in Rule 902(l) of the Securities Act as the United States of America, its territories and possessions, any State of the United States, and the District of Columbia.

"**U.S. person**" is defined in Rule 902(k) of the Securities Act as:

(a) any natural person resident in the United States;

(b) any partnership or corporation organized or incorporated under the laws of the United States;

(c) any estate of which any executor or administrator is a U.S. person;

(d) any trust of which any trustee is a U.S. person;

(e) any agency or branch of a foreign entity located in the United States;

(f) any non-discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary for the benefit or account of a U.S. person;

(g) any discretionary account or similar account (other than an estate or trust) held by a dealer or other fiduciary organized, incorporated, or (if an individual) resident in the United States; and

(h) any partnership or corporation if:

(1) organized or incorporated under the laws of any foreign jurisdiction; and

(2) formed by a U.S. person principally for the purpose of investing in securities not registered under the Securities Act, unless it is organized or incorporated, and owned, by accredited investors (as defined in Rule 501(a) of the Securities Act) who are not natural persons, estates or trusts.

The following are not "U.S. persons":

(a) any discretionary account or similar account (other than an estate or trust) held for the benefit or account of a non-U.S. person by a dealer or other professional fiduciary organized, incorporated, or (if an individual) resident in the United States;

5

(b) any estate of which any professional fiduciary acting as executor or administrator is a U.S. person if:

(1) an executor or administrator of the estate who is not a U.S. person has sole or shared investment discretion with respect to the assets of the estate; and

(2) the estate is governed by foreign law;

(c) any trust of which any professional fiduciary acting as trustee is a U.S. person, if a trustee who is not a U.S. person has sole or shared investment discretion with respect to the trust assets, and no beneficiary of the trust (and no settlor if the trust is revocable) is a U.S. person;

(d) an employee benefit plan established and administered in accordance with the law of a country other than the United States and customary practices and documentation of such country;

(e) any agency or branch of a U.S. person located outside the United States if:

(1) the agency or branch operates for valid business reasons; and

(2) the agency or branch is engaged in the business of insurance or banking and is subject to substantive insurance or banking regulation, respectively, in the jurisdiction where located; and

(f) the International Monetary Fund, the International Bank for Reconstruction and Development, the Inter-American Development Bank, the Asian Development Bank, the African Development Bank, the United Nations, and their agencies, affiliates and pension plans, and any other similar international organizations, their agencies, affiliates and pension plans.