## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| iRobot Corporation, *et al.*,[1] | ) | Case No. 25-12197 (\_\_\_) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

## JOINT PREPACKAGED CHAPTER 11 PLAN OF
## REORGANIZATION OF iROBOT CORPORATION AND ITS DEBTOR AFFILIATES

> THIS CHAPTER 11 PLAN IS BEING SOLICITED FOR ACCEPTANCE OR REJECTION IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 1126.  THIS CHAPTER 11 PLAN WILL BE SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL FOLLOWING SOLICITATION AND THE DEBTORS' FILING FOR CHAPTER 11 BANKRUPTCY.

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (*pro hac vice* pending)
Alice Belisle Eaton (*pro hac vice* pending)
John T. Weber (*pro hac vice* pending)
1285 Avenue of the Americas
New York, New York 10019
Tel:    (212) 373-3000
Fax:    (212) 757-3990
Email:  pbasta@paulweiss.com
        aeaton@paulweiss.com
        jweber@paulweiss.com

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Sean T. Greecher (Del. No. 4484)
Andrew Magaziner (Del. No. 5426)
Shella Borovinskaya (Del. No. 6758)
Kristin L. Cardoza (No. 6871)
Rodney Square
1000 North King Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
amagaziner@ycst.com
sgreecher@ycst.com
sborovinskaya@ycst.com
kcardoza@ycst.com

*Proposed Counsel to the Debtors and Debtors in Possession*
Dated: December 14, 2025

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: iRobot Corporation (9335); iRobot US Holdings, LLC (5237); and iRobot Holdings LLC (5307).  The Debtors' service address for purposes of these chapter 11 cases is: 8 Crosby Drive, Bedford, MA 01730.

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION,  COMPUTATION OF TIME AND
    GOVERNING LAWS ...................................................................................................1
 A.  Defined Terms...............................................................................................1
 B.  Rules of Interpretation ...............................................................................12
 C.  Computation of Time ..................................................................................13
 D.  Governing Laws..........................................................................................14
 E.  Reference to Monetary Figures...................................................................14
 F.  Reference to the Debtors or the Reorganized Debtors................................14
 G.  Controlling Document.................................................................................14
 H.  Consent Rights ...........................................................................................14

ARTICLE II. ADMINISTRATIVE, PRIORITY CLAIMS, AND STATUTORY FEES .................15
 A.  Administrative Claims.................................................................................15
 B.  Professional Fee Claims..............................................................................15
 C.  Priority Tax Claims.....................................................................................17

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...................17
 A.  Classification in General.............................................................................17
 B.  Formation of Debtor Groups for Convenience Only ...................................17
 C.  Summary of Classification...........................................................................17
 D.  Treatment of Claims and Interests ..............................................................18
 E.  Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.................21
 F.  No Substantive Consolidation.....................................................................22
 G.  Special Provision Governing Unimpaired Claims or Interests .....................22
 H.  Elimination of Vacant Classes....................................................................22
 I.  Acceptance by Impaired Classes.................................................................22
 J.  Voting Classes; Presumed Acceptance by Non-Voting Classes...................23
 K.  Controversy Concerning Impairment...........................................................23
 L.  Intercompany Interests................................................................................23
 M.  Relative Rights and Priorities .....................................................................23

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THIS PLAN .............................................23
 A.  Sources of Consideration for Plan Distributions.........................................24
 B.  Issuance and Distribution of New Common Equity .....................................24
 C.  Restructuring Transactions .........................................................................24
 D.  Release of Guarantees and Liens Under Amended First Lien Credit Agreement ...........25
 E.  Reorganized Debtors..................................................................................26
 F.  Corporate Existence ...................................................................................26
 G.  Exemption from Registration.......................................................................26
 H.  Vesting of Assets in the Reorganized Debtors.............................................27
 I.  Cancellation of Existing Securities and Agreements....................................28
 J.  Corporate Action........................................................................................29
 K.  New Organizational Documents...................................................................29
 L.  Directors, Managers, and Officers of the Reorganized Debtors ..................30
 M.  Liability of Officers, Directors, and Agents ...............................................30
 N.  Effectuating Documents; Further Transactions............................................30
 O.  Section 1146 Exemption.............................................................................31
 P.  Preservation of Causes of Action................................................................31
 Q.  Employment and Retiree Benefits...............................................................32
 R.  Dissolution of Certain Debtors ...................................................................33
 S.  Private Company.........................................................................................33

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................33
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases.............................33
    B.    Claims Based on Rejection of Executory Contracts and Unexpired Leases.............................34
    C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases .........................35
    D.    Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases
        ........................................................................................................................................................36
    E.    Indemnification Obligations ...................................................................................................37
    F.    Insurance Policies ...................................................................................................................37
    G.    Modifications, Amendments, Supplements, Restatements or Other Agreements ..................38
    H.    Nonoccurrence of Effective Date...........................................................................................38
    I.    Reservation of Rights..............................................................................................................38
    J.    New Picea Supply Agreement ................................................................................................38

ARTICLE VI. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED
    CLAIMS AND INTERESTS.........................................................................................................39
    A.    Disputed Claims Process .........................................................................................................39
    B.    Allowance of Claims...............................................................................................................39
    C.    Claims Administration Responsibilities.................................................................................39
    D.    Adjustment to Claims without Objection................................................................................40
    E.    Disallowance of Claims or Interests ......................................................................................40
    F.    No Distributions Pending Allowance ......................................................................................41
    G.    Distributions After Allowance ...............................................................................................41

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS .........................................................41
    A.    Timing and Calculation of Amounts to Be Distributed .........................................................41
    B.    Distribution Agent..................................................................................................................41
    C.    Distribution Record Date .......................................................................................................42
    D.    Rights and Powers of Distribution Agent ..............................................................................42
    E.    Delivery of Distributions and Undeliverable or Unclaimed Distributions ............................42
    F.    Manner of Payment.................................................................................................................43
    G.    No Postpetition Interest on Claims ........................................................................................43
    H.    Compliance with Tax Requirements.......................................................................................44
    I.    Allocations.............................................................................................................................44
    J.    Foreign Currency Exchange Rate ..........................................................................................44
    K.    Setoffs and Recoupment ........................................................................................................44
    L.    Claims Paid or Payable by Third Parties ...............................................................................45

ARTICLE VIII. RELEASE, INJUNCTION AND RELATED PROVISIONS ..........................................46
    A.    Discharge of Claims and Termination of Interests ................................................................46
    B.    Release of Liens......................................................................................................................46
    C.    Debtor Release ........................................................................................................................47
    D.    Third-Party Release.................................................................................................................49
    E.    Exculpation .............................................................................................................................50
    F.    Injunction ...............................................................................................................................51
    G.    Waiver of Statutory Limitations on Releases ........................................................................53
    H.    Protection against Discriminatory Treatment ........................................................................53
    I.    Document Retention ...............................................................................................................53
    J.    Reimbursement or Contribution..............................................................................................53

ARTICLE IX. CONDITIONS PRECEDENT TO  CONSUMMATION OF THIS PLAN ........................54
    A.    Conditions Precedent to the Effective Date ...........................................................................54
    B.    Waiver of Conditions .............................................................................................................55
    C.    Substantial Consummation .....................................................................................................55
    D.    Effect of Nonoccurrence of a Condition ...............................................................................56

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN .....................................56
    A.     Modification and Amendments.............................................................................................56
    B.     Effect of Confirmation on Modifications.............................................................................56
    C.     Revocation or Withdrawal of This Plan..............................................................................56

ARTICLE XI. RETENTION OF JURISDICTION..........................................................................................57

ARTICLE XII. MISCELLANEOUS PROVISIONS .........................................................................................60
    A.     Immediate Binding Effect....................................................................................................60
    B.     Additional Documents .........................................................................................................61
    C.     Payment of Certain Fees ......................................................................................................61
    D.     Reservation of Rights...........................................................................................................61
    E.     Successors and Assigns........................................................................................................61
    F.     Notices .................................................................................................................................62
    G.     Term of Injunctions or Stays................................................................................................63
    H.     Entire Agreement .................................................................................................................63
    I.     Exhibits................................................................................................................................63
    J.     Deemed Acts........................................................................................................................64
    K.     Severability of Plan Provisions ...........................................................................................64
    L.     Votes Solicited in Good Faith..............................................................................................64
    M.     Request for Expedited Determination of Taxes....................................................................65
    N.     No Waiver or Estoppel.........................................................................................................65
    O.     Closing of Chapter 11 Cases................................................................................................65
    P.     Creditor Default ...................................................................................................................65

**INTRODUCTION**

iRobot Corporation and the other above-captioned debtors and debtors in possession (collectively, the "Debtors") propose this joint prepackaged chapter 11 plan of reorganization (as modified, amended, or supplemented from time to time, the "Plan") pursuant to section 1121(a) of the Bankruptcy Code. Although proposed jointly for administrative and distribution purposes, this plan constitutes a separate plan for each Debtor and each Debtor is a proponent of the plan within the meaning of section 1129 of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in Article I.A.

Reference is made to the accompanying *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of iRobot Corporation and Its Debtor Affiliates* for a discussion of the Debtors' history, businesses, properties and operations, projections, risk factors, a summary and analysis of this Plan and the transactions contemplated thereby, and certain related matters.

ALL HOLDERS OF CLAIMS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME AND GOVERNING LAWS**

**A.    *Defined Terms***

As used in this Plan or the Confirmation Order, capitalized terms have the meanings set forth below.

1.    "510(b) Claim" means a Claim of any kind or nature whatsoever, whether asserted or unasserted that is subject to subordination under section 510(b) of the Bankruptcy Code.

2.    "Administrative Claim" means a Claim incurred by the Debtors on or after the Petition Date and before the Effective Date for a cost or expense of administration of the Chapter 11 Cases entitled to priority under Sections 364(c)(1), 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Debtors' Estates and operating the Debtors' business; (b) Allowed Professional Fee Claims; and (c) all fees and charges assessed against the Debtors' Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

3.    "Affiliate" means, with respect to any specified Entity, any other Entity directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Entity. For purposes of this definition, "control" (including, with correlative meanings, the terms "controlling," "controlled by," and "under common control with") as used with respect to any Entity, shall mean the possession, directly or indirectly, of the right or power to direct or cause the direction of the management or policies of such Entity, whether through the ownership of voting securities, by agreement, or otherwise.

4.      "<u>Allowed</u>" means, with respect to any Claim or Interest (or any portion thereof) (a) any Claim or Interest as to which no objection to allowance has been interposed (either in the Bankruptcy Court or in the ordinary course of business) on or before the applicable time period fixed by applicable non-bankruptcy law or such other applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or as to which any objection has been determined by a Final Order, either before or after the Effective Date, to the extent such objection is determined in favor of the respective Holder; (b) any Claim or Interest as to which the liability of the Debtors and the amount thereof is determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, either before or after the Effective Date; or (c) any Claim or Interest expressly deemed Allowed by the Plan or the Cash Collateral Orders; *provided*, that notwithstanding the foregoing, the Reorganized Debtors will retain all Claims and defenses with respect to Allowed Claims or Interests that are Reinstated or otherwise Unimpaired pursuant to the Plan. "<u>Allow</u>," "<u>Allowing</u>," and "<u>Allowance</u>" shall have correlative meanings.

5.      "<u>Amended First Lien Credit Agreement</u>" means that certain Credit Agreement, dated as of July 24, 2023 (as amended, restated, modified, supplemented, or replaced from time to time in accordance with its terms), by and among iRobot, as borrower and Picea HK in its capacity as (a) the Administrative Agent, (b) the Collateral Agent and (c) the Lender thereunder.

6.      "<u>Antitrust and Foreign Investment Approvals</u>" means any notification, authorization, approval, consent, filing, application, non-objection, expiration, or termination of applicable waiting period (including any extension thereof), exemption, determination of lack of jurisdiction, waiver, variance, filing, permission, qualification, registration, or notification required under any Antitrust Laws and Foreign Investment Laws.

7.      "<u>Antitrust Laws</u>" means the Sherman Act of 1890, the Clayton Act of 1914, the Federal Trade Commission Act of 1941, the Hart-Scott Rodino Antitrust Improvements Act of 1976 (in each case, as amended), and all other applicable laws in effect from time to time that are designed or intended to prohibit, restrict or regulate actions having the purpose or effect of monopolization or restraint of trade or lessening of competition through a merger, acquisition or restructuring process.

8.      "<u>Bankruptcy Code</u>" means Title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended.

9.      "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the District of Delaware presiding over the Chapter 11 Cases or, in the event of any withdrawal of reference under 28 U.S.C. § 157, the United States District Court for the District of Delaware.

10.      "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as applicable to the Chapter 11 Cases and the general, local, and chambers rules of the Bankruptcy Court.

11.      "<u>Business Day</u>" means any day other than a Saturday, Sunday, or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the state of New York or Hong Kong, China.

12.     "Cash" means the legal tender of the United States of America and equivalents thereof, including bank deposits and checks.

13.     "Cash Collateral" has the meaning set forth in section 363(a) of the Bankruptcy Code.

14.     "Cash Collateral Orders" means collectively the Interim Cash Collateral Order and the Final Cash Collateral Order.

15.     "Cash Collateral Motion" means the motions seeking approval of the Debtors' use of cash collateral and the Bankruptcy Court's entry of the Cash Collateral Orders, together with any other pleadings or documents to be filed with the Bankruptcy Court in support of such motions.

16.     "Cause of Action" means any action, Claim, cause of action, counterclaim, cross-claim, third-party claim, controversy, remedy, demand, right, action, lien, indemnity, interest, guaranty, suit, obligation, liability, damage, judgment, account, defense, dispute, offset, power, privilege, license and franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, accrued or unaccrued, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law (whether local, state, or federal U.S. or non-U.S. law) or in equity, or pursuant to any other theory of local, state, or federal U.S. or non-U.S. law.  For the avoidance of doubt, "Cause of Action" includes:  (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity; (b) any Claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, fraudulent transfer or fraudulent conveyance or voidable transaction law, violation of local, state, or federal or non-U.S. law or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code or similar local, state, or federal U.S. or non-U.S. law; (d) any Claim, counterclaim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code or similar local, state, or federal U.S. or non-U.S. law; (e) any state or foreign law pertaining to actual or constructive fraudulent transfer, fraudulent conveyance, or similar Claim; (f) any "lender liability" or equitable subordination Claims or defenses; and (g) the right to object to or otherwise contest any Claims or Interests.

17.     "Chapter 11 Cases" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

18.     "Claim" has the meaning ascribed to it in section 101(5) of the Bankruptcy Code.

19.     "Claims and Noticing Agent" means Stretto, Inc. the claims, noticing, and solicitation agent retained by the Debtors in the Chapter 11 Cases by Bankruptcy Court order.

20.     "Claims Register" means the official register of Claims against the Debtors maintained by the Claims and Noticing Agent.

