**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) |  |
| POLISHED.COM INC., *et al.*,[1] | ) | Case No. 24-10353 (TMH) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) | **Ref. Docket No. 235** |

Objection Deadline: **February 27, 2026, at 4:00 p.m. (ET)[2]**
Hearing Date:  **March 16, 2026, at 2:00 p.m. (ET)**

**CHAPTER 7 TRUSTEE'S OBJECTION AND RESERVATION OF RIGHTS TO
MOTION OF 1870 BATH AVE. LLC AND 7812 5TH AVE REALTY LLC FOR
ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS**

George L. Miller, chapter 7 trustee (the "Trustee") of the above-captioned debtors (the "Debtors"), hereby submits this objection (the "Objection") to the *Motion of 1870 Bath Ave. LLC and 7812 5th Ave Realty LLC for Allowance and Payment of Administrative Expense Claims* [Docket No. 235] (the "Motion") filed by 1870 Bath Ave. LLC and 7812 5th Ave Realty LLC (collectively, the "Landlords").[3]  In support of this Objection, the Trustee respectfully represents as follows:

**Objection**

1.     The Landlords seek an Administrative Claim in the amount of $559,159.89 for asserted unpaid rent and related obligations pursuant to two commercial lease agreements between the Landlords and certain Debtors.  The Trustee objects to the Administrative Claim to the extent that the Landlords have not proven such claim is entitled to administrative expense status in the

---

[1]     The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number are:  Polished.com Inc. (3938); 1 Stop Electronics Center, Inc. (9485); AC Gallery Inc. (3629); Appliances Connection Inc. (8366); Gold Coast Appliances, Inc. (1575); Joe's Appliances LLC (8354); Superior Deals Inc. (0096); and YF Logistics LLC (8373).

[2]     Extended to March 11, 2026 for the Trustee.

[3]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

4908-8209-5506.3 57099.00001

appropriate amounts through full and complete documentation. The Trustee has requested certain supporting information and documentation from the Landlords in an effort to diligence the amounts asserted. Until such documentation is received, the Trustee objects and reserves any and all rights related to the asserted Administrative Claim.

2. In addition, the Trustee objects to any relief requesting immediate payment of the Landlords' asserted Administrative Claim because not all administrative claims have been determined on a final basis, no funds are currently available for a distribution, and the Trustee cannot prefer one administrative creditor over others.

## Applicable Law

3. Section 503(b) of the Bankruptcy Code provides that, "[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. 503(b)(1)(A). Because section 503 administrative expense claims are afforded priority pursuant to section 507(a)(1) of the Bankruptcy Code, allowance of such claims is narrowly construed. *In re Unidigital, Inc.*, 262 B.R. 283, 288 (Bankr. D. Del. 2001); *In re Molnar Bros.*, 200 B.R. 555, 558 (Bankr. D.N.J. 1996). The burden of proving an entitlement to an administrative expense claim is on the claimant. *In re O'Brien Envt'l Energy, Inc.*, 181 F.3d 527, 533 (3d Cir. 1999).

4. To qualify for administrative priority, the expense must represent "a concrete, discernible benefit" to the estate; a "speculative benefit or the mere potential for benefit is not enough." *In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 482, 490 (Bankr. S.D.N.Y. 1991) (quoting *In re United Trucking Serv., Inc.*, 851 F.2d 159, 162 (6th Cir. 1988)); *see also Am. Anthracite & Bituminous Coal Comp. v. Leonardo Arrivabene, S. A.*, 280 F.2d 119, 126 (2d Cir. 1960). Thus, as the Third Circuit has summarized, "[f]or a claim in its entirety to be entitled to

first priority under [section 503(b)(1)(A) of the Bankruptcy Code], the debt must arise from a transaction with the debtor-in-possession . . . [and] the consideration supporting the claimant's right to payment [must be] beneficial to the debtor-in-possession in the operation of the business." *O'Brien*, 181 F.3d at 532–33 (3d Cir. 1999) (citation omitted). Additionally, "[a] party seeking payment of costs and fees as an administrative expense must . . . carry the heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." *Id.*; *see also In re Women First Healthcare, Inc.*, 332 B.R. 115, 121 (Bankr. D. Del. 2005) ("The claimant bears the burden of proving its actions conferred a benefit upon the estate.").