21.     "Class" means a category of Holders of Claims or Interests classified together, as set forth in Article III pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

22.     "Collateral" means the collateral under the Collateral Documents.

23.     "Collateral Documents" means any and all security agreements, pledge agreements, financing statements, deeds of trust and any other agreements and documents related thereto that grant the Collateral Agent a security interest in the assets of the Company Parties to secure the obligations of the Company Parties under the Loan Documents.

24.     "Combined Notice" means the notice setting forth (a) the date, time, and place of the combined hearing to approve the (i) Disclosure Statement and (ii) Plan, (b) instructions for obtaining copies of the Disclosure Statement and Plan, (c) the objection deadline and the procedures for filing objections to the Disclosure Statement and confirmation of the Plan, (d) procedures in respect of assumption of Executory Contracts and Unexpired Leases, and (e) notice of commencement of these chapter 11 cases, the Debtors propose to serve on the Debtors' creditor matrix and all interest holders of record, excluding the Debtors and their affiliates.

25.     "Company Parties" has the meaning set forth in the Restructuring Support Agreement.

26.     "Confirmation" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

27.     "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

28.     "Confirmation Hearing" means the hearing held by the Bankruptcy Court on confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

29.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code and approving the Disclosure Statement on a final basis.

30.     "Consummation" means the occurrence of the Effective Date.

31.     "Cure Claim" means any Claim (unless waived or modified by the applicable counterparty) based upon the Debtors' defaults under any Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

32.     "D&O Liability Insurance Policies" means all insurance policies of any of the Debtors for current or former directors', managers', members', and officers' liability issued at any time to or providing coverage to, or for the benefit of, any Debtor, and all agreements, documents,

or instruments relating thereto (including any "tail policy") in effect or purchased on or prior to the Effective Date.

33.    "<u>Debtors</u>" has the meaning set forth in the introduction hereof.

34.    "<u>Debtor Release</u>" means the releases set forth at <u>Article VIII.C</u> of the Plan.

35.    "<u>Definitive Documents</u>" means the (a) Plan; (b) the Confirmation Order; (c) the Disclosure Statement; (d) the Scheduling Order; (e) the Scheduling Motion; (f) the Cash Collateral Motion; (g) the Solicitation Materials; (h) the Cash Collateral Orders; (i) the First Day Pleadings or "second day" pleadings; (j) the New Organizational Documents; (k) the Plan Supplement; (l) all other customary documents delivered in connection with transactions of this type (including, without limitation, any and all material documents necessary to implement the Restructuring Transactions); and (m) any order, or amendment or modification of any order, entered by the Bankruptcy Court, and all other documents, motions, pleadings, briefs, applications, orders, agreements, supplements, and other filings by the Debtors, including any summaries or term sheets in respect thereof, that are related to any of the foregoing.

36.    "<u>Disallowed</u>" means a Claim or an Interest (or portion thereof) that has been disallowed, denied, dismissed, or overruled pursuant to this Plan, by Final Order of the Bankruptcy Court, or any other court of competent jurisdiction, or pursuant to a settlement.

37.    "<u>Disclosure Statement</u>" means the disclosure statement with respect to the Plan in accordance with, among other things, sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Rule 3018 of the Federal Rules of Bankruptcy Procedure, and other applicable Law, including all exhibits, annexes, schedules, and supplements thereto, each as may be amended, supplemented, or modified from time to time.

38.    "<u>Disputed</u>" means, as to a Claim or Interest, any Claim or Interest that is not yet Allowed or Disallowed.

39.    "<u>Distribution Agent</u>" means the Reorganized Debtors or the Entity or Entities selected by the Reorganized Debtors to make or facilitate distributions contemplated under the Plan, which Entity may include the Claims and Noticing Agent.

40.    "<u>Distribution Record Date</u>" means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the Confirmation Date or such other date that is selected by the Debtors.

41.    "<u>Effective Date</u>" means the date that is a Business Day selected by the Debtors, with the consent of Picea, on which (a) all conditions to the occurrence of the Effective Date have been satisfied or waived pursuant to <u>Article IX.A</u> and <u>Article IX.A(m)</u>, (b) no stay of the Confirmation Order or the Confirmation Recognition Order is in effect, and (c) the Debtors declare the Plan effective.

42.    "<u>Entity</u>" means any person, individual, corporation, limited liability company, partnership, joint venture, association, joint stock company, trust, unincorporated organization,

Governmental Unit, any agency or political subdivision of any Governmental Unit, or any other entity, whether acting in an individual, fiduciary, or other capacity.

43.    "<u>Estate</u>" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon the commencement of its Chapter 11 Case.

44.    "<u>Exculpated Parties</u>" means each of the Debtors' Estates and their respective fiduciaries, including the Debtors' directors and officers holding such positions at any time between the Petition Date and Effective Date.

45.    "<u>Executory Contract</u>" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

46.    "<u>Existing Equity Interests</u>" means all Interests in iRobot outstanding as of the Petition Date and any 510(b) Claims related thereto.

47.    "<u>File</u>," "<u>Filed</u>," or "<u>Filing</u>" means file, filed, or filing with the Bankruptcy Court, the Clerk of the Bankruptcy Court, or any of its or their authorized designees in the Chapter 11 Cases, including, with respect to a Proof of Claim, the Claims and Noticing Agent.

48.    "<u>Final Order</u>" means, as applicable, an order or judgment entered by the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, vacated, stayed, modified, or amended, and as to which the time to appeal, seek certiorari or leave to appeal, or move for a new trial, reargument, or rehearing has expired and no appeal, petition for certiorari or motion for leave to appeal, or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari or motion for leave to appeal that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari or leave to appeal could be sought or a new trial, reargument or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided*, that the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any comparable Federal Rule of Bankruptcy Procedure or sections 502(j) or 1144 of the Bankruptcy Code may be filed relating to such order or judgment shall not cause such order or judgment not to be a Final Order.

49.    "<u>Final Cash Collateral Order</u>" means the final order entered by the Bankruptcy Court authorizing, approving, and setting forth the terms and conditions for the use of Cash Collateral on an final basis.

50.    "<u>First Day Pleadings</u>" means those motions and proposed court orders that the Company files on or after the Petition Date to have heard by the Bankruptcy Court on an expedited basis at the "first day hearing."

51.    "<u>First Lien Agent</u>" means Picea HK, in its capacity as administrative agent and collateral agent under the Amended First Lien Credit Agreement and any replacement or successor agent thereto.

52.    "<u>First Lien Claims</u>" means any Claim of the First Lien Secured Parties on account of the First Lien Loan Documents, including the First Lien Term Loans.

53.    "<u>First Lien Loan Documents</u>" means the "Loan Documents" as defined in the Amended First Lien Credit Agreement.

54.    "<u>First Lien Secured Parties</u>" means the First Lien Agent and Picea HK, in its capacity as the Holder of 100% of the First Lien Claims.

55.    "<u>First Lien Term Loans</u>" means the loans outstanding under the Amended First Lien Credit Agreement.

56.    "<u>Foreign Investment Laws</u>" means applicable laws that are designed or intended to screen, prohibit, restrict or regulate foreign investments into such jurisdiction or country, including but not limited to on the basis of cultural, public order or safety, privacy, national or economic security grounds.

57.    "<u>General Unsecured Claim</u>" means any Claim against a Debtor that is not a First Lien Claim, an Administrative Claim, a Priority Tax Claim, an Other Secured Claim, an Other Priority Claim, an Intercompany Claim, or any 510(b) Claim.  For the avoidance of doubt, General Unsecured Claims shall include any Lease Rejection Claims or any 510(b) Claim related to the foregoing.

58.    "<u>Governmental Unit</u>" means any U.S. or non U.S. federal, state, municipal, or other government, or other department, commission, board, bureau, agency, public authority, or instrumentality thereof, or any other U.S. or non-U.S. court or arbitrator; *provided*, that "Governmental Unit" as used herein shall include any "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

59.    "<u>Holder</u>" means an Entity holding a Claim against or an Interest in a Debtor.

60.    "<u>Impaired</u>" means, with respect to any Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

61.    "<u>Intercompany Claim</u>" means a Claim or a Cause of Action against a Debtor held by a Debtor or a Non-Debtor Affiliate.

62.    "<u>Intercompany Interest</u>" means an Interest in a Debtor held by another Debtor or Non-Debtor Affiliate.

63.    "<u>Interests</u>" means, collectively, the shares (or any class thereof), common stock, preferred stock, limited partnership units, limited liability company interests, membership interests, and any other equity, ownership, or profits interests of any Debtor, and options, warrants, rights, stock appreciation rights, phantom units, incentives, commitments, calls, redemption rights, repurchase rights, or other securities or arrangements to acquire or subscribe for, or which are convertible into, or exercisable or exchangeable for, the shares (or any class thereof) of, common stock, preferred stock, limited partnership units, limited liability company interests, membership

interests, or any other equity, ownership, or profits interests of any Debtor (in each case whether or not arising under or in connection with any employment agreement).

64. "<u>Interim Cash Collateral Order</u>" means the interim order entered by the Bankruptcy Court authorizing, approving, and setting forth the terms and conditions for the use of Cash Collateral on an interim basis.

65. "<u>Law</u>" means any federal, state, local, or non-U.S. law (including, in each case, any common law), statute, code, ordinance, rule, regulation, decree, injunction, order, ruling, assessment, writ or other legal requirement, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a Governmental Unit of competent jurisdiction (including the Bankruptcy Court).

66. "<u>Lease Rejection Claims</u>" means any Claim arising due to a Debtor's rejection of an Unexpired Lease pursuant to section 365 of the Bankruptcy Code, which shall be subject to the cap imposed by section 502(b)(6) of the Bankruptcy Code.

67. "<u>Lien</u>" has the meaning set forth in section 101(37) of the Bankruptcy Code.

68. "<u>Loan Documents</u>" means the Amended First Lien Credit Agreement, the Collateral Documents, and any other agreements, instruments and documents related thereto.

69. "<u>New Board</u>" means the board of directors of Reorganized iRobot, as initially established on the Effective Date in accordance with the terms of the Plan and the applicable New Organizational Documents.

70. "<u>New Common Equity</u>" means the common stock of the Reorganized iRobot to be issued on or after the Effective Date.

71. "<u>New Organizational Documents</u>" means the new Organizational Documents of Reorganized iRobot, which shall be in form and substance acceptable to the Company Parties and Picea.

72. "<u>New Picea Supply Agreement</u>" has the meaning set forth in <u>Article V.J</u> of the Plan.

73. "<u>Non-Debtor Affiliate</u>" means any subsidiary of a Debtor that is not a Debtor.

74. "<u>Order</u>" means any judgment, order, award, injunction, writ, permit, license, or decree of any Governmental Unit or arbitrator of applicable jurisdiction.

75. "<u>Organizational Documents</u>" means, with respect to any Company Party, the documents by which such Company Party was organized or formed (such as a certificate of incorporation, certificate of formation, certificate of limited partnership, or articles of organization, and including, without limitation, any certificates of designation for preferred stock or other forms of preferred equity) or which relate to the internal governance of such Person (such as by-laws, a partnership agreement, or an operating, limited liability company, shareholders, or members agreement).

76.    "Other Priority Claim" means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, to the extent such Claim has not already been paid during the Chapter 11 Cases, other than: (a) an Administrative Claim; or (b) a Priority Tax Claim.

77.    "Other Secured Claim" means any Secured Claim against any Debtor other than First Lien Claims.

78.    "Permits" means any license, permit, registration, authorization, approval, certificate of authority, accreditation, qualification, or similar document or authority that has been issued or granted by any Governmental Unit.

79.    "Person" means an individual, a partnership, a joint venture, a limited liability company, a corporation, a trust, an unincorporated organization, a group, a Governmental Unit, or any legal entity or association.

80.    "Petition Date" means the first date any of the Debtors commence the Chapter 11 Cases.

81.    "Picea" means, collectively, Picea HK and Picea Robotics.

82.    "Picea Advisors" means, collectively, (i) White & Case LLP, (ii) Richards Layton & Finger PA, as local Delaware counsel, and (iii) each other local, foreign, regulatory or special counsel, consultant, or advisor selected by Picea HK, in its capacity as First Lien Agent and Holder of First Lien Claims to provide advice in connection with the Restructuring Transactions.

83.    "Picea HK" means Santrum Hong Kong Co., Limited, a Hong Kong company.

84.    "Picea HK Supply Agreement Claims" means any Claim of Picea HK on account of the Picea Supply Agreement.

85.    "Picea Robotics" means Shenzhen PICEA Robotics Co., Ltd. (f/k/a Shenzhen 3irobotix Co., Ltd.).

86.    "Picea Supply Agreement" means that certain Original Design Manufacturer and Supply Agreement, dated as of August 15, 2023, by and between iRobot Corporation and Picea (as amended, restated, supplemented, or otherwise modified from time to time, together with all exhibits, schedules, appendices, annexes, and other attachments thereto).

87.    "Plan" means this joint prepackaged plan of reorganization filed by the Debtors under chapter 11 of the Bankruptcy Code that embodies the Restructuring Transactions, including all exhibits, annexes, schedules, and supplements thereto, each as may be amended, supplemented, or modified from time to time, including the Plan Supplement, which shall be, in each case, at all times in form and substance reasonably acceptable in all respects to the Debtors and Picea and otherwise consistent with the consent rights in the Restructuring Support Agreement.

88.    "Plan Supplement" means the compilation of term sheets, documents and forms of documents, schedules, and exhibits to the Plan that will be filed by the Debtors with the Bankruptcy Court, which shall be in form and substance acceptable to the Debtors and Picea.

89.     "Priority Tax Claim" means any Claim of a Governmental Unit against a Debtor entitled to priority as specified in section 507(a)(8) of the Bankruptcy Code.

90.     "Professional" means any Entity (a) employed pursuant to an Order of the Bankruptcy Court in connection with these Chapter 11 Cases pursuant to sections 327, 328, or 1103 of the Bankruptcy Code and to be compensated for services pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

91.     "Professional Fee Claim" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code to the extent such fees and expenses have not been previously paid.

92.     "Professional Fee Escrow" means an account, which may be interest-bearing, funded by the Debtors with Cash prior to the Effective Date in an amount equal to the Professional Fee Escrow Amount.

93.     "Professional Fee Escrow Amount" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that Professionals estimate in good faith they have incurred or will incur in rendering services to the Debtors prior to and as of the Effective Date, which estimates Professionals shall deliver to the Debtors and Picea as set forth in Article II.B.3.