5.     Because claimants bear the burden of establishing entitlement to administrative priority, courts carefully scrutinize requests for administrative expenses to prevent certain creditors from receiving an unfair advantage over other similarly situated creditors. *See In re Bernard Techs., Inc.*, 342 B.R. 174, 177 (Bankr. D. Del. 2006) ("The applicant must prove his entitlement to the requested compensation and expense reimbursement by a preponderance of the evidence."). As such, an applicant seeking compensation or reimbursement under section 503(b)(1)(A) of the Bankruptcy Code carries a "heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." *Id.* (quoting *O'Brien*, 181 F.3d at 532–33).

6.     Bankruptcy courts apply a two-part test in determining whether a creditor has an administrative claim under section 503(b)(1)(A) of the Bankruptcy Code. The claimed expenses must (i) arise out of a postpetition transaction with the trustee or debtor in possession and (ii) directly and substantially benefit the estate. *In re Mid-American Waste Sys., Inc.*, 228 B.R. 816, 821 (Bankr. D. Del. 1999); *see also Unidigital*, 262 B.R. at 288; *In re Pinnacle Brands, Inc.*,

259 B.R. 46, 51 (Bankr. D. Del. 2001) ("[T]he expense must have arisen from a post-petition transaction between the creditor and the trustee and the transaction must have substantially benefitted the estate.").

7.    With respect to immediate payment in the section 503(b) context, courts have generally held that acceleration of allowed administrative claims is left to the discretion of the Court. *In re Bookbinders' Rest., Inc.*, 2006 WL 3858020, at *4 (Bankr. E.D. Pa. Dec. 28, 2006) (finding that timing of the payment of an administrative claim is within the discretion of the bankruptcy court); *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005) ("Courts have discretion to determine when an administrative expense will be paid.").

8.    In order to qualify for the "exceptional" discretionary grant of immediate payment of an administrative claim, a creditor must show that "there is a necessity to pay and not merely that the debtor has the ability to pay." *In re Cont'l Airlines, Inc.*, 146 B.R. 520, 531 (Bankr. D. Del. 1992) (emphasis added). In exercising this discretion, courts have adopted a three-factor test to determine whether to require payment of administrative claims upon request: (a) the prejudice to the debtors in making an early payment; (b) the hardship to the claimant in waiting for payment; and (c) the potential detriment to other creditors that could result from an early payment. *See Garden Ridge*, 323 B.R. at 143; *see also In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) (holding that, in making a determination as to timing of payment of administrative expenses, "one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets" (internal citations omitted)).

**Argument**

A.   **The Landlords have not established entitlement to administrative expense status for its Administrative Claim.**

9.     First, the Motion does not attached sufficient evidence or supporting documentation to prove up the Administrative Claim.  The Trustee has asked for a breakdown of the amounts asserted in the Motion because the monthly rent detailed in the Motion (*see* ¶¶5-6) and calculated based on the terms of the leases does not add up to the total asserted amount of $559,159.89.  The Landlords, as the movants, bear the burden of proving entitlement to the amounts asserted for an administrative claim, and they have not done so.  *See In re Bernard Techs., Inc.*, 342 B.R. at 177 ("The applicant must prove his entitlement to the requested compensation and expense reimbursement by a preponderance of the evidence.").  To the extent such evidence or documentation is later filed in support of the Motion, the Trustee reserves all rights to take necessary discovery.

10.    Second, any costs included in the Motion that constitute amounts allegedly owed after 120 days after the Petition Date should be disallowed.  Section 365(d)(4) rejected the leases automatically by operation of law.  Accordingly, no part of the Administrative Claim should include any amounts after that period.  Without a breakdown of the amounts owed, there is no way to tell if any part of the Administrative Claim includes amounts beyond that initial 120-day period before the leases were rejected.

B.   **Immediate payment of the Administrative Claim, if allowed, is not appropriate in these circumstances.**

11.    The Trustee also objects to the Motion because the Landlords seek immediate payment of the Administrative Claim, if allowed.  The relief should be denied.  The estates have insufficient cash for immediate payment of such an administrative expense request while other

similarly-situated creditors have not yet been paid.  The Trustee understands the frustration of an administrative creditor that has not been paid, but the Landlords cannot jump to the front of the line to seek payment ahead of others by asserting a "superpriority" status.

12.     At this time the Debtors' estates do not have available funds to make distributions to all allowed administrative expense claims.  The Trustee negotiated a limited carveout of unencumbered funds through a stipulation with Bank of America, N.A. ("BOA") as agent for the Lenders.  *See* Docket No. 65 (the "Sharing Agreement Stipulation").  The Sharing Agreement Stipulation provides a limited category of carveout funds designated for certain purposes.  *See* Sharing Agreement Stipulation ¶12.