94.     "Proof of Claim" means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

95.     "Reinstate," "Reinstated," or "Reinstatement" means with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

96.     "Released Parties" means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each First Lien Secured Party; (d) Picea Robotics; and (e) all Holders of Claims and Existing Equity Interests that receive a notice of non-voting status who affirmatively opt-in to the releases provided by the Plan by checking the box on the applicable notice of non-voting status indicating that they opt-in to grant the releases provided in the Plan; (f) with respect to each of the Entities in the foregoing clauses (a) through (e), each such Entity's current and former Affiliates (regardless of whether such interests are held directly or indirectly); (g) with respect to each of the Entities in the foregoing clauses (a) through (e), each such Entity's current and former predecessors, participants, successors, assigns, subsidiaries, direct and indirect equityholders, interest holders, limited partners, co-investors, funds (including affiliated investment funds or investment vehicles), portfolio companies, and management companies; and (h) with respect to each of the Entities in the foregoing clauses (a) through (g), each such Entity's current and former directors, officers, managers, members, principals, partners, employees, independent contractors, agents, representatives, managed accounts or funds (including any beneficial holders for the account of whom such funds are managed), management companies, fund advisors, investment advisors, advisory board members, financial advisors, partners

(including both general and limited partners), consultants, financial advisors, attorneys, accountants, investment bankers, and other professionals; *provided*, that, in each case, an Entity shall not be a Releasing Party if fails to opt-in to the releases contained in this Plan, if permitted to opt-in.

97.    "Releasing Parties" means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each First Lien Secured Party; (d) Picea Robotics; and (e) all Holders of Claims and Existing Equity Interests that receive the notice of non-voting status and, in each case, who do affirmatively opt-in to the releases provided by the Plan by checking the box on the applicable notice of non-voting status indicating that they opt to grant the releases provided in the Plan.

98.    "Reorganized Debtors" means each of the Debtors or any successor or assignee thereto, by merger, consolidation, reorganization, or otherwise, as reorganized on the Effective Date in accordance with this Plan.

99.    "Reorganized iRobot" means iRobot Corporation or any successor or assignee thereto, by merger, consolidation, reorganization, or otherwise, as reorganized on the Effective Date in accordance with this Plan.

100.    "Restructuring Support Agreement" means that certain Restructuring Support Agreement, dated as of December 14, 2025, by and among the Company Parties and Picea, including all exhibits and attachments thereto, and as amended, restated, and supplemented from time to time in accordance with its terms.

101.    "Restructuring Transactions" means the transactions described in Article IV.B.

102.    "Restructuring Transactions Memorandum" means the summary of transaction steps to complete the Restructuring Transactions contemplated by this Plan, which may be included in the Plan Supplement and which shall be in form and substance acceptable to the Debtors and Picea.

103.    "Rules" means Rule 501(a)(1), (2), (3), and (7) of the Securities Act.

104.    "Schedule of Retained Causes of Action" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time.

105.    "Scheduling Motion" means the motion filed with the Bankruptcy Court seeking entry of the Scheduling Order, together with any other pleadings or documents to be filed with the Bankruptcy Court in support of such motion.

106.    "Scheduling Order" means the order of the Bankruptcy Court setting the date of the Confirmation Hearing and granting related relief.

107.    "Secured" means any Claim or portion thereof to the extent (a) secured by a lien on property in which the Debtors have an interest, which lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order of the Bankruptcy Court, or that is subject

to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the interest of the holder of such Claim in the Debtors' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) and any other applicable provision of the Bankruptcy Code or (b) Allowed, pursuant to the Plan or a Final Order of the Bankruptcy Court, as a secured Claim.

108.    "<u>Security</u>" means a security as defined in section 2(a)(1) of the Securities Act.

109.    "<u>Securities Act</u>" means the Securities Act of 1933, as amended.

110.    "<u>Specified Guarantee</u>" means any claims, guarantees, Liens, pledges, or other security interests held by any Holders of First Lien Claims under the Amended First Lien Credit Agreement against any Specified Subsidiary.

111.    "<u>Specified Subsidiary</u>" means any Non-Debtor Affiliate that is a borrower or guarantor under the Amended First Lien Credit Agreement.

112.    "<u>Solicitation Materials</u>" means any documents, forms, ballots, notices, and other materials provided in connection with the solicitation of votes on the Plan pursuant to sections 1125 and 1126 of the Bankruptcy Code, and any procedures established by the Bankruptcy Court with respect to solicitation of votes on the Plan.

113.    "<u>Statutory Fees</u>" means all fees the Debtors are obligated to pay pursuant to 28 U.S.C. § 1930(a)(6), together with interest, if any, pursuant to 31 U.S.C. § 3717.

114.    "<u>Subsidiary</u>" means, with respect to any Entity, any other Entity (i) of which such Entity or any of its Subsidiaries is a general partner or holds a majority of the voting interests of a partnership or (ii) securities or other ownership interests having ordinary voting power to elect a majority of the board of directors or other corporate bodies performing similar functions (or, if there are no such ownership interests having ordinary voting power, 50% or more of the equity interests) of which are at any time directly or indirectly owned or controlled by such Entity.

115.    "<u>Unexpired Lease</u>" means a lease to which one or more of the Debtors is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code, including any modifications, amendments, addenda, or supplements thereto or restatements thereof.

116.    "<u>U.S. Trustee</u>" means the Office of the United States Trustee for the District of Delaware.

117.    "<u>Unimpaired</u>" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

## B.    *Rules of Interpretation*

For purposes of this Plan:  (a) each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter genders; (b) capitalized terms defined

only in the plural or singular form shall nonetheless have their defined meanings when used in the opposite form; (c) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (d) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit shall mean such document, schedule, or exhibit, as it may have been or may be amended, restated, supplemented, or otherwise modified from time to time; (e) unless otherwise specified, all references herein to "Articles" are references to Articles of this Plan; (f) unless otherwise stated, the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (h) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (i) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (j) any term used in capitalized form herein that is not otherwise defined, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (k) all references to statutes, regulations, Orders, rules of courts, and the like shall mean such statutes, regulations, Orders, rules of courts, and the like as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (l) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors, transferees and assigns; (m) any effectuating provisions may be interpreted by the Reorganized Debtors in a manner consistent with the overall purpose and intent of this Plan or the Confirmation Order, all without further notice to or action, Order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control in all respects; (n) except as otherwise provided, any references to the Effective Date shall mean on the Effective Date or as soon as reasonably practicable thereafter; (o) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (p) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (q) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; (r) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; and (s) unless otherwise specified, any reference herein to the Plan or any provision thereof shall mean the Plan as it may have been or may be amended, restated, supplemented, or otherwise modified by the Confirmation Order.

## C.   *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If any payment, distribution, act, or deadline under the Plan is required to be made or performed or occurs on a day that is not a Business Day (where Business Days are specified), then the making of such payment or distribution, the performance of such act, or the occurrence of such deadline shall be deemed to

be on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date.

### D.    *Governing Laws*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein (including in the Plan Supplement), the laws of the State of New York, without giving effect to the principles of conflicts of law (except for section 5-1401 and 5-1402 of the General Obligations Law of the State of New York), shall govern the rights, obligations, construction, and implementation of this Plan and the Confirmation Order, any agreements, documents, instruments, or contracts executed or entered into in connection with this Plan or the Confirmation Order (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate or limited liability company governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state or jurisdiction of incorporation or formation (as applicable) of the applicable Debtor or Reorganized Debtor.

### E.    *Reference to Monetary Figures*

All references in this Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

### F.    *Reference to the Debtors or the Reorganized Debtors*

Except as otherwise specifically provided in this Plan or the Confirmation Order to the contrary, references in this Plan or the Confirmation Order to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

### G.    *Controlling Document*

In the event of an inconsistency between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects.  In the event of an inconsistency between this Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless otherwise provided in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and this Plan, the Disclosure Statement, or the Plan Supplement, the Confirmation Order shall control.

### H.    *Consent Rights*

Notwithstanding anything herein to the contrary, any and all consultation, information, notice, and consent rights set forth in the Restructuring Support Agreement, the Cash Collateral Orders, or any Definitive Document with respect to the form and substance of the Plan, the Plan Supplement, and all other Definitive Documents, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference and fully enforceable as if stated in full herein.

14

## ARTICLE II.
## ADMINISTRATIVE, PRIORITY CLAIMS, AND STATUTORY FEES

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

### A.    *Administrative Claims*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as applicable, or otherwise provided for under the Plan, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of the Judicial Code) shall be paid in full in Cash an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in full and final satisfaction, compromise, settlement, release, and discharge of such Allowed Administrative Claim in accordance with the following:  (1) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date, or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed on or prior to the Effective Date, the first Business Day after the date that is thirty days after the date such Administrative Claim is Allowed, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as applicable; or (5) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

### B.    *Professional Fee Claims*

1.    Professional Fee Escrow

As soon as reasonably practicable after the Confirmation Date, and no later than one Business Day prior to the Effective Date, the Debtors shall establish the Professional Fee Escrow. On the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall fund the Professional Fee Escrow with Cash equal to the Professional Fee Escrow Amount, which funds shall come from the Debtors' general funds available as of the Effective Date.  The Professional Fee Escrow shall be maintained in trust for the Professionals and for no other Entities until all Allowed Professional Fee Claims have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court.  No Liens, Claims, or interests shall encumber the Professional Fee Escrow or Cash held on account of the Professional Fee Escrow in any way.  Such funds shall not be considered property of the Estates, the Debtors, or the Reorganized Debtors, subject to the release of Cash to the Reorganized Debtors from the Professional Fee Escrow in accordance with Article II.B.2; *provided*, *however*, that the Reorganized Debtors shall have a reversionary interest in the excess, if any, of the amount of the Professional Fee Escrow over the aggregate amount of Allowed Professional Fee Claims of the

15

Professionals to be paid from the Professional Fee Escrow. When such Allowed Professional Fee Claims have been paid in full, any remaining amount in the Professional Fee Escrow shall promptly be paid to the Reorganized Debtors without any further action or Order of the Bankruptcy Court.

      2.     <u>Final Fee Applications and Payment of Professional Fee Claims</u>

All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Effective Date shall be Filed no later than forty-five (45) calendar days after the Effective Date. After notice (and opportunity for objections) and a hearing, if necessary, in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court Orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court. The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows from the Professional Fee Escrow Account, after taking into account any prior payments to and retainers held by such Professionals, as soon as reasonably practicable following the date when such Professional Fee Claims are Allowed by entry of an Order of the Bankruptcy Court.

To the extent that funds held in the Professional Fee Escrow are unable to satisfy the amount of Allowed Professional Fee Claims owing to the Professionals, each Professional shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied by the Reorganized Debtors in the ordinary course of business in accordance with <u>Article II.A</u>. After all Allowed Professional Fee Claims have been paid in full, the escrow agent shall promptly return any excess amounts held in the Professional Fee Escrow, if any, to the Reorganized Debtors, without any further action or Order of the Bankruptcy Court.

      3.     <u>Estimation of Fees and Expenses</u>

To receive payment for unbilled fees and expenses incurred through the Effective Date, the Professionals shall reasonably and in good faith estimate their Professional Fee Claims through and including the Effective Date, and shall deliver such estimate to the Debtors and Picea no later than three days prior to the anticipated Effective Date; *provided*, *however*, that such estimate shall not be considered a representation with respect to the fees and expenses of such Professional, and Professionals are not bound to any extent by the estimates. If any of the Professionals fails to provide an estimate or does not provide a timely estimate, the Debtors, in consultation with Picea, may estimate the unbilled fees and expenses of such Professional. The total amount so estimated shall be utilized by the Debtors to determine the Professional Fee Escrow Amount.

      4.     <u>Post-Effective Date Fees and Expenses</u>

Except as otherwise specifically provided in this Plan or the Confirmation Order, from and after the Effective Date, the Reorganized Debtors may, in the ordinary course of business and without any further notice to or action, Order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtors or the Reorganized Debtors. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code, or any Order of the Bankruptcy Court governing the retention or compensation of Professionals in seeking retention or compensation for services rendered after such date shall terminate, and the

Reorganized Debtors may employ and pay any Professionals in the ordinary course of business without any further notice to or action, Order, or approval of the Bankruptcy Court.

**C.      *Priority Tax Claims***

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtors agree to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive treatment in a manner consistent with section 1129(a)(9)(C) of the Bankruptcy Code.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between the Debtors and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law, or in the ordinary course of business by the Reorganized Debtors.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

**A.      *Classification in General***

Except for the Claims addressed in  Article II hereof, all Claims and Interests are classified in the Classes set forth below for all purposes, including voting, Confirmation, and distributions pursuant to this Plan and in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to this Plan, but only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

**B.      *Formation of Debtor Groups for Convenience Only***

This Plan is a separate plan of reorganization for each Debtor.  This Plan groups the Debtors together solely for the purpose of describing treatment under this Plan, Confirmation of this Plan, and making Plan distributions in respect of Claims against and Interests in the Debtors under this Plan.  Such groupings shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, or cause the transfer of any assets.  Except as otherwise provided by or permitted under this Plan, all Debtors shall continue to exist as separate legal entities.  The Plan is not premised on, and does not provide for, the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan, or otherwise.

**C.      *Summary of Classification***

The classification of Claims against and Interests in each Debtor (as applicable) pursuant to this Plan is as set forth below.  All of the potential Classes for the Debtors are set forth herein.

Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Article III.H.

The following chart summarizes the classification of Claims and Interests pursuant to the Plan:[2]

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | First Lien Claims | Impaired | Entitled to Vote |
| 4 | Picea HK Supply Agreement Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| 8 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

## D.    *Treatment of Claims and Interests*

Subject to Article IV hereof, each Holder of an Allowed Claim or Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Interest, except to the extent less favorable treatment is agreed to by the Debtors or the Reorganized Debtors and the Holder of such Allowed Claim or Interest.   Unless otherwise indicated, the Holder of an Allowed Claim or Interest shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Interest or as soon as reasonably practicable thereafter.

1.    Class 1 – Other Secured Claims

a.    *Classification*:  Class 1 consists of all Other Secured Claims.

b.    *Treatment*: Each Holder of an Allowed Other Secured Claim shall receive, at the option of the Debtors or Reorganized Debtors, as applicable:

i.    payment in full in Cash of such Holder's Allowed Other Secured Claim;

---

[2]    The information in the table is provided in summary form and is qualified in its entirety by D.

    ii.    delivery of the Collateral securing such Holder's Allowed Other Secured Claim;

    iii.    Reinstatement of such Holder's Allowed Other Secured Claim; or

    iv.    such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

c.    *Voting*: Class 1 is Unimpaired under this Plan. Each Holder of an Other Secured Claim will be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each such Holder is not entitled to vote to accept or reject this Plan.

2.    <u>Class 2 – Other Priority Claims</u>

a.    *Classification*: Class 2 consists of all Other Priority Claims.

b.    *Treatment*: Each Holder of an Allowed Other Priority Claim shall receive payment in full in Cash of such Holder's Allowed Other Priority Claim or such other treatment in a manner consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. Allowed Other Priority Claims that arise in the ordinary course of the Debtors' business and which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

c.    *Voting*: Class 2 is Unimpaired under this Plan. Each Holder of an Other Priority Claim will be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each such Holder is not entitled to vote to accept or reject this Plan.