13.     The estates do not currently have sufficient funds to make a distribution to all administrative expense creditors.  The Trustee is in the process of pursuing recoveries for the estates through, among other efforts, filing complaints for recovery of accounts receivable and chapter 5 causes of action against various defendants, but that process will take time as it does in any chapter 7 case.  Once those assets are liquidated and reduced to cash, the Trustee will have a pool of funds for distribution to creditors.

14.     Thus, forcing immediate payment of a single administrative claim over other similarly-situated claims would be prejudicial to other administrative creditors of the estates. Thus, the most the Trustee can provide at this point is allowance of a claim, and the Landlords should only receive a distribution as and when other similarly-situated administrative expense claims receive distributions.

15.     The Landlords have not demonstrated a basis for the "exceptional" discretionary grant of immediate payment of an administrative claim under section 503(b).  The estates will be prejudiced by being forced to pay an administrative claim when there are insufficient funds to

4908-8209-5506.3 57099.00001

make such payments and other administrative creditors have also not yet been paid, so other creditors with similar priority under the Bankruptcy Code will be prejudiced.

16.     And section 365(d)(3) -- as opposed to section 503(b) -- is not an automatic free pass to obtain immediate payment. Section 365(d)(3) does not afford automatic superpriority status to post-petition pre-rejection nonresidential real property rent claims, particularly if the estate is then administratively insolvent. *See, e.g.*, *In re J.T. Rapps, Inc.*, 225 B.R. 257, 264 (Bankr. D. Mass. 1998). *J.T. Rapps* agreed with the majority of courts who reject any superpriority status for a commercial lessor's unpaid post-petition pre-rejection administrative rent claim. *Id.* at 261-62. These courts reject such requests for a number of sensible reasons.

17.     First, the Bankruptcy Code fails to expressly authorize such superpriority status. *Id.*; *see In re Bryant Universal Roofing, Inc.*, 218 B.R. 948, 953 (Bankr. D. Ariz. 1998) ("[Section] 507, which determines the priority status of administrative claimants, is noticeably silent as to any priority for claims arising under § 365(d)(3)."); *In re Granada,* 88 B.R. 369, 373 (Bankr. D. Utah 1988) ("In absence of such Congressional direction with regard to section 365(d)(3) claimants 'it would be inappropriate to imply the existence of an automatic superpriority status.'") (quoting *In re Dieckhaus Stationers of King of Prussia, Inc.,* 73 B.R. 969, 973 (Bankr. E.D. Pa. 1987)); *In re Tandem*, 61 B.R. 738, 742 (Bankr. C.D. Cal. 1986) ("Had Congress intended to create a superpriority for subsection 365(d)(3) it would have done so by express statutory language.").

18.     Likewise, ordering immediate payment in such circumstances, in every instance, without regard to administrative solvency, "mirrors a statutory superpriority (or subordination, depending on whether one is looking up or down) where none was explicated by § 365(d)(3)." *J.T. Rapps*, 225 B.R. at 263 (citing *In re Virginia Packaging Supply, Co.,* 122 B.R. 491, 495 (Bankr. E.D. Va. 1990)). Congress knows how to grant superpriority status, but it did not provide

for it here.  *See, e.g.*, *J.T. Rapps*, 225 B.R. at 263 (noting that Congress provided superpriority in at least three sections of the Bankruptcy Code: section 726(b) (superpriority of chapter 7 administrative claims over chapter 11 administrative claims), section 364(c)(1) (superpriority of postpetition credit), and section 507(b) (superpriority of claims when adequate protection under section 361 fails)).

19.    Second, granting superpriority status to a commercial lessor's claim particularly with respect to chapter 7 administrative claims "undermines the incentive built into the priority that § 726 gives to Chapter 7 administrative claims." *In re MJ 500, Inc.*, 217 B.R. at 93, 95 (Bankr. D. Mass. 1998).  Indeed, chapter 7 trustees and professionals would be unwilling to serve on behalf of an estate if they knew the risk of payment was shifted onto their shoulders.   The rationale for granting such a priority to chapter 7 administrative claims is that "[t]hose who must wind up the affairs of a debtor's estate must be assured of payment, or else they will not participate in the liquidation or distribution of the estate." *In re Lochmiller Indust., Inc.*, 178 B.R. 241, 247 (Bankr. S.D. Cal. 1995) (quoting H.R.Rep. No. 95-595, 95th Cong., 1st Sess. (1977) 186-87, reprinted in 1978 U.S.C.C.A.N. 5787, 6147).  Granting priority status for a commercial lessor's rent claim over chapter 7 administrative claims thus violates the Bankruptcy Code's express priority scheme.  *See J.T. Rapps*, 225 B.R. at 262.