3.    <u>Class 3 – First Lien Claims</u>

a.    *Classification*: Class 3 consists of all First Lien Claims.

b.    *Allowance*: The First Lien Claims shall be Allowed in an aggregate principal amount of no less than $183,000,000, *plus* all other unpaid and outstanding obligations including any accrued and unpaid interest thereon, and all applicable fees, costs, charges, expenses, premiums or other amounts arising under the Amended First Lien Credit Agreement or other First Lien Loan Documents, as applicable, in each case, as of the Petition Date.

c.    *Treatment*: On the Effective Date, Picea HK, as the Holder of 100% of the outstanding Allowed First Lien Claims, shall receive, in full and final satisfaction, release, discharge of, and in exchange for, such Allowed First Lien Claim, 95% of the New Common Equity.

19

      d.      *Voting*: Class 3 is Impaired under this Plan.  Each Holder of a First Lien Claims will be entitled to vote to accept or reject this Plan.

4.      <u>Class 4 – Picea HK Supply Agreement Claims</u>

      a.      *Classification*:  Class 4 consists of all Picea HK Supply Agreement Claims.

      b.      *Allowance*:  The Picea HK Supply Agreement Claims shall be Allowed in an aggregate principal amount of no less than $74,000,000, *plus* all other unpaid and outstanding obligations thereon as of the Petition Date.

      c.      *Treatment*: On the Effective Date, Picea HK, as the Holder of 100% of the outstanding Allowed Picea HK Supply Agreement Claims, shall receive, in full and final satisfaction, release, discharge of, and in exchange for, such Allowed Picea HK Supply Agreement Claims, 5% of the New Common Equity.  The remaining outstanding amount of approximately $84 million due to Picea Robotics under the Picea Supply Agreement shall remain due and owing as of the Effective Date.

      d.      *Voting*: Class 4 is Impaired under this Plan.  Each Holder of a Picea HK Supply Agreement Claim will be entitled to vote to accept or reject this Plan.

5.      <u>Class 5 – General Unsecured Claims</u>

      a.      *Classification*:  Class 5 consists of all General Unsecured Claims.

      b.      *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors agrees to a less favorable treatment on account of such Claim or such Claim has been paid or Disallowed by Final Order prior to the Effective Date, on and after the Effective Date, each Allowed General Unsecured Claim shall be Unimpaired and the Reorganized Debtors shall continue to pay or treat each Allowed General Unsecured Claim in the ordinary course of business, subject to (including under the Bankruptcy Code) all claims, defenses, disputes or Causes of Action the Debtors and Reorganized Debtors may have with respect to such Claims, including as provided in <u>Article IV.P</u> of the Plan; *provided*, that Allowed Lease Rejection Claims shall be paid in full on the Effective Date or as soon as reasonably practicable thereafter.

      c.      *Voting*: Class 5 is Unimpaired under this Plan.  Each Holder of a General Unsecured Claim will be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, each such Holder is not entitled to vote to accept or reject this Plan.

6.      <u>Class 6 – Intercompany Claims</u>

      a.      *Classification*:  Class 6 consists of all Intercompany Claims.

    b.    *Treatment*:  On the Effective Date, at the Debtors' election, each Holder of an Intercompany Claim shall have its Intercompany Claim Reinstated, or cancelled, released, and extinguished without any distribution.

    c.    *Voting*: Class 6 is either deemed Unimpaired under this Plan, and each such Holder of an Intercompany Claim will be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, or is Impaired, and each such Holder of an Intercompany Claim is deemed to reject this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each such Holder is not entitled to vote to accept or reject this Plan.

7.    <u>Class 7 – Intercompany Interests</u>

    a.    *Classification*:  Class 7 consists of all Intercompany Interests.

    b.    *Treatment*:  On the Effective Date, at the Debtors' election, each Holder of an Intercompany Interest shall have its Intercompany Interest Reinstated, or cancelled, released, and extinguished without any distribution.

    c.    *Voting*: Class 7 is either deemed Unimpaired under this Plan, and each such Holder of an Intercompany Interest will be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, or is Impaired, and each such Holder of an Intercompany Interest is deemed to reject this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each such Holder is not entitled to vote to accept or reject this Plan.

8.    <u>Class 8 – Existing Equity Interests</u>

    a.    *Classification*:  Class 8 consists of all Existing Equity Interests.

    b.    *Treatment*:  On the Effective Date, each Holder of an Existing Equity Interest shall have its Existing Equity Interest (including all related 510(b) Claims) cancelled, released, and extinguished without any distribution.

    c.    *Voting*:  Class 8 is Impaired under the Plan.  Each Holder of an Existing Equity Interest is deemed to reject this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, each such Holder is not entitled to vote to accept or reject this Plan.

**E.**    ***Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code***

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims.  The Debtors shall seek Confirmation of this Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right (with the consent of the Picea in its sole discretion) to modify this Plan in accordance with <u>Article X</u> to the extent, if any, that

Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

**F.     *No Substantive Consolidation***

Although this Plan is presented as a joint plan of reorganization for administrative purposes, this Plan does not provide for the substantive consolidation of the Debtors' Estates, and on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for any reason.  Except as expressly provided herein, nothing in this Plan, the Confirmation Order, or the Disclosure Statement shall constitute or be deemed to constitute a representation that any one or all of the Debtors is subject to or liable for any Claims or Interests against or in any other Debtor.  A Claim or Interest against or in multiple Debtors will be treated as a separate Claim or Interest against or in each applicable Debtor's Estate for all purposes, including voting and distribution; *provided*, *however* that no Claim or Interest will receive value in excess of one hundred percent (100.0%) of the Allowed amount of such Claim (inclusive of post-petition interest, if applicable) or Interests under the Plan for all such Debtors.

**G.     *Special Provision Governing Unimpaired Claims or Interests***

Except as otherwise set forth in this Plan or the Confirmation Order, nothing shall affect the Debtors' or the Reorganized Debtors' rights in respect of (i) any Unimpaired Claims or Interests, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims or Interests and (ii) any Causes of Action of the Debtors or the Reorganized Debtors with respect to any such Unimpaired Claims or Interests.

**H.     *Elimination of Vacant Classes***

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the commencement of the Confirmation Hearing shall be considered vacant and deemed eliminated from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**I.     *Acceptance by Impaired Classes***

An Impaired Class of Claims shall have accepted this Plan if, not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code or any insider under section 101(31) of the Bankruptcy Code, (1) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept this Plan, and (2) the Holders of more than one-half in number of the Allowed Claims actually voting in the Class have voted to accept this Plan.

**J.**     *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject this Plan, the Holders of such Claims in such Class shall be deemed to have accepted the Plan.

**K.**     *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired or is properly classified under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**L.**     *Intercompany Interests*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and due to the importance of maintaining the prepetition corporate structure for the ultimate benefit of the Holders of New Common Equity, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the Holders of Allowed Claims.  For the avoidance of doubt, any Interest in Non-Debtor Affiliates owned by a Debtor shall continue to be owned by the applicable Reorganized Debtor unless provided otherwise by any Order of the Bankruptcy Court or the Restructuring Transactions Memorandum.

**M.**     *Relative Rights and Priorities*

Unless otherwise expressly provided in this Plan or the Confirmation Order, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under this Plan take into account and conform to the relative priority and rights of such Claims or Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise, and any other rights impacting relative lien priority and/or priority in right of payment, and any such rights shall be released pursuant to the Plan.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Reorganized Debtors, as applicable, reserve the right, with the consent of Picea, to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THIS PLAN**

From and after the Effective Date, the Reorganized Debtors, subject to any applicable limitations set forth in any post-Effective Date agreement, shall have the right and authority without further Order of the Bankruptcy Court to raise additional capital and obtain additional financing, subject to the New Organizational Documents, as the New Board deems appropriate.

**A.**    *Sources of Consideration for Plan Distributions*

The Debtors and the Reorganized Debtors, as applicable, shall fund distributions under the Plan with Cash on hand and Cash received on and after the Effective Date from operations in the ordinary course of business or otherwise.

**B.**    *Issuance and Distribution of New Common Equity*

On the Effective Date, all Existing Equity Interests shall be cancelled and Reorganized iRobot shall issue or cause to be issued the New Common Equity in accordance with the terms of this Plan and the Confirmation Order.  All of the New Common Equity issuable under this Plan and the Confirmation Order, when so issued, shall be duly authorized, validly issued, fully paid, and nonassessable.  Each distribution and issuance referred to in Article IV hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the New Organizational Documents and other instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

Any Entity's acceptance of New Common Equity shall be deemed as its agreement to the New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their respective terms, and each such Entity will be bound thereby in all respects.  For the avoidance of doubt, all Holders of Allowed Claims entitled to distribution of New Common Equity hereunder shall be deemed to be a party to, and bound by, the New Organizational Documents regardless of whether such Holder has executed a signature page thereto.

**C.**    *Restructuring Transactions*

On or after the Confirmation Date, the Debtors or Reorganized Debtors, as applicable, shall be authorized to enter into any transactions and take other actions consistent with the Plan and the Confirmation Order as may be necessary or appropriate to effectuate the transactions described in, approved by, contemplated by, or necessary to, effectuate the Restructuring Transactions.  The applicable Debtors or the Reorganized Debtors will, subject to the consent (not to be unreasonably withheld, conditioned, or delayed) of Picea, take any actions as may be necessary or advisable to effect a corporate restructuring of the overall corporate structure of the Debtors, in the Restructuring Transactions Memorandum, or in the Definitive Documents, including the issuance of all Securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan, one or more intercompany mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dissolutions, transfers, liquidations, the creation of new subsidiaries, or other corporate transactions.

The actions to implement the Restructuring Transactions may include: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, amalgamation, arrangement, continuance, restructuring, conversion, disposition, dissolution, transfer, liquidation, spinoff, sale, or purchase containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments

of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities agree; (3) the filing of the New Organizational Documents and any appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; (4) the issuance of the New Common Equity; (5) the execution and delivery of the New Organizational Documents and any certificates or articles of incorporation, bylaws, or such other applicable formation documents (if any) of each Reorganized Debtor (including all actions to be taken, undertakings to be made, and obligations to be incurred and premiums, fees, and expenses to be paid by the Debtors and/or the Reorganized Debtors, as applicable); (6) the settlement, reconciliation, repayment, cancellation, discharge, and/or release, as applicable, of Intercompany Claims consistent with the Plan; (7) the implementation of any transaction contemplated by the Restructuring Transactions Memorandum, as applicable; and (8) all other actions that the Debtors or the Reorganized Debtors determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Plan.  The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

**D.**     ***Release of Guarantees and Liens Under Amended First Lien Credit Agreement***

On the Effective Date and immediately prior to or concurrently with the applicable distributions made pursuant to this Plan to Holders of First Lien Claims and prior to the termination, discharge, and release of the Amended First Lien Credit Agreement and all related claims thereunder, the Amended First Lien Credit Agreement shall be deemed amended, amended and restated, or otherwise modified (provided that any such amendment, amendment and restatement or modification is acceptable to Picea), and the First Lien Agent shall be deemed directed by the Required Lenders (as defined in the Amended First Lien Credit Agreement) under the Amended First Lien Credit Agreement, to, among other things:  (x) release and discharge all necessary guarantees (including any and all Specified Guarantees), Liens, pledges, or other security interests of any obligor or guarantor held by the First Lien Agent and any Holders of First Lien Claims (or the First Lien Agent for the benefit of any First Lien Claims), as applicable, relating to the Amended First Lien Credit Agreement; and (y) provide for any other necessary amendments, waivers, grants, releases, consents or instructions to any other party including any First Lien Agent pursuant to the Amended First Lien Credit Agreement to implement the Restructuring Transactions and release and discharge all necessary claims (including parallel debt obligations) against, guarantees (including any and all Specified Guarantees), Liens, pledges, or other security interests of any obligor or guarantor held by any Holders of the First Lien Claims (or the First Lien Agent for the benefit of any Holders of the First Lien Claims) and make the distributions to Holders of an Allowed Claim in the manner contemplated by the Plan and the Restructuring Transactions Memorandum.  In addition, at the sole expense of the Debtors or the Reorganized Debtors, as applicable, the First Lien Agent under the Amended First Lien Credit Agreement shall execute and deliver all documents reasonably requested by Picea or the Reorganized Debtors to evidence the release of such claims (including parallel debt obligations), guarantees, Liens, pledges, and other security interests and shall authorize the Reorganized Debtors and their designees to file UCC-3 termination statements and other release documentation, as applicable with respect thereto.

### E.    *Reorganized Debtors*

The Reorganized Debtors shall be authorized to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan.  Cash payments to be made pursuant to the Plan will be made by the Debtors or Reorganized Debtors.  The Debtors and Reorganized Debtors, as applicable, will be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Debtors or Reorganized Debtors, as applicable, to satisfy their obligations under the Plan.  Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in a manner to be determined by the Debtors, with the consent of Picea (not to be unreasonably withheld, conditioned, or delayed, and provided that Picea shall be deemed to have provided consent following notice of any such determination and a five day opportunity to object if no objection is raised within such time) and will not violate the terms of the Plan.

### F.    *Corporate Existence*

Except as otherwise provided in this Plan or the Confirmation Order, any agreement, instrument, or other document incorporated in this Plan, the Confirmation Order, or the Plan Supplement, or as a result of the Restructuring Transactions, on the Effective Date, each Debtor shall continue to exist after the Effective Date as a Reorganized Debtor and as a separate corporation, limited liability company, or other form of Entity under governing law with all the powers of such corporation, limited liability company, or other form of Entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended by this Plan, the Confirmation Order, or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to this Plan or the Confirmation Order, and require no further action or approval (other than any requisite filings required under applicable state, provincial, federal, or foreign law).  For the avoidance of doubt, nothing in this <u>Article IV.F</u> prevents, precludes, or otherwise impairs the Reorganized Debtors, or any one of them, from amending or modifying their respective certificate of incorporation and bylaws (or other formation documents), merging, amalgamating, or otherwise restructuring their legal Entity form, without supervision or approval by the Bankruptcy Court and in accordance with applicable non-bankruptcy law after the Effective Date.

### G.    *Exemption from Registration*

No registration statement will be filed under the Securities Act, or pursuant to any state securities laws, with respect to the offer and distribution of the New Common Equity or any other securities under the Plan. The offering, issuance, and distribution of the New Common Equity and any other securities under the Plan shall be exempt from registration requirements under Securities Act, or any state or local law requiring registration for offer and sale of a security, in reliance upon the exemption provided in section 1145(a) of the Bankruptcy Code to the maximum extent permitted by law, or, if section 1145(a) of the Bankruptcy Code is not available, then the New

Common Equity and any other securities under the Plan will be offered, issued, and distributed under the Plan pursuant to other applicable exemptions from registration under the Securities Act and any other applicable securities laws.

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Common Equity and any other securities under the Plan on account of the First Lien Claims (a) shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act, Regulation S under the Securities Act and/or another available exemption from registration under Section 5 of the Securities Act, and any other applicable U.S. state or local law requiring registration for the offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, (b)(i) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (ii) are freely tradable and transferable by any initial recipient thereof that (w) is not an "affiliate" of the Reorganized Debtors as defined in Rule 144(a)(1) under the Securities Act, (x) has not been such an "affiliate" within ninety calendar days of such transfer, (y) has not acquired the New Common Equity from an "affiliate" of the Reorganized Debtors within one year of such transfer, and (z) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code, and (c) will be freely tradable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, (ii) compliance with applicable securities laws and any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such securities or instruments, and (iii) the restrictions in the New Organizational Documents.  To the extent such New Common Equity is issued in reliance on Section 4(a)(2) of the Securities Act or another exemption from registration under the Securities Act, it will be "restricted securities" subject to resale restrictions and may be resold, exchanged, assigned or otherwise transferred only pursuant to registration, or an applicable exemption from registration under the Securities Act and other applicable law.

In the event Reorganized iRobot elects, on or after the Effective Date, to reflect any ownership of the New Common Equity issued pursuant to the Plan through the facilities of DTC, Reorganized iRobot need not provide to DTC any further evidence other than the Plan or the Confirmation Order with respect to the treatment of such securities under the applicable securities laws.  Notwithstanding anything to the contrary in the Plan, no Entity, including, for the avoidance of doubt, DTC or any transfer agent, shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the initial sale and delivery by the issuer to the holders of the New Common Equity are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.  The Confirmation Order shall provide that DTC or any transfer agent shall be required to accept and conclusively rely upon the Plan or the Confirmation Order in lieu of a legal opinion regarding whether the New Common Equity is exempt from registration and/or eligible for DTC-book-entry delivery, settlement, and depository services.

## H.    *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in this Plan or the Confirmation Orders, any agreement, instrument, or other document incorporated in this Plan, the Confirmation Orders, or the Plan Supplement, or pursuant to any other Final Order of the Bankruptcy Court, on the Effective Date, all property (including all interests, rights, and privileges related thereto) in each Estate, all Causes

of Action, and any property acquired by any of the Debtors pursuant to this Plan or the Confirmation Orders, including Interests held by the Debtors in any Non-Debtor Affiliates, shall vest in each respective Reorganized Debtor and as set forth in the Restructuring Transactions Memorandum, free and clear of all Liens, Claims, charges, rights, or other encumbrances subject to and in accordance with the Plan.  On and after the Effective Date, except as otherwise provided in this Plan or the Confirmation Orders, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims or Interests or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

## I.    *Cancellation of Existing Securities and Agreements*

Except for the purpose of evidencing a right to a distribution under this Plan or as otherwise provided in this Plan, the Confirmation Orders or any agreement, instrument, or other document incorporated in this Plan, the Confirmation Orders, or the Plan Supplement, on the Effective Date, (1) any certificate, security, share, note, bond, credit agreement, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing, relating to, or creating any indebtedness or obligation of or ownership interest in the Debtors or giving rise to any Claim or Interest or to any rights or obligations relating to any Claims against or Interests in the Debtors (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) and any rights of any Holder in respect thereof shall be cancelled without any need for a Holder to take further action with respect thereto, and the duties and obligations of all parties thereto, including the Debtors or the Reorganized Debtors, as applicable, and any Non-Debtor Affiliates, thereunder or in any way related thereto shall be deemed satisfied in full, canceled, released, discharged, and of no force or effect; and (2) the obligations of the Debtors or the Reorganized Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged; *provided*, *however*, that notwithstanding the occurrence of the Confirmation Date or the Effective Date, any such agreement that governs the rights of the Holder of a Claim shall continue in effect for purposes of: (a) enabling Holders of Allowed Claims and Allowed Interests to receive distributions under the Plan as provided herein; (b) allowing the Distribution Agent to make distributions under the Plan as provided herein; (c) preserving any rights of the First Lien Agent to payment of fees and expenses as against any money or property distributable to Holders under the Amended First Lien Credit Agreement.

On the Effective Date, each holder of a certificate or instrument evidencing a Claim that is discharged by the Plan shall be deemed to have surrendered such certificate or instrument in accordance with the applicable indenture or agreement that governs the rights of such holder of

such Claim.  Such surrendered certificate or instrument shall be deemed canceled as set forth in, and subject to the exceptions set forth in, this Article IV.I.

**J.**     *Corporate Action*

On the Effective Date, all actions contemplated by this Plan or the Confirmation Orders, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved by the Bankruptcy Court, as applicable, in all respects, including, as applicable: (1) the implementation of the Restructuring Transactions; (2) the adoption of the New Organizational Documents and any other new corporate governance documents; (3) the selection of the directors and officers for the Reorganized Debtors; (4) the execution and delivery of the applicable Definitive Documents and any related instruments, agreements, guarantees, filings, or other related documents; (5) the issuance of the New Common Equity; (6) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (7) the implementation of the transactions contemplated by the Restructuring Transactions Memorandum, and (8) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date).

On the Effective Date, all matters provided for in this Plan or the Confirmation Orders involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate, limited liability company, or related action required by the Debtors or the Reorganized Debtors in connection with this Plan or the Confirmation Orders, shall be deemed to have occurred in accordance with the Plan and shall be in effect, without any requirement of further action by the security interest Holders, members, directors, or officers of the Debtors or the Reorganized Debtors, as applicable.  The authorizations and approvals contemplated by this Article IV.J shall be effective notwithstanding any requirements under non-bankruptcy law.

**K.**     *New Organizational Documents*

On the Effective Date, the New Organizational Documents shall be adopted automatically by the applicable Reorganized Debtors.  On or promptly after the Effective Date, the Reorganized Debtors may file their respective New Organizational Documents and other applicable agreements with the applicable Secretaries of State or other applicable authorities in their respective states, provinces, or countries of incorporation or formation in accordance with the corporate laws of the respective states, provinces, or countries of incorporation or formation. Pursuant to section 1123(a)(6) of the Bankruptcy Code, to the extent applicable to these Chapter 11 Cases, the New Organizational Documents of the Reorganized Debtors will prohibit the issuance of non-voting equity securities.

After the Effective Date, each Reorganized Debtor may amend and restate its limited liability company agreement, certificate of incorporation, and other formation and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of the New Organizational Documents, as applicable.

**L.**     *Directors, Managers, and Officers of the Reorganized Debtors*

Following the Effective Date, the term of the current members of the boards of directors of Debtor iRobot Corporation shall expire, and the existing members of the boards of directors of Debtor iRobot Corporation shall be deemed to resign from such boards of directors, and the New Board of Reorganized iRobot shall be appointed in accordance with the New Organizational Documents. The officers of each of such Reorganized Debtors, as applicable, shall continue in their existing positions as of the Effective Date, subject to the terms of the New Organizational Documents. The members of the New Board immediately following the Effective Date shall consist of members designated in accordance with the New Organizational Documents. Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose in advance of the Confirmation Hearing as part of the Plan Supplement, to the extent known at such time, the identity and affiliations of any Person proposed to serve on the New Board or as an officer of any of the Reorganized Debtors.

Except as otherwise provided in the Plan, the Confirmation Orders, the Plan Supplement, or the New Organizational Documents, the officers of the Debtors immediately before the Effective Date, as applicable, shall serve as the initial officers of the Reorganized Debtors on the Effective Date.

**M.**     *Liability of Officers, Directors, and Agents*

The provisions of section 1125(e) of the Bankruptcy Code govern the protection from liability with respect to all matters governed by section 1125(e) of the Bankruptcy Code. The Debtors and their successors (and the officers, directors or agents of the Debtors or their successors) have no liability for conduct that was authorized by an Order of the Bankruptcy Court. With respect to conduct during the period from the Petition Date through the Effective Date, the Debtors and their successors (and the officers, directors or agents of the Debtors or their successors) may be subject to liability only for conduct that constituted: (i) actual fraud, (ii) gross negligence, or (iii) willful misconduct; *provided*, that, the provisions of this Article IV.M apply only to the extent that such limitations on liability exist under applicable nonbankruptcy law. Notwithstanding this Article IV.M, this Plan does not limit liability for conduct for which the Bankruptcy Court's approval was required by applicable law, but for which approval was not granted.

**N.**     *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Reorganized Debtors, and their respective officers, directors, members, or managers (as applicable), are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Restructuring Transactions, the New Organizational Documents, and the Securities issued pursuant to the Plan, including the New Common Equity, and any and all other agreements, documents, securities, filings, and instruments relating to the foregoing in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to

the Plan.  The authorizations and approvals contemplated by this <u>Article IV</u> shall be effective notwithstanding any requirements under non-bankruptcy law.

## O.    *Section 1146 Exemption*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property pursuant to the Plan or the Confirmation Order (including under any of the Definitive Documents and related documents) shall not be subject to any stamp tax, document recording tax, conveyance fee, intangibles, or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to (1) the creation, modification, consolidation, or recording of any mortgage, deed of trust, Lien, or other security interest, or the securing of additional indebtedness by such or other means, (2) the making or assignment of any lease or sublease, (3) any Restructuring Transaction authorized by the Plan, and (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; (e) assignments executed in connection with any Restructuring Transaction occurring under the Plan; or (f) the other Definitive Documents.

## P.    *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to <u>Article VIII</u> hereof, each Reorganized Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in <u>Article VIII</u> hereof, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date.

The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors, in their respective discretion.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action of the Debtors against it.  The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity.**  Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the

31

doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors, except as otherwise expressly provided in the Plan, including Article VIII hereof. The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, Order, or approval of the Bankruptcy Court.

## Q. *Employment and Retiree Benefits*

Except as otherwise provided in the Plan, on and after the Effective Date, subject to any Final Order and, without limiting any authority provided to the Reorganized Debtors under the Debtors' respective formation and constituent documents, the Reorganized Debtors shall: (1) assume, pursuant to section 365 of the Bankruptcy Code, the employment agreements, including any employee or retention agreements between the Debtors and the executive leadership team on the Debtors; (2) amend, adopt, assume, and/or honor in the ordinary course of business any contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for, among other things, employment, compensation, including any incentive plans, retention plans, health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits, retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the directors, officers, and employees of any of the Debtors who served in such capacity from and after the Petition Date; and (3) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Petition Date and not otherwise paid pursuant to a Bankruptcy Court order; *provided*, that the consummation of the transactions contemplated in the Plan shall not constitute a "change in control" with respect to any of the foregoing arrangements. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, to the extent that the Debtors have any retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), such retiree benefits shall continue to be paid in accordance with applicable law.

Notwithstanding the immediately preceding paragraph, no provision in any agreement, plan, or arrangement to be assumed pursuant to the foregoing paragraph relating to the award of equity or equity-like compensation shall be binding on, or honored by, the Reorganized Debtors. Nothing in this Plan shall limit, diminish, or otherwise alter the Reorganized Debtors' defenses, claims, Causes of Action, or other rights with respect to any such contracts, agreements, policies, programs and plans.

R.       *Dissolution of Certain Debtors*

On or after the Effective Date, certain of the Debtors may be dissolved without further action under applicable law, regulation, Order, or rule, including any action by the stockholders, members, the board of directors, or similar governing body of the Debtors or the Reorganized Debtors; *provided*, that, subject in all respects to the terms of the Plan, the Reorganized Debtors shall have the power and authority to take any action necessary to wind down and dissolve the applicable Debtors, and may, to the extent applicable: (1) file a certificate of dissolution for such Debtors, together with all other necessary corporate and company documents, to effect such Debtors' dissolution under the applicable laws of their states or jurisdictions of formation; (2) complete and file all final or otherwise required federal, state, and local tax returns and pay taxes required to be paid for such Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any such Debtors or their Estates, as determined under applicable tax laws; and (3) represent the interests of the Debtors or their Estates before any taxing authority in all tax matters, including any action, proceeding or audit.

S.       *Private Company*

On or prior to the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall take all necessary steps to terminate the registration of all Securities under the Exchange Act and Securities Act, including to de-register its Existing Equity Interests, and to terminate its reporting obligations under sections 12, 13, and 15(d) of the Exchange Act, including by (1) filing, or causing any applicable national securities exchange to file, a Form 25 with the SEC under the Exchange Act, and (2) filing a Form 15 with the SEC under the Exchange Act.

The Reorganized Debtors shall: (a) emerge from these Chapter 11 Cases as non-publicly reporting companies on the Effective Date and not be subject to SEC reporting requirements under Sections 12 or 15 of the Exchange Act or otherwise; (b) not be voluntarily subjected to any reporting requirements promulgated by the SEC except, in each case, as otherwise may be required pursuant to the New Organizational Documents or applicable law; and (c) not be required to list the New Common Equity on a U.S. or other stock exchange.

### ARTICLE V.
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.       *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided in the Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, all Executory Contracts and Unexpired Leases shall be deemed assumed, without the need for any further notice to or action, Order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) was previously assumed or rejected by the Debtors, pursuant to an Order of the Bankruptcy Court; (2) previously expired or terminated pursuant to its terms; (3) is the subject of a motion to reject Filed on or before the Effective Date; or (4) is specifically designated as a contract or lease to be rejected on the Schedule of Rejected Executory Contracts and Unexpired Leases.

Subject to and upon the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions or rejections of Executory Contracts and Unexpired Leases provided for in this Plan, the Confirmation Order or the Schedule of Rejected Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each Executory Contract or Unexpired Lease set forth on the Schedule of Rejected Executory Contracts and Unexpired Leases shall be deemed rejected on, and as of, the Effective Date.

Each Executory Contract and Unexpired Lease assumed pursuant to this Plan, the Confirmation Order, or any other Order of the Bankruptcy Court shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of any Order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law (following notice and an opportunity to object to the affected counterparties).  Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, Permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the Non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other rights with respect thereto.

The Debtors (with the consent of Picea) reserve the right to alter, amend, modify or supplement the Schedule of Rejected Executory Contracts and Unexpired Leases, including to add or remove any Executory Contracts and Unexpired Leases, at any time up to and including forty-five days after the Effective Date.

**B.**      ***Claims Based on Rejection of Executory Contracts and Unexpired Leases***

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, including Lease Rejection Claims, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within 30 days after the later of (1) entry of an Order of the Bankruptcy Court (including the Confirmation Order) approving such rejection and (2) the effective date of such rejection.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time shall be Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property.**  All Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease, including Lease Rejection Claims, pursuant to section 365 of the Bankruptcy Code shall be treated as General Unsecured Claim pursuant to Article III of the Plan and may be objected to in accordance with the provisions

of <u>Article VI</u> of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

## C.    *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

The Debtors or the Reorganized Debtors, as applicable, shall pay any undisputed portion of a Cure Claim, if any, on (1) the Effective Date or as soon as reasonably practicable thereafter, for Executory Contracts and Unexpired Leases assumed as of the Effective Date, (2) in the ordinary course of the Debtors' business in accordance with the terms of such Executory Contract or Unexpired Lease, or (3) the assumption effective date, if different than the Effective Date. The Debtors or the Reorganized Debtors, as applicable, may agree with the applicable counterparty to an Executory Contract or Unexpired Lease to be assumed to segregate the aggregate amount of the disputed portion of a Cure Claim on the Effective Date. Within seven days of the resolution of the disputed portion of a Cure Claim (whether by Order of the Court or agreement among the parties), the Debtors or the Reorganized Debtors, as applicable, shall pay the disputed portion of the Cure Claim to the applicable counterparty. Any Cure Claim on account of a monetary default shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the Cure Claim; *provided*, that nothing herein shall prevent the Reorganized Debtors from paying any Cure Claim despite the failure of the relevant counterparty to File such request for payment of such Cure Claim. The Reorganized Debtors also may settle any Cure Claim without any further notice to or action, Order, or approval of the Bankruptcy Court.

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim amount in Cash on the Effective Date or in the ordinary course of the Debtors' business in accordance with the terms of such Executory Contract or Unexpired Lease, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the Cure Claim payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption; *provided*, that the Reorganized Debtors may settle any such dispute without any further notice to, or action, Order, or approval of the Bankruptcy Court or any other Entity.

In accordance with the Scheduling Order, the Debtors shall provide for the Combined Notice to be served to all applicable non-Debtor third parties (excluding Non-Debtor Affiliates) and their counsel (if known), reflecting the Debtors' intention to assume the Executory Contracts or Unexpired Leases in connection with the Plan and indicating that the Debtors or the Reorganized Debtors, as applicable, will pay any undisputed portion of a Cure Claim, if any, on (a) the Effective Date or as soon as reasonably practicable thereafter, for Executory Contracts and Unexpired Leases assumed as of the Effective Date, (b) in the ordinary course of the Debtors' business in accordance with the terms of such Executory Contract or Unexpired Lease, or (c) the assumption effective date, if different than the Effective Date. In addition, the Combined Notice provides that in the event of any dispute pertaining to the assumption of an Executory Contract or Unexpired

Lease, such dispute will be addressed pursuant to this Article V.C, which provides that the Court will make a determination on the dispute before the assumption is effective, or the Debtors (with the consent of Picea) or the Reorganized Debtors, as applicable, may settle any dispute without any further notice to any party or any action, order, or approval of the Court.  Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or assumption and assignment on any grounds or related amount of the Cure Claim must be Filed, served, and actually received by the Debtors no later than the date specified in the notice.  **Any counterparty to an Executory Contract or Unexpired Lease that failed to timely object to the proposed assumption will be deemed to have assented to such assumption or assumption and assignment and any objection shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, Order, or approval of the Bankruptcy Court.**

If there is a timely Filed objection regarding (1) the amount of any Cure Claim; (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption or the cure amounts required by section 365(b)(1) of the Bankruptcy Code, such dispute shall be resolved by a Final Order of the Bankruptcy Court (which may be the Confirmation Order) or as may be agreed upon by the Debtors (with the consent of Picea) or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, full payment of any applicable Cure Claim, and cure of any nonmonetary defaults pursuant to this Article V.C shall result in the full release and satisfaction of any Cure Claims, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption, upon the payment of all applicable Cure amounts and cure of any nonmonetary defaults.

**Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to this Article V.C, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.**

**D.**     ***Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases***

Notwithstanding any non-bankruptcy law to the contrary, the Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased, or services previously received, by the contracting Debtors from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases.  For the avoidance of doubt, the rejection of any Executory Contracts or Unexpired Leases pursuant to this Plan or otherwise shall not constitute a

termination of pre-existing obligations owed to the Debtors under such Executory Contracts or Unexpired Leases.

### E.   *Indemnification Obligations*

Consistent with applicable law, all indemnification provisions in place prior to the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall (1) not be discharged, impaired, or otherwise affected in any way, including by the Plan, the Plan Supplement, or the Confirmation Orders, (2) remain intact, in full force and effect, and irrevocable, (3) not be limited, reduced or terminated after the Effective Date, and (4) survive the effectiveness of the Plan on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date irrespective of whether such indemnification obligation is owed for an act or event occurring before, on or after the Petition Date.  All such obligations shall be deemed and treated as Executory Contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Reorganized Debtors.  Any Claim based on the Debtors' obligations under the Plan shall not be a Disputed Claim or subject to any objection, in either case, for any reason, including by reason of section 502(e)(1)(B) of the Bankruptcy Code.

### F.   *Insurance Policies*

All of the Debtors' insurance policies, including D&O Liability Insurance Policies, and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan.  On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto; *provided*, that the D&O Liability Insurance Policies existing just prior to the Effective Date may be put into run-off or otherwise a tail policy put into place with respect thereon on the Effective Date.

Notwithstanding anything to the contrary contained in this Plan or the Confirmation Orders, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies. Coverage for defense and indemnity under the D&O Liability Insurance Policies shall remain available to all applicable individuals insured thereunder.

In addition, after the Effective Date, none of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies in effect on or after the Petition Date, with respect to conduct or events occurring prior to the Effective Date, and all members, managers, directors, and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, to the extent set forth therein, regardless of whether such members, managers, directors, officers, or other individuals remain in such positions after the Effective Date.

**G.**       *Modifications, Amendments, Supplements, Restatements or Other Agreements*

Unless otherwise provided in this Plan or the Confirmation Order, all Executory Contracts and Unexpired Leases that are assumed or assumed and assigned shall include all exhibits, schedules, modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contracts and Unexpired Leases, and affect Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under this Plan or the Confirmation Order.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter (1) the prepetition nature of such Executory Contracts and Unexpired Leases or (2) the validity, priority, or amount of any Claims that may arise in connection therewith, except as set forth under the express terms of any such modification, amendment, supplement, or restatement.

**H.**       *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming, assuming and assigning, or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**I.**       *Reservation of Rights*

Neither the exclusion nor the inclusion by the Debtors of any contract or lease on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have forty-five days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**J.**       *New Picea Supply Agreement*

On the Effective Date, that certain Design Manufacturer and Supply Agreement, dated December 11, 2025, by and between iRobot Corporation, iRobot UK Ltd., and Picea, including all exhibits and attachments thereto (as amended, restated, modified, supplemented, or replaced from time to time in accordance with its terms prior to the Execution Date (as defined therein), the "New Picea Supply Agreement") shall be assumed by the Debtors and Reorganized Debtors.  Picea's Cure Claim as of the Petition Date shall be deemed satisfied in full as set forth in Article III.D.4 in connection with Reorganized iRobot's assumption of the New Picea Supply Agreement.  Picea's Cure Claim arising on and after the Petition Date shall be satisfied as set forth in the New Picea Supply Agreement.  For the avoidance of doubt, this Article V.J shall not release, and neither Picea HK nor Picea Robotics shall waive, any rights or claims against non-Debtor Affiliates, including

38

any Claims under either the Picea Supply Agreement or the New Picea Supply Agreement owed by any such non-Debtor Affiliates to Picea Robotics, all of which shall remain outstanding.

## ARTICLE VI.
## PROCEDURES FOR RESOLVING
## CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS

### A.    *Disputed Claims Process*

Notwithstanding section 502(a) of the Bankruptcy Code, and in light of the Unimpaired status of all Allowed General Unsecured Claims under the Plan and as otherwise required by the Plan, Holders of Claims need not File Proofs of Claim, and the Reorganized Debtors and the Holders of Claims shall determine, adjudicate, and resolve any disputes over the validity and amounts of such Claims in the ordinary course of business as if the Chapter 11 Cases had not been commenced except that (unless expressly waived pursuant to the Plan) the Allowed amount of such Claims shall be subject to the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 and 503 of the Bankruptcy Code, to the extent applicable.  All Proofs of Claim Filed in these Chapter 11 Cases shall be considered objected to and Disputed without further action by the Debtors.  Upon the Effective Date, all Proofs of Claim Filed against the Debtors, regardless of the time of filing, and including Proofs of Claim Filed after the Effective Date, shall be deemed withdrawn and expunged, other than as provided below. Notwithstanding anything in this Plan to the contrary, disputes regarding the amount of any Cure pursuant to section 365 of the Bankruptcy Code and Claims that the Debtors seek to have determined by the Bankruptcy Court, shall in all cases be determined by the Bankruptcy Court.

For the avoidance of doubt, there is no requirement to File a Proof of Claim (or move the Bankruptcy Court for allowance) to be an Allowed Claim, as applicable, under the Plan, except to the extent a Claim is a Lease Rejection Claim.  Notwithstanding the foregoing, Entities must File Cure objections as set forth in Article V.C of the Plan to the extent such Entity disputes the amount of the Cure paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty.  Except as otherwise provided herein, all Proofs of Claim Filed after the Effective Date shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court.

### B.    *Allowance of Claims*

After the Effective Date and subject to the terms of this Plan, each of the Reorganized Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.  The Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law.

### C.    *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority: (1) to File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) to settle or compromise any Disputed Claim or Interest

without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to the Plan.

**Any objections to Claims and Interests other than General Unsecured Claims (excluding Lease Rejection Claims) must be served and Filed on or before the 120th day after the Effective Date or by such later date as ordered by the Bankruptcy Court. All Claims and Interests other than General Unsecured Claims (excluding Lease Rejection Claims) not objected to by the end of such 120-day period shall be deemed Allowed unless such period is extended upon approval of the Bankruptcy Court.**

**Any objections to Lease Rejection Claims must be served and Filed on or before the 120th day after the Effective Date or by such later date as ordered by the Bankruptcy Court. All Lease Rejection Claims not objected to by the end of such 120-day period shall be deemed Allowed unless such period is extended upon approval of the Bankruptcy Court.**

Notwithstanding the foregoing, the Debtors and Reorganized Debtors shall be entitled to dispute and/or otherwise object to any General Unsecured Claim in accordance with applicable nonbankruptcy law. If the Debtors, or Reorganized Debtors dispute any General Unsecured Claim, such dispute shall be determined, resolved, or adjudicated, as the case may be, in the manner as if the Chapter 11 Cases had not been commenced. In any action or proceeding to determine the existence, validity, or amount of any General Unsecured Claim, any and all claims or defenses that could have been asserted by the applicable Debtor(s) or the Entity holding such General Unsecured Claim are preserved as if the Chapter 11 Cases had not been commenced.

## D.    *Adjustment to Claims without Objection*

If applicable, any duplicate Claim or Interest, any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan or the Confirmation Orders), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Reorganized Debtors without having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, Order, or approval of the Bankruptcy Court.

## E.    *Disallowance of Claims or Interests*

All Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (1) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn

40

over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (2) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

### F.    *No Distributions Pending Allowance*

Notwithstanding any other provision of this Plan, if any portion of a Claim is a Disputed Claim, the Distribution Agent may elect to either (i) withhold all Distributions in respect of such Claim until such Disputed Claim becomes an Allowed Claim or (ii) make Distributions with respect to the undisputed portion of such Claim pending the allowance of the Disputed amounts.

### G.    *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan.  As soon as reasonably practicable after the date that the Order or judgment of the Bankruptcy Court Allowing any Disputed Claim becomes a Final Order, the Distribution Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim.

## ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

### A.    *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in this Plan or the Confirmation Orders, on the Effective Date (or, if a Claim or Interest is not an Allowed Claim on the Effective Date, on the date that such Claim or Interest becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall be entitled to receive the full amount of the distributions that this Plan provides for Allowed Claims in each applicable Class and in the manner provided in this Plan.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims (which will only be made if and when they become Allowed Claims) shall be made pursuant to the provisions set forth in Article VI.  Except as otherwise expressly provided in the Plan, Holders of Claims and Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.  The Debtors shall have no obligation to recognize any transfer of Claims against any Debtor or privately held Interests occurring on or after the Distribution Record Date.  Distributions to Holders of Claims or Interests related to publicly held Securities shall be made to such Holders in exchange for such Securities, which shall be deemed canceled as of the Effective Date.

### B.    *Distribution Agent*

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Distribution Agent on the Effective Date or as soon as reasonably practicable thereafter.  The Distribution Agent may hire professionals or consultants to assist with making disbursements.  The

41

Distribution Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

## C.    *Distribution Record Date*

On the Effective Date, the Claims Register shall be closed and the Distribution Agent shall be authorized and entitled to recognize only those record Holders, if any, listed on the Claims Register as of the close of business on the Distribution Record Date.  The Distribution Agent shall have no obligation to recognize any transfer of Claims occurring on or after the Distribution Record Date.  In addition, with respect to payment of any Cure Claims or disputes over any Cure Claims, neither the Debtors nor the Distribution Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Cure Claim.

## D.    *Rights and Powers of Distribution Agent*

### 1.    Powers of Distribution Agent

The Distribution Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by Order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

### 2.    Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court and subject to the prior consent of the Reorganized Debtors, the amount of any reasonable and documented fees and out-of-pocket expenses incurred by the Distribution Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Distribution Agent shall be paid in Cash by the Reorganized Debtors in the ordinary course.

## E.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

### 1.    Delivery of Distributions

Except as otherwise provided herein, the Distribution Agent shall make distributions to Holders of Allowed Claims (as applicable) as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors.

2. <u>Minimum Distributions</u>

No payment of fractional cents shall be made pursuant to the Plan, including to Holders of Allowed General Unsecured Claims by the Distribution Agent. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the distribution shall reflect a rounding of such fraction to the nearest whole penny, rounded down to the next lower whole cent.

3. <u>Undeliverable Distributions and Unclaimed Property</u>

In the event that any distribution to any Holder of an Allowed Claim is returned as undeliverable, no distribution to such Holder shall be made unless and until the Distribution Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of the later of (i) six months from the Effective Date, and (ii) the date of distribution. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further Order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim or Interest of any Holder to such property or interest in property shall be discharged and forever barred. The Reorganized Debtors and the Distribution Agent shall have no obligation to attempt to locate any Holder of an Allowed Claim other than by reviewing the Debtors' books and records and the Bankruptcy Court's filings.

Checks issued on account of Allowed Claims shall be null and void if not negotiated within 180 calendar days from and after the date of issuance thereof. Requests for reissuance of any check must be made directly and in writing to the Distribution Agent by the Holder of the relevant Allowed Claim within the 180-calendar day period. After such date, the relevant Allowed Claim (and any Claim for reissuance of the original check), as applicable, shall be automatically discharged and forever barred, and such funds shall revert to the Reorganized Debtors (notwithstanding any applicable federal, provincial, state or other jurisdiction escheat, abandoned, or unclaimed property laws to the contrary).

**F.**    ***Manner of Payment***

At the option of the Distribution Agent, any Cash distribution to be made hereunder may be made by check, wire transfer, automated clearing house, or credit card, or as otherwise required or provided in applicable agreements.

**G.**    ***No Postpetition Interest on Claims***

Unless otherwise specifically provided for herein or by Order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

### H.   *Compliance with Tax Requirements*

In connection with this Plan, to the extent applicable, the Debtors, the Reorganized Debtors, or the Distribution Agent, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in this Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distributions to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors, the Reorganized Debtors, or the Distribution Agent, as applicable, reserve the right to allocate all distributions made under this Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances. Any amounts withheld pursuant to the Plan and timely paid to the appropriate Governmental Unit shall be deemed to have been distributed to the applicable recipient for all purposes of the Plan to the extent permitted by applicable Law. All Persons holding Claims against any Debtor shall, upon written request, be required to provide any information reasonably necessary (including applicable IRS Form W-8 or W-9) for the Debtors, the Reorganized Debtors, or the Distribution Agent, as applicable to comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit.

Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim that is to receive a distribution under this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.

### I.   *Allocations*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest. Certain legislative history indicates that an allocation of consideration as between principal and interest provided in a chapter 11 plan of reorganization is binding for U.S. federal income tax purposes.

### J.   *Foreign Currency Exchange Rate*

Except as otherwise provided in a Bankruptcy Court Order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, as of the Petition Date.

### K.   *Setoffs and Recoupment*

Except as expressly provided in the Cash Collateral Orders, the Confirmation Order, and this Plan, each Debtor or Reorganized Debtor, as applicable, may, pursuant to section 553 of the

Bankruptcy Code, set off and/or recoup against any payments or distributions to be made pursuant to this Plan on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Reorganized Debtor may hold against the Holder of such Allowed Claim; *provided*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor or Reorganized Debtor or its successor of any and all claims, rights, and Causes of Action that such Debtor or Reorganized Debtor or its successor may possess against the applicable Holder.

Notwithstanding anything to the contrary herein and the automatic stay, nothing shall modify the rights, if any, of any Holder of Allowed Claims or any current or former party to an Executory Contract or Unexpired Lease to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or non-bankruptcy law with respect to undisputed amounts owing to or held by it, including (1) the ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of their Unexpired Leases with the Debtors or any successors to the Debtors under the Plan; (2) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation; or (3) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtors, the Reorganized Debtors, or any successors to the Debtors.

**L.**     ***Claims Paid or Payable by Third Parties***

1.     <u>Claims Paid by Third Parties</u>

The Debtors or the Reorganized Debtors, as applicable, shall reduce a Claim, and such Claim (or portion thereof) shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor or a Reorganized Debtor.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and also receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within fourteen days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen day grace period specified above until the amount is repaid.

2.     <u>Claims Payable by Third Parties</u>

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' or Reorganized Debtors' insurance policies, as applicable, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim against any Debtor, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, Order, or approval of the Bankruptcy Court.

3.     Applicability of Insurance Policies

Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Except as otherwise provided in the Plan or the Confirmation Orders, nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

# ARTICLE VIII.
# RELEASE, INJUNCTION AND RELATED PROVISIONS

**A.     *Discharge of Claims and Termination of Interests***

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, the Confirmation Orders or in any contract, instrument, or other agreement or document created pursuant to this Plan or the Confirmation Orders, including the Plan Supplement and Definitive Documents, the distributions, rights, and treatments that are provided in this Plan or the Confirmation Orders shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including Intercompany Claims that the Debtors resolve or compromise after the Effective Date) against, Interests in, and Causes of Action against the Debtors or the Reorganized Debtors of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan and the Confirmation Orders on account of such Claims or Interests, including demands, Liabilities and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case, whether or not (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code, or (3) the Holder of such a Claim or Interest has accepted this Plan.  Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims against, Causes of Action against, and Interests in the Debtors or the Reorganized Debtors, subject to the occurrence of the Effective Date.

**B.     *Release of Liens***

**Except as otherwise specifically provided in this Plan, in any Definitive Document, or in any other contract, instrument, release, or other agreement or document amended or created pursuant to the Plan, on the Effective Date, all Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such Liens, pledges, or other security interests**

shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or Order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors.  Any Holder of such a Secured Claim (and the First Lien Agent for such Holder, if any) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any Collateral or other property of any Debtor (including any Cash Collateral and possessory Collateral) held by such Holder (and the First Lien Agent), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Liens and/or security interests, including as required under the laws of other jurisdictions for non-U.S. security interests and including the execution, delivery, and filing or recording of such releases, and shall authorize the Reorganized Debtors to file UCC-3 termination statements with respect thereto.  The presentation or filing of the Confirmation Orders to or with any federal, state, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or the First Lien Agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the First Lien Agent for such Holder) shall take any and all steps requested by the Debtors or the Reorganized Debtors that are necessary or desirable to record or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors shall (a) pay the reasonable and documented fees and expenses of the First Lien Agent, in each case including local and foreign counsel, to the extent payable under the Amended First Lien Credit Agreement in connection with the foregoing and (b) be entitled to make any such filings or recordings on such Holder's behalf.

## C.    *Debtor Release*

Notwithstanding anything else contained herein to the contrary, to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be, and hereby is conclusively, absolutely, unconditionally, irrevocably, finally, and forever released and discharged by each and all of the Debtors, the Reorganized Debtors, and their Estates, including any successors to the Debtors or any Estate's representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative Claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law, equity, contract, tort, or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or

47

collectively) or on behalf of the Holder of any Claim or Cause of Action against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Reorganized Debtors, or their Estates (including the Debtors' capital structure, management, ownership, assets, or operation thereof), the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the assertion or enforcement of rights and remedies against the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim, Causes of Action, or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the Chapter 11 Cases, the Amended First Lien Credit Agreement, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan (including, for the avoidance of doubt, the Plan Supplement), or any aspect of the Restructuring Transactions, including any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan, the Confirmation Order, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, any action or actions taken in furtherance of or consistent with the administration of this Plan, including the issuance or distribution of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release (1) any post-Effective Date obligations of any party or Entity under the Plan, any act occurring after the Effective Date with respect to the Restructuring Transactions, the obligations arising under Definitive Document to the extent imposing obligations arising after the Effective Date (including those set forth in the Plan Supplement), or other document, instrument, or agreement executed to implement the Plan, (2) the rights of Holders of Allowed Claims under this Plan, including the right to receive distributions under this Plan, (3) any Cause of Action, listed, described or otherwise included on the Schedule of Retained Causes of Action, (4) any Claim, Cause of Action, dispute, or defense related to the failure to execute an agreed upon amendment to any Executory Contract or Unexpired Lease to the extent such issue is not resolved prior to the Effective Date, (5) any Claim or Cause of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, willful misconduct or criminal conduct, or (6) any Claim, dispute, or defense of the Debtors or the Reorganized Debtors preserved under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the terms by which matters are subject to a compromise and settlement, including the Debtor Releases in Article VIII.C, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Debtor Releases in

**Article VIII.C are: (1) essential to Confirmation of this Plan; (2) an exercise of the Debtors' business judgment; (3) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing this Plan; (4) a good-faith settlement and compromise of the Claims and Causes of Action released by the Debtor Releases in Article VIII.C; (5) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (6) fair, equitable, and reasonably given and made after due notice and opportunity for a hearing; and (7) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Releases in Article VIII.C.**

**D.**      *Third-Party Release*

**Except as otherwise expressly set forth in this Plan or the Confirmation Orders, on and after the Effective Date, pursuant to Bankruptcy Rule 9019 and to the fullest extent permitted by applicable law and approved by the Bankruptcy Court, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is deemed to be, and hereby is conclusively, absolutely, unconditionally, irrevocably, finally, and forever released and discharged by each Releasing Party (in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities) from any and all Claims and Causes of Action, including any derivative Claims asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, liquidated or unliquidated, fixed or contingent, accrued or unaccrued, existing or hereafter arising, in law, equity, contract, tort, or otherwise that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Cause of Action against, or Interest in, a Debtor based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, assets, or operation thereof), the purchase, sale, or rescission of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim, Cause of Action, or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or an Affiliate of a Debtor, the Chapter 11 Cases, the Amended First Lien Credit Agreement, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan (including, for the avoidance of doubt, the Plan Supplement), or any aspect of the Restructuring Transactions, including any contract, instrument, release, or other agreement or document created or entered into in connection with the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan, the Confirmation Order, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, any action or actions taken in furtherance of or consistent with the administration of this Plan, including the issuance or distribution of**

49

Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing.

Notwithstanding anything contained herein to the contrary, the foregoing release does not release (1) any post-Effective Date obligations of any party or Entity under the Plan, any act occurring after the Effective Date with respect to the Restructuring Transaction, the obligations arising under Definitive Document to the extent imposing obligations arising after the Effective Date (including those set forth in the Plan Supplement), or other document, instrument, or agreement executed to implement the Plan, (2) the rights of Holders of Allowed Claims to receive distributions under this Plan, (3) the rights of any current employee of the Debtors under any employment agreement or plan, (4) the rights of the Debtors with respect to any confidentiality provisions or covenants restricting competition in favor of the Debtors under any employment agreement with a current or former employee of the Debtors, (5) any Claim, Cause of Action, or defense related to the failure to execute an agreed upon amendment to any Executory Contract or Unexpired Lease to the extent such issue is not resolved prior to the Effective Date, or (6) any Claim or Cause of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, gross negligence, willful misconduct or criminal conduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the terms by which matters are subject to a compromise and settlement, including the Debtor Releases in Article VIII.C, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Releases in this Article VIII.D are:  (1) essential to Confirmation of this Plan; (2) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing this Plan; (3) a good-faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Releases in this Article VIII.D; (4) in the best interests of the Debtors and their Estates and all Holders of Claims and Interests; (5) fair, equitable, and reasonably given and made after due notice and opportunity for a hearing; and (6) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Releases in this Article VIII.D.

E.    *Exculpation*

Except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action or Claim whether direct or derivative related to any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases from the Petition Date to or on the Effective Date, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan, the Plan Supplement, or any transaction related to the Restructuring Transactions, any contract, instrument, release, or other agreement or document created or entered into before or during the Chapter 11 Cases in

connection with the Restructuring Transactions, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, except for Claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct, gross negligence, or actual fraud, but in all respects such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan and the Confirmation Orders.

The Exculpated Parties set forth above have, and upon Confirmation of this Plan shall be deemed to have, participated in good faith and in compliance with applicable law with respect to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.

F.    *Injunction*

Upon entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and Affiliates, and each of their successors and assigns, shall be enjoined from taking any actions to interfere with the implementation or Consummation of this Plan in relation to any Claim or Interest that is extinguished, discharged, or released pursuant to this Plan.

Except as otherwise expressly provided in this Plan or the Confirmation Orders, or for obligations issued or required to be paid pursuant to this Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests, or Causes of Action that have been released, discharged, or are subject to exculpation pursuant to <u>Article VIII</u>, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, and/or the Released Parties:

(a)    commencing, conducting, or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

(b)    enforcing, levying, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or Order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;

51

(c)        **creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action;**

(d)        **asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and**

(e)        **commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to this Plan or the Confirmation Orders.**

**No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors or the Exculpated Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action related to the Chapter 11 Cases prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, the Picea Supply Agreement, New Picea Supply Agreement, the Disclosure Statement, this Plan, the Plan Supplement, or any transaction related to the Restructuring, any contract, instrument, release, or other agreement or document created or entered into before or during the Chapter 11 Cases in connection with the Restructuring Transactions, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of this Plan, including the issuance of Securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, without regard to whether such Person or Entity is a Releasing Party, without the Bankruptcy Court (1) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind and (2) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor or Exculpated Party.**

**The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action.**

**Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under this Plan, the Confirmation Order or under any other Definitive Document or other document, instrument, or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement this Plan**

and the Confirmation Orders from bringing an action to enforce the terms of this Plan, the Confirmation Order or such document, instrument, or agreement (including those attached to the Disclosure Statement or included in the Plan Supplement) executed to implement this Plan and the Confirmation Orders.  The injunction in this Plan shall extend to any successors and assigns of the Debtors and the Reorganized Debtors and their respective property and interests in property.

### G.     *Waiver of Statutory Limitations on Releases*

Each Releasing Party in each of the releases contained in this Plan expressly acknowledges that although ordinarily a general release may not extend to Claims that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, each Releasing Party has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or Claims.  Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law that provides that a release does not extend to Claims that the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the Released Party.  The releases contained in this Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

### H.     *Protection against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, Permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases, but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

### I.     *Document Retention*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

### J.     *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of Allowance or Disallowance, such Claim shall be forever Disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final

Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO
## CONSUMMATION OF THIS PLAN

**A.**    ***Conditions Precedent to the Effective Date***

It shall be a condition to Consummation of this Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B.

(a)    the Restructuring Support Agreement shall not have been terminated, shall continue to be in full force and effect;

(b)    this Plan, as confirmed by the Confirmation Order, shall not have been amended or modified in any manner unless such amendment or modification is effectuated in accordance with the terms set forth in this Plan and the Restructuring Support Agreement (including all consent rights of Picea with respect to the Confirmation Order and the Plan, including any amendments or modification thereto);

(c)    the Cash Collateral Orders shall not have been vacated, stayed, or modified without the prior written consent of Picea;

(d)    no termination event shall have occurred and be continuing under the Cash Collateral Orders, that has not been waived in writing by Picea or cured by the Debtors in a manner consistent with the Cash Collateral Orders;

(e)    all financing necessary for this Plan shall have been obtained, and any documents related thereto shall have been executed, delivered, and be in full force and effect (with all conditions precedent thereto, other than the occurrence of the Effective Date or certification by the Debtors that the Effective Date has occurred, having been satisfied or waived);

(f)    the Professional Fee Escrow shall have been established and funded with Cash in accordance with Article II.B.1;

(g)    the New Organizational Documents shall have been adopted;

(h)    all requisite filings with governmental authorities and third parties shall have become effective, and all such governmental authorities and third parties shall have approved or consented to the Restructuring Transactions, including the receipt of all Antitrust and Foreign Investment Approvals, to the extent required;

(i)    all Definitive Documents (including all documents in the Plan Supplement) to be executed, delivered, assumed, or performed upon or in connection with Consummation shall have been (or shall, contemporaneously with the occurrence of the Effective Date, be) (a) executed and in full force and effect, delivered,

assumed, or performed, as the case may be, and in form and substance (i) acceptable to the Debtors and Picea, and (ii) otherwise consistent with the consent rights set forth in this Plan, (b) to the extent required, filed with the applicable Governmental Units in accordance with applicable law; and (c) any conditions precedent contained in such documents shall have been satisfied or waived in accordance with the terms thereof, except with respect to such conditions that by their terms shall be satisfied substantially contemporaneously with or after Consummation of the Plan;

(j)     the Debtors shall have implemented the Restructuring Transactions and all other transactions contemplated by the Plan and the Restructuring Support Agreement in a manner consistent in all respects with the Plan and Restructuring Support Agreement;

(k)     subject to the consent rights under the Restructuring Support Agreement, all documents contemplated by the Restructuring Support Agreement to be executed and delivered on or before the Effective Date shall have been executed and delivered;

(l)     the Bankruptcy Court shall have entered the Scheduling Order, which shall not have been stayed, reversed, vacated, amended, supplemented or otherwise modified, unless waived in writing by Picea;

(m)    the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein (and any amendment thereto) shall have been Filed in a manner consistent in all material respects with the Restructuring Support Agreement and the consent rights contained therein and herein;

(n)     there shall not be in effect any (a) order, opinion, ruling, or other decision entered by any court or other Governmental Unit or (b) U.S. or other applicable law staying, restraining, enjoining, prohibiting, or otherwise making illegal the implementation of any of the transactions contemplated by the Plan; and

(o)     the Bankruptcy Court shall have entered the Confirmation Order and any other order required to approve any Definitive Document, in each case in form and substance acceptable to Picea.

**B.     *Waiver of Conditions***

Any condition to the Effective Date of this Plan set forth in <u>Article IX.A</u> hereof may be waived, in whole or in part, by the Debtors with the prior written consent of Picea, without notice, leave, or Order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate this Plan.

**C.     *Substantial Consummation***

"Substantial Consummation" of this Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

55

**D.**     *Effect of Nonoccurrence of a Condition*

If the Effective Date does not occur, then: (1) this Plan will be null and void in all respects; and (2) nothing contained in this Plan, the Disclosure Statement, or the Restructuring Support Agreement shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action by any Entity; (b) prejudice in any manner the rights of any Debtor or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity.

**ARTICLE X.**
**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THIS PLAN**

**A.**     *Modification and Amendments*

Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), and otherwise consistent with the consent rights under the Restructuring Support Agreement, the Debtors reserve the right to modify this Plan (with the consent of Picea, such consent not to be unreasonably withheld, conditioned or delayed) without additional disclosure pursuant to section 1125 of the Bankruptcy Code prior to the Confirmation Date and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan. After the Confirmation Date and before substantial consummation of the Plan, the Debtors may initiate proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order, relating to such matters as may be necessary to carry out the purposes and intent of the Plan.

After the Confirmation Date, but before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan (including the Plan Supplement) with the consent of Picea (such consent not to be unreasonably withheld, conditioned or delayed) without further order or approval of the Bankruptcy Court; *provided*, that such adjustments and modifications do not materially and adversely affect the treatment of Holders of Claims or Interests.

**B.**     *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to this Plan since the solicitation thereof in accordance are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

**C.**     *Revocation or Withdrawal of This Plan*

Subject to the consent rights under the Restructuring Support Agreement, the Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to File subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then, absent further order of the Bankruptcy Court: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise not previously approved

56

by Final Order of the Bankruptcy Court embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Classes of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor, any Holder, any Person, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor, any Holder, any Person, or any other Entity.

**ARTICLE XI.**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases, the Confirmation Order, and this Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(a)     allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

(b)     decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code, the Confirmation Order, or this Plan;

(c)     resolve any matters related to: (i) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease, including employment related agreements, to which a Debtor is a party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate any Claims arising therefrom, including Cure Claims; (ii) any dispute regarding whether a contract or lease is or was executory, expired, or terminated; (iii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed, including any employment related agreements; (iv) any other issue related to any Executory Contracts and Unexpired Leases; or (v) any dispute regarding whether the Plan or any Restructuring Transactions trigger any cross-default or change of control provision in any contract or agreement;

(d)     resolve any disputes concerning whether an Entity had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any bar date established in the Chapter 11 Cases, or any deadline for responding or objecting to any Cure Claim, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

57

(e)     ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes arising from or relating to distributions under this Plan or the Confirmation Order;

(f)     adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(g)     adjudicate, decide, or resolve any and all matters related to Causes of Action that may arise from or in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(h)     adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(i)     enter and implement such Orders as may be necessary or appropriate to construe, execute, implement, or consummate the provisions of this Plan or the Confirmation Order and all contracts, instruments, releases, indentures, and other agreements or documents created or entered into in connection with this Plan, the Confirmation Order, or the Disclosure Statement;

(j)     enter and enforce any Order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(k)     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of this Plan or the Confirmation Order or any Entity's obligations incurred in connection with this Plan or the Confirmation Order and the administration of the Estates;

(l)     hear and determine disputes arising in connection with the interpretation, implementation, effect, or enforcement of this Plan, the Plan Supplement, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(m)     issue injunctions, enter and implement other Orders, or take such other actions as may be necessary or appropriate in aid of execution, implementation, or Consummation of this Plan or to restrain interference by any Entity with Consummation or enforcement of this Plan or the Confirmation Order;

(n)     resolve any matters related to the issuance of the New Common Equity;

(o)     adjudicate, decide, or resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article VIII, and enter such Orders as may be necessary or appropriate to implement such discharges, releases, injunctions, exculpations, and other provisions;

(p)     adjudicate, decide, or resolve any cases, controversies, suits, disputes or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VII.L;

(q)     enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(r)     determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, the Plan Supplement, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement, including the Restructuring Support Agreement; *provided*, that the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection, or dispute resolution clause that refers disputes to a different court or arbitration forum;

(s)     adjudicate any and all disputes arising from or relating to distributions under this Plan or any transactions contemplated thereby;

(t)     adjudicate, decide, or resolve any and all matters related to the Restructuring Transaction;

(u)     consider any modifications of this Plan to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court Order, including the Confirmation Order;

(v)     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

(w)     adjudicate, decide, or resolve disputes as to the ownership of any Claim or Interest;

(x)     adjudicate, decide, or resolve all matters related to any subordinated Claim;

(y)     adjudicate, decide, or resolve matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(z)     grant any consensual request to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code;

(aa)    enforce all Orders entered by the Bankruptcy Court in connection with the Chapter 11 Cases;

(bb)    hear any other matter not inconsistent with the Bankruptcy Code;

(cc)    enter an Order concluding or closing any or all of the Chapter 11 Cases;

(dd)    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases with respect to any Person or Entity, and resolve any cases, controversies, suits, or disputes that may arise in connection with any Person or Entity's rights arising from or obligations incurred in connection with the Plan; and

(ee)    hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in this Plan, including under Article VIII.

Nothing herein limits the jurisdiction of the Bankruptcy Court to interpret and enforce the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement, without regard to whether the controversy with respect to which such interpretation or enforcement relates may be pending in any state or other federal court of competent jurisdiction.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Article XI, the provisions of this Article XI shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Unless otherwise specifically provided herein or in a prior Order of the Bankruptcy Court, the Bankruptcy Court shall have exclusive jurisdiction to hear and determine disputes concerning Claims against or Interests in the Debtors that arose prior to the Effective Date; provided, that the jurisdiction of the Bankruptcy Court shall be non-exclusive with respect to disputes concerning General Unsecured Claims.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

### A.    *Immediate Binding Effect*

Subject to Article IX.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and the final versions of the documents contained in the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, any and all Holders of Claims or Interests (regardless of whether their Claims or Interests are deemed to have accepted or rejected this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in this Plan or the Confirmation Orders, each Entity acquiring property under this Plan or the Confirmation Orders, and any and all Entities that are parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to this Plan and the Confirmation Orders, regardless of whether any such Holder of a Claim or Interest has voted on this Plan.

**B.**    *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and the Confirmation Order.  The Debtors or the Reorganized Debtors, as applicable, and all Holders of Allowed Claims receiving distributions pursuant to this Plan and the Confirmation Order and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan and the Confirmation Order.

**C.**    *Payment of Certain Fees*

All fees due and payable before the Effective Date pursuant to section 1930(a) of the Judicial Code shall be paid by each of the Debtors or the Reorganized Debtors, as applicable, for each quarter (including any fraction thereof), until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first; *provided*, that on and after the Effective Date, the Reorganized Debtors shall (1) pay in full in cash when due and payable, and shall be responsible for paying, any and all such fees and interest with respect to any and all disbursements (and any other actions giving rise to such fees and interest) of the Reorganized Debtors, and (2) File in the Chapter 11 Cases (to the extent they have not yet been closed, dismissed, or converted) quarterly reports as required by the Bankruptcy Code, Bankruptcy Rules, and Local Rules, as applicable, in connection therewith.  The U.S. Trustee shall not be required to file any proof of claim or request for payment for quarterly fees.

All filing fees and local counsel fees paid by any party in respect of filing under any Antitrust Laws or Foreign Investment Laws shall be borne by the Debtors.

**D.**    *Reservation of Rights*

Except as expressly set forth in this Plan, this Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Orders shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor or any other Entity with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor or any Entity unless and until the Effective Date has occurred.

**E.**    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in this Plan or the Confirmation Orders shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, Affiliate, officer, director, manager, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

61

**F.**    *Notices*

To be effective, all notices, requests, and demands to or upon the Debtors shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

1.    If to the Debtors or the Reorganized Debtors:

iRobot Corporation
8 Crosby Drive
Bedford, MA 01730
Attn.:                 Jeff Engel, Karian Wong and Kevin Lanouette
E-mail address:        jengel@irobot.com
                       karianwong@irobot.com
                       klanouette@irobot.com

with copies to:

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Attn:                  Paul M. Basta, Alice B. Eaton, and John T. Weber
E-mail address:        pbasta@paulweiss.com
                       aeaton@paulweiss.com
                       jweber@paulweiss.com

       - and -

Young Conaway Stargett & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
Attn.:                 Andrew Magaziner, Sean Greecher, Shella Borovinskaya, and
                       Kristin L. Cardoza
E-mail address:        amagaziner@ycst.com
                       sgreecher@ycst.com
                       sborovinskaya@ycst.com
                       kcardoza@ycst.com

2.    If to Picea:

Attn:        Yang Kaiqi
Building A6, PICEA Group Industrial Park
No. 145 Yuhu Road, Yulv Community, Yutang Subdistrict, Guangming District
Shenzhen, Guangdong Province, the People's Republic of China
Email:       yangkq102741@piceacorp.com

With copies (which shall not constitute notice) to:

White & Case LLP
555 South Flower Street, Suite 2700
Los Angeles, CA 90071-2433

Attn.:        Roberto Kampfner
Email:        rkampfner@whitecase.com

       - and -

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095

Attn.:        David Turetsky
Email:        david.turetsky@whitecase.com

After the Effective Date, the Reorganized Debtors have the authority to send a notice to Entities that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors and the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

**G.**       *Term of Injunctions or Stays*

Unless otherwise provided in this Plan or the Confirmation Orders, all injunctions or stays in effect in the Chapter 11 Cases pursuant to section 105 or 362 of the Bankruptcy Code or any Order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Orders) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in this Plan or the Confirmation Orders shall remain in full force and effect in accordance with their terms.

**H.**       *Entire Agreement*

Except as otherwise indicated, this Plan, the Confirmation Orders, the applicable Definitive Documents, the Plan Supplement, and documents related thereto supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan, the Confirmation Orders, the Definitive Documents, the Plan Supplement, and documents related thereto.

**I.**       *Exhibits*

All exhibits and documents included in this Plan, the Confirmation Orders, and the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full in this Plan. After

the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://cases.stretto.com/iRobot or the Bankruptcy Court's website at http://www.deb.uscourts.gov/.

**J.      *Deemed Acts***

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under this Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party by virtue of this Plan and the Confirmation Orders.

**K.      *Severability of Plan Provisions***

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors (with the consent of Picea), may alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted; *provided*, that any such alteration or interpretation shall be consistent with the Restructuring Support Agreement and the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.    The Confirmation Orders shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to this Plan and may not be deleted or modified without the consent of the Debtors or the Reorganized Debtors, as applicable; and (3) non-severable and mutually dependent.

**L.      *Votes Solicited in Good Faith***

Upon entry of the Confirmation Order, each of the Released Parties and Exculpated Parties will be deemed to have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and in a manner consistent with the Disclosure Statement, the Plan, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations in connection with all of their respective activities relating to support and Consummation of the Plan, including the negotiation, execution, delivery, and performance of the Restructuring Support Agreement and are entitled to the protections of section 1125(e) of the Bankruptcy Code and all other applicable protections and rights provided in the Plan.  Without limiting the generality of the foregoing, upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on this Plan in good faith and in compliance with the Bankruptcy Code and other applicable law, and, pursuant to section 1125(e) of the Bankruptcy Code, any person will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under this Plan, and, therefore, none of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on this Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under this Plan.

**M.** *Request for Expedited Determination of Taxes*

The Debtors or the Reorganized Debtors, as the case may be, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

**N.** *No Waiver or Estoppel*

Upon the Effective Date, each Holder of a Claim or Interest shall be deemed to have waived any right to assert that its Claim or Interest should be Allowed in a certain amount, in a certain priority, be secured, or not be subordinated by virtue of an agreement made with the Debtors and/or their counsel, or any other Entity, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

**O.** *Closing of Chapter 11 Cases*

Upon the occurrence of the Effective Date, the Reorganized Debtors shall be permitted to (1) close all of the Chapter 11 Cases except for one of the Chapter 11 Cases as determined by the Reorganized Debtors, and all contested matters relating to each of the Debtors, including objections to Claims, shall be administered and heard in such Chapter 11 Case and (2) change the name of the remaining Debtor and case caption of the remaining open Chapter 11 Case as desired, in the Reorganized Debtors' sole discretion.

**P.** *Creditor Default*

An act or omission by a Holder of a Claim or an Interest in contravention of the provisions of this Plan shall be deemed an event of default under this Plan. Upon an event of default, the Reorganized Debtors may seek to hold the defaulting party in contempt of the Confirmation Order and shall be entitled to reasonable attorneys' fees and costs of the Reorganized Debtors in remedying such default. Upon the finding of such a default by a Holder of a Claim or Interest, the Bankruptcy Court may: (1) designate a party to appear, sign, and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (2) enforce the Plan by order of specific performance; (3) award judgment against such defaulting Holder of a Claim or Interest in favor of the Reorganized Debtor in an amount, including interest, to compensate the Reorganized Debtors for the damages caused by such default; and (4) make such other Order as may be equitable that does not materially alter the terms of the Plan.

*[Signature page follows]*

Respectfully submitted, as of the date first set forth above by the Debtors,

Dated:    December 14, 2025                iRobot Corporation (for itself and on behalf of each
the other Debtors and Debtors in Possession)


*/s/ Karian Wong*
Name: Karian Wong
Title:   Chief Financial Officer