20.    *J.T. Rapps* ultimately held that immediate payment was not appropriate because the estate was administratively insolvent and had been converted from a chapter 11 case to chapter 7 and was thus governed by chapter 7's different priority scheme.  Other courts faced with similar facts have agreed – commercial landlords seeking immediate payment of a post-petition administrative rent claim cannot force a chapter 7 trustee to make such payments at a time when the estate is administratively insolvent.  *See, e.g.*, *In re Tel-Central Communications, Inc.*, 212

B.R. 342, 349 (Bankr. W.D. Mo. 1997) (holding that "if a lessor of a Chapter 11 debtor has not been paid post-petition in accordance with the mandate in sections 365(d)(3) and 365(d)(10) prior to the conversion of the case to a Chapter 7 proceeding, the lessor has a Chapter 11 administrative expense claim that cannot be paid until it is determined whether the bankruptcy estate has sufficient funds to pay all of the Chapter 7 and Chapter 11 administrative expenses"); *In re Tandem Group, Inc.*, 61 B.R. 738 (Bankr. C.D. Cal. 1986) (sustaining chapter 7 trustee's objection to immediate payment of chapter 11 administrative expense sought by commercial landlord under section 365(d)(3) until the trustee ascertains whether sufficient funds exist to pay chapter 7 administrative expenses).

21.    Judge Walsh's decision in *In re Valley Media Inc.*, 290 B.R. 73 (Bankr. D. Del. 2003) is instructive.   The court notably distinguished the facts in that case from the facts in *J.T. Rapps*.   In analyzing *J.T. Rapps*, Judge Walsh stated that the timing of payment pursuant to § 365(d)(3) was to be determined by the administrative solvency of the estate.  *Valley Media*, 290 B.R. at 77.   Indeed, courts agree that estate solvency "has been the lynchpin of the analysis" on this issue. *In re PYXSYS Corp.*, 288 B.R. 309, 316 (Bankr. D. Mass. 2003).  Judge Walsh in *Valley Media* found significant that there was no showing that the estate was administratively insolvent, and the case also involved an ongoing chapter 11, not a converted chapter 7.  *Valley Media*, 290 B.R. at 77.

22.    The facts here are much different from *Valley Media* and on point with *J.T. Rapps*. Most importantly, the estates, for present purposes, are administratively insolvent.  And the estates have other asserted administrative claim obligations other than the claim asserted by the Landlords including, but not limited to, an unresolved administrative claim motion filed by Dynamic

Marking, Inc. ("DMI"), which also objected to the Motion,[4] and estate professional fees and expenses.

23.     Although the Trustee believes there is no basis here for requiring immediate payment of an asserted superpriority administrative expense claim for rent, assuming the Court were to find a violation of section 365(d)(3) for failure to pay rent in these circumstances, section 365(d)(3) "does not prescribe a penalty for its violation." *In re DBSI, Inc.*, 407 B.R. 159, 164 (Bankr. D. Del. 2009).   Accordingly, the consequences of a violation of section 365(d)(3) have been developed on a case-by-case basis.  Collier on Bankruptcy, ¶ 365.04[1] (16th ed. rev. 2013). Courts have determined that "a correct reading of § 365(d)(3), taking other Code provisions into consideration, is that the Code provides alternative remedy provisions such that § 365(d)(3) should not be read to provide for payment of an administrative claim as a potential penalty." *In re DBSI, Inc.*, 407 B.R. at 164.

24.     Accordingly, the Landlords request for immediate payment of the Administrative Claim, if allowed, should be denied.

### Reservation of Rights

25.     The Trustee reserves all rights to supplement this Objection on any and all available substantive and non-substantive grounds that bankruptcy and nonbankruptcy law may permit, to conduct discovery into the matters raised by the Motion, and to present evidence at any hearing on the Motion.

---

[4]    This statement is not intended as an admission or waiver of the estates' liability for such administrative claims, and the Trustee expressly reserves all rights to review and contest any administrative claims if appropriate.

Dated:  March 11, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Peter J. Keane*

Bradford J. Sandler (DE Bar No. 4142)
Peter J. Keane (DE Bar No. 5503)
Edward A. Corma (DE Bar No. 6718)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: bsandler@pszjlaw.com
      pkeane@pszjlaw.com
      ecorma@pszjlaw.com

*Counsel to George L. Miller, Chapter 7 Trustee*

4908-8209-5506.3 57099.00001

